2/28/2021 10:10 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 51000431
By: D Burton
Filed: 3/1/2021 12:00 AM

CAUSE NO. _____

| | | |
|---|---|---|
| JOHN DOE | § | IN THE DISTRICT COURT OF |
|     **Plaintiff** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **THE UNIVERSITY OF TEXAS M.D.** | § | |
| **ANDERSON CANCER CENTER;** | § | |
| **THE UNIVERSITY OF TEXAS HEALTH** | § | |
| **SCIENCE CENTER AT HOUSTON;** | § | |
| **THE UNIVERSITY OF TEXAS AT** | § | |
| **HOUSTON POLICE DEPARTMENT;** | § | **HARRIS COUNTY, TEXAS** |
| **MARGARET MCNEESE;** | § | |
| **TIFFANY DILLARD OBENG;** | § | |
| **MICHAEL REDWINE;** | § | |
| **DEANA MOYLAN;** | § | |
| **SHERI WAKEFIELD;** | § | |
| **YOLAN A. CAMPBELL;** | § | |
| **KAREN D. (HARVEY) REED;** | § | |
| **VICKI L. KING;** | § | |
| **KIMBERLY D. MILLER;** | § | |
| **PATRICIA J. WILLIAMS; and all other** | § | |
| **affiliated JAKE/JANE DOES** | § | |
|     **Defendants** | § | _____ **JUDICIAL DISTRICT** |

---

### PLAINTIFF'S ORIGINAL PETITION
### AND
### REQUEST FOR DISCLOSURE

---

TO THE HONORABLE JUDGE AND JURY OF SAID COURT:

Plaintiff **JOHN DOE** (sometimes referred to herein as "John" or "John Doe" or "Plaintiff")[1] files this Plaintiff's Original Petition and Request for Disclosure, bringing suit against

---

[1] Plaintiff John Doe files this lawsuit pseudonymously given the sensitive nature of the allegations (proven to be false) and the stigma that attaches to the accused from wholly specious allegations like those alleged. Not only does

EXHIBIT
**A**

Defendants THE UNIVERSITY OF TEXAS M.D. ANDERSON CANCER CENTER (sometimes referred to herein as "MDA"); THE UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT HOUSTON (sometimes referred to herein as "UTHealth"); THE UNIVERSITY OF TEXAS AT HOUSTON POLICE DEPARTMENT (sometimes referred to herein as "UTPD"); MARGARET MCNEESE ("McNeese"); TIFFANY DILLARD OBENG ("Obeng"); MICHAEL REDWINE ("Redwine"); DEANA MOYLAN ("Moylan") [McNeese, Obeng, Redwine and Moylan sometimes collectively referred to herein as "UTH Actors"]; SHERI WAKEFIELD ("Wakefield"); YOLAN A. CAMPBELL ("Campbell"); KAREN D. (HARVEY) REED ("Reed") [Wakefield, Campbell and Reed sometimes collectively referred to herein as "MDA Actors"]; VICKI L. KING ("King"); KIMBERLY D. MILLER ("Miller"); PATRICIA J. WILLIAMS ("Williams") [King, Miller and Williams sometimes collectively referred to herein as "UTPD Actors"]; and all other affiliated JAKE/JANE DOES ("JJD") [the JJD Defendants include all MDA, UTHealth and UTPD personnel involved in the actionable violations that caused and contributed to the damages and injuries to John Doe, as alleged herein, including those working in concert and conspiracy with other named Defendants] (all of these named defendants sometimes collectively referred to herein as "Defendants").  For such claims and causes of action, John Doe would respectfully show as follows:

## I.   DESIGNATION OF DISCOVERY CONTROL PLAN AND REQUEST FOR DISCLOSURE UNDER TEX. R. CIV. P. 194

John Doe deny the allegations, the investigations conducted overwhelmingly show his actions to be proper.

1.      Plaintiff expects that discovery in this cause would proceed most appropriately under Level 3 and requests that the Court enter a scheduling order for this case.  Pursuant to Rule 47 of the Texas Rules of Civil Procedure, and for this purpose, Plaintiff states and affirmatively pleads that, based on the information now available to Plaintiff, the monetary relief sought against Defendants is in excess of $1,000,000.00.  Additionally, Plaintiff seeks injunctive relief as well as declaratory judgment relief against Defendants.  Accordingly, Plaintiff further affirmatively pleads that this suit and these claims do not fall under the expedited actions process of Texas Rule of Civil Procedure 169 because the monetary damages and relief sought are in excess of $1,000,000.00, and because injunctive and other relief is sought by Plaintiff, placing this case and these claims outside of expedited actions.

2.      Pursuant to Rule 190.4 of the Texas Rules of Civil Procedure and, pursuant to Rule 194, **Defendants are requested to disclose, within 50 days of service of this request, the information or material described in Rule 194.2(a)-(l); additionally, Plaintiff requests that Defendants disclose all documents, electronic information, and tangible items in Defendants' possession, custody, or control that may be used to support any of Defendants' defenses.**

## II.  PARTIES, JURISDICTION AND VENUE

3.      Plaintiff **John Doe** is an individual that was residing in Harris County, Texas during some or all of the material events at issue in this case.  John Doe was actively employed at MDA and affiliated with UTHealth in certain capacities that related to his pursuit of educational and work opportunities in the healthcare field, in furtherance of a career that was many years in the making.  John Doe was irreparably harmed, both personally and professionally, by the wrongful,

illegal, and improper actions of the Defendants as alleged herein.  The damages and injuries to John Doe are continuing in nature, and will be exacerbated or exponentially magnified if corrective action and other relief requested herein are not granted and implemented.

4.    Defendant **The University of Texas M.D. Anderson Cancer Center** is a governmental agency or unit of the State of Texas.  MDA may be served with citation and process by serving its President or administrative head as follows:  **Peter WT Pisters, M.D. at The University of Texas M.D. Anderson Cancer Center, 1515 Holcombe Blvd., Houston, Texas 77030, or wherever he may be found**.  MDA was engaged in the actions and courses of conduct, and fostered and facilitated the improprieties and illegalities (about which Plaintiff complains) in Harris County, Texas at all material times relevant to the claims and matters at issue in this lawsuit. MDA is the beneficiary of state appropriates and is the recipient of state and federal grants and funding.  Such financial funding requires MDA to comply with applicable due process protections and antidiscrimination laws, including, but not limited to, Title IX of the Educational Amendments of 1972, 20 USC §1681, *et seq*.

5.    Defendant **The University of Texas Health Science Center at Houston** is a governmental agency or unit of the State of Texas.  UTHealth may be served with citation and process by serving its President or administrative head as follows:  **Giuseppe N. Colasurdo, M.D. at The University of Texas Health Science Center at Houston, 7000 Fannin St., UCT-1707, Houston, Texas 77030 or wherever he may be found**.  UTHealth was engaged in the actions and courses of conduct, and fostered and facilitated the improprieties and illegalities (about which Plaintiff complains) in Harris County, Texas at all material times relevant to the claims and matters

at issue in this lawsuit.  UTHealth is the beneficiary of state appropriates and is the recipient of state and federal grants and funding.  Such financial funding requires MDA to comply with applicable due process protections and antidiscrimination laws, including, but not limited to, Title IX of the Educational Amendments of 1972, 20 USC §1681, *et seq.*

6.     Defendant **The University of Texas at Houston Police Department** is a governmental agency or unit of the State of Texas, with this unit and its personnel serving both MDA and UTHealth in various capacities.  UTPD may be served with citation and process by serving its Chief of Police and Chief Security Officer or administrative head as follows:  **William Adcox at The University of Texas Police at Houston, 7777 Knight Road, Houston, Texas 77054**, or wherever he may be found.  UTPD was engaged in the actions and courses of conduct, and fostered and facilitated the improprieties and illegalities (about which Plaintiff complains) in Harris County, Texas at all material times relevant to the claims and matters at issue in this lawsuit.

7.     Defendant **Margaret McNeese** was the Title IX Coordinator and Vice Dean for Admissions and Student Affairs, McGovern Medical School, at UTHealth.  McNeese may be served with citation and process at her principal office address located at:  **6431 Fannin St., MSB G400, Houston, Texas 77030 [(713) 500-3163], or wherever she may be found**.  This Defendant was actively involved in the illegalities, improprieties, and violations as alleged herein.  The allegations lodged against this Defendant concern actions taken outside the proper course and scope of legitimate, legal, or permissible discretionary acts and, as such, are pursued against this Defendant in their individual capacity or as otherwise permitted by applicable law.  Alternatively, this Defendant's actions and conduct violated clearly established statutory or constitutional rights

of John Doe which a reasonable person would have known and should not have violated; were done in furtherance of the flawed and unconstitutional investigative and disciplinary proceedings at issue as alleged herein; were done in violation of applicable institutional policies, procedures and norms, as well as in violation of applicable law; and/or were done intentionally and with malice. Additionally or in the alternative, this Defendant's responsibilities (to the extent acting or purporting to act under color of law) included, but were not limited to, ensuring that the institutional Defendants (to include MDA, UTHealth and UTPD, as applicable) complied with all applicable due process laws and requirements; complied with all equal protection laws; complied with all applicable institutional policies; complied with Title IX of the Educational Amendments of 1972, 20 USC §1681, *et seq.*; and ensured equal, fair, and nondiscriminatory treatment of all persons and groups, including John Doe.

8.     Defendant **Tiffany Dillard Obeng** was an Equal Opportunity Advisor in the Diversity & Equal Opportunity Department at UTHealth. Obeng may be served with citation and process at her principal office address located at: **7000 Fannin St., UCT 150, Houston, Texas 77030 [(713) 500-3173], or wherever she may be found**. This Defendant was actively involved in the illegalities, improprieties, and violations as alleged herein. The allegations lodged against this Defendant concern actions taken outside the proper course and scope of legitimate, legal, or permissible discretionary acts and, as such, are pursued against this Defendant in their individual capacity or as otherwise permitted by applicable law. Alternatively, this Defendant's actions and conduct violated clearly established statutory or constitutional rights of John Doe which a reasonable person would have known and should not have violated; were done in furtherance of

the flawed and unconstitutional investigative and disciplinary proceedings at issue as alleged herein; were done in violation of applicable institutional policies, procedures and norms, as well as in violation of applicable law; and/or were done intentionally and with malice.  Additionally or in the alternative, this Defendant's responsibilities (to the extent acting or purporting to act under color of law) included, but were not limited to, ensuring that the institutional Defendants (to include MDA, UTHealth and UTPD, as applicable) complied with all applicable due process laws and requirements; complied with all equal protection laws; complied with all applicable institutional policies; complied with Title IX of the Educational Amendments of 1972, 20 USC §1681, *et seq.*; and ensured equal, fair, and nondiscriminatory treatment of all persons and groups, including John Doe.

9.     Defendant **Michael D. Redwine** serves/served as Associate Professor of Diagnostic and Interventional Imaging at UTHealth.  Redwine may be served with citation and process at his principal office address located at:  **6431 Fannin St., MSB 2.130B, Houston, Texas 77030 [(713) 704-1773], or wherever this Defendant may be found**.  This Defendant was actively involved in the illegalities, improprieties, and violations as alleged herein.  The allegations lodged against this Defendant concern actions taken outside the proper course and scope of legitimate, legal, or permissible discretionary acts and, as such, are pursued against this Defendant in their individual capacity or as otherwise permitted by applicable law.  Alternatively, this Defendant's actions and conduct violated clearly established statutory or constitutional rights of John Doe which a reasonable person would have known and should not have violated; were done in furtherance of the flawed and unconstitutional investigative and disciplinary proceedings at

issue as alleged herein; were done in violation of applicable institutional policies, procedures and norms, as well as in violation of applicable law; and/or were done intentionally and with malice. Additionally or in the alternative, this Defendant's responsibilities (to the extent acting or purporting to act under color of law) included, but were not limited to, ensuring that the institutional Defendants (to include MDA, UTHealth and UTPD, as applicable) complied with all applicable due process laws and requirements; complied with all equal protection laws; complied with all applicable institutional policies; complied with Title IX of the Educational Amendments of 1972, 20 USC §1681, *et seq.*; and ensured equal, fair, and nondiscriminatory treatment of all persons and groups, including John Doe.

10.     Defendant **Deana Moylan** served/serves as the Deputy Title IX Coordinator and Associate Vice President of Diversity and Equal Opportunity at UTHealth.  Moylan may be served with citation and process at her principal office address located at:  **7000 Fannin St., UCT 150, Houston, Texas 77030 [(713) 500-3279], or wherever this Defendant may be found**.  This Defendant was actively involved in the illegalities, improprieties, and violations as alleged herein. The allegations lodged against this Defendant concern actions taken outside the proper course and scope of legitimate, legal, or permissible discretionary acts and, as such, are pursued against this Defendant in their individual capacity or as otherwise permitted by applicable law.  Alternatively, this Defendant's actions and conduct violated clearly established statutory or constitutional rights of John Doe which a reasonable person would have known and should not have violated; were done in furtherance of the flawed and unconstitutional investigative and disciplinary proceedings at issue as alleged herein; were done in violation of applicable institutional policies, procedures

John Doe vs. MDA / UTHEALTH / UTPD et al
Original Petition & RFD

Page 8

and norms, as well as in violation of applicable law; and/or were done intentionally and with malice.  Additionally or in the alternative, this Defendant's responsibilities (to the extent acting or purporting to act under color of law) included, but were not limited to, ensuring that the institutional Defendants (to include MDA, UTHealth and UTPD, as applicable) complied with all applicable due process laws and requirements; complied with all equal protection laws; complied with all applicable institutional policies; complied with Title IX of the Educational Amendments of 1972, 20 USC §1681, *et seq.*; and ensured equal, fair, and nondiscriminatory treatment of all persons and groups, including John Doe.

11.     Defendant **Sheri Wakefield** served/serves as Director, EEO & Title IX Coordinator, HR EEO at MDA.  Wakefield may be served with citation and process at her principal office address located at:  **7007 Bertner Avenue, 1MC6.3216, Houston, Texas 77030 [(713) 745-6174], or wherever this Defendant may be found**.  This Defendant was actively involved in the illegalities, improprieties, and violations as alleged herein, and was found (by MDA) to have committed violations of MDA policies concerning her actions relating to John Doe.   The allegations lodged against this Defendant concern actions taken outside the proper course and scope of legitimate, legal, or permissible discretionary acts and, as such, are pursued against this Defendant in their individual capacity or as otherwise permitted by applicable law.  Alternatively, this Defendant's actions and conduct violated clearly established statutory or constitutional rights of John Doe which a reasonable person would have known and should not have violated; were done in furtherance of the flawed and unconstitutional investigative and disciplinary proceedings at issue as alleged herein; were done in violation of applicable institutional policies, procedures

and norms, as well as in violation of applicable law; and/or were done intentionally and with malice.  Additionally or in the alternative, this Defendant's responsibilities (to the extent acting or purporting to act under color of law) included, but were not limited to, ensuring that the institutional Defendants (to include MDA, UTHealth and UTPD, as applicable) complied with all applicable due process laws and requirements; complied with all equal protection laws; complied with all applicable institutional policies; complied with Title IX of the Educational Amendments of 1972, 20 USC §1681, *et seq.*; and ensured equal, fair, and nondiscriminatory treatment of all persons and groups, including John Doe.

12.     Defendant **Yolan A. Campbell** serves/served as Associate Vice President, HR Operations, HR Administration at MDA.  Campbell may be served with citation and process at her principal office address located at:  **7007 Bertner Avenue, 1MC6.2463, Houston, Texas 77030 [(713) 745-7283], or wherever this Defendant may be found**.  This Defendant was actively involved in the illegalities, improprieties, and violations as alleged herein.  The allegations lodged against this Defendant concern actions taken outside the proper course and scope of legitimate, legal, or permissible discretionary acts and, as such, are pursued against this Defendant in their individual capacity or as otherwise permitted by applicable law.  Alternatively, this Defendant's actions and conduct violated clearly established statutory or constitutional rights of John Doe which a reasonable person would have known and should not have violated; were done in furtherance of the flawed and unconstitutional investigative and disciplinary proceedings at issue as alleged herein; were done in violation of applicable institutional policies, procedures and norms, as well as in violation of applicable law; and/or were done intentionally and with malice.

Additionally or in the alternative, this Defendant's responsibilities (to the extent acting or purporting to act under color of law) included, but were not limited to, ensuring that the institutional Defendants (to include MDA, UTHealth and UTPD, as applicable) complied with all applicable due process laws and requirements; complied with all equal protection laws; complied with all applicable institutional policies; complied with Title IX of the Educational Amendments of 1972, 20 USC §1681, *et seq.*; and ensured equal, fair, and nondiscriminatory treatment of all persons and groups, including John Doe.

13. Defendant **Karen D. Reed** serves/served as Human Rights Specialist, HR Leave Center at MDA. Reed may be served with citation and process at her principal office address located at: **1515 Holcombe Blvd., Houston, Texas 77030, or wherever this Defendant may be found**. This Defendant was actively involved in the illegalities, improprieties, and violations as alleged herein. The allegations lodged against this Defendant concern actions taken outside the proper course and scope of legitimate, legal, or permissible discretionary acts and, as such, are pursued against this Defendant in their individual capacity or as otherwise permitted by applicable law. Alternatively, this Defendant's actions and conduct violated clearly established statutory or constitutional rights of John Doe which a reasonable person would have known and should not have violated; were done in furtherance of the flawed and unconstitutional investigative and disciplinary proceedings at issue as alleged herein; were done in violation of applicable institutional policies, procedures and norms, as well as in violation of applicable law; and/or were done intentionally and with malice. Additionally or in the alternative, this Defendant's responsibilities (to the extent acting or purporting to act under color of law) included, but were not

limited to, ensuring that the institutional Defendants (to include MDA, UTHealth and UTPD, as applicable) complied with all applicable due process laws and requirements; complied with all equal protection laws; complied with all applicable institutional policies; complied with Title IX of the Educational Amendments of 1972, 20 USC §1681, *et seq.*; and ensured equal, fair, and nondiscriminatory treatment of all persons and groups, including John Doe.

14.     Defendant **Vicki L. King** serves/served as Assistant Chief, University Police, Police Department-Special Ops, Converged Threat / Risk Protection & Investigations at UTPD. King may be served with citation and process at her principal office address located at:  **7777 Knight Rd., PPB2.200a, Houston, Texas 77054 [(713) 563-7783], or wherever this Defendant may be found**.  This Defendant was actively involved in the illegalities, improprieties, and violations as alleged herein.  The allegations lodged against this Defendant concern actions taken outside the proper course and scope of legitimate, legal, or permissible discretionary acts and, as such, are pursued against this Defendant in their individual capacity or as otherwise permitted by applicable law.  Alternatively, this Defendant's actions and conduct violated clearly established statutory or constitutional rights of John Doe which a reasonable person would have known and should not have violated; were done in furtherance of the flawed and unconstitutional investigative and disciplinary proceedings at issue as alleged herein; were done in violation of applicable institutional policies, procedures and norms, as well as in violation of applicable law; and/or were done intentionally and with malice.  Additionally or in the alternative, this Defendant's responsibilities (to the extent acting or purporting to act under color of law) included, but were not limited to, ensuring that the institutional Defendants (to include MDA, UTHealth and UTPD, as

applicable) complied with all applicable due process laws and requirements; complied with all equal protection laws; complied with all applicable institutional policies; complied with Title IX of the Educational Amendments of 1972, 20 USC §1681, *et seq.*; and ensured equal, fair, and nondiscriminatory treatment of all persons and groups, including John Doe.

15.     Defendant **Kimberly D. Miller** serves/served as a Detective in the Threat Management Investigations division with UTPD.  Miller may be served with citation and process at her principal office address located at:  **7777 Knight Rd., Houston, Texas 77054 [(832) 751-9742], or wherever this Defendant may be found**.  This Defendant was actively involved in the illegalities, improprieties, and violations as alleged herein.  The allegations lodged against this Defendant concern actions taken outside the proper course and scope of legitimate, legal, or permissible discretionary acts and, as such, are pursued against this Defendant in their individual capacity or as otherwise permitted by applicable law.  Alternatively, this Defendant's actions and conduct violated clearly established statutory or constitutional rights of John Doe which a reasonable person would have known and should not have violated; were done in furtherance of the flawed and unconstitutional investigative and disciplinary proceedings at issue as alleged herein; were done in violation of applicable institutional policies, procedures and norms, as well as in violation of applicable law; and/or were done intentionally and with malice.

16.     Defendant **Patricia J. Williams** serves/served as Inspector in the Threat Management Unit, Special Operations Bureau with UTPD.  Miller may be served with citation and process at her principal office address located at:  **7777 Knight Rd., Houston, Texas 77054 [(713) 745-5299], or wherever this Defendant may be found**.  This Defendant was actively

involved in the illegalities, improprieties, and violations as alleged herein.  The allegations lodged against this Defendant concern actions taken outside the proper course and scope of legitimate, legal, or permissible discretionary acts and, as such, are pursued against this Defendant in their individual capacity or as otherwise permitted by applicable law.  Alternatively, this Defendant's actions and conduct violated clearly established statutory or constitutional rights of John Doe which a reasonable person would have known and should not have violated; were done in furtherance of the flawed and unconstitutional investigative and disciplinary proceedings at issue as alleged herein; were done in violation of applicable institutional policies, procedures and norms, as well as in violation of applicable law; and/or were done intentionally and with malice. Additionally or in the alternative, this Defendant's responsibilities (to the extent acting or purporting to act under color of law) included, but were not limited to, ensuring that the institutional Defendants (to include MDA, UTHealth and UTPD, as applicable) complied with all applicable due process laws and requirements; complied with all equal protection laws; complied with all applicable institutional policies; complied with Title IX of the Educational Amendments of 1972, 20 USC §1681, *et seq.*; and ensured equal, fair, and nondiscriminatory treatment of all persons and groups, including John Doe.

17.     Defendants **Jake and Jane Does** are personnel affiliated with MDA, UTHealth and/or UTPD that were involved in the actionable violations that caused and contributed to the damages and injuries to John Doe, as alleged herein, including those working in concert and conspiracy with other named Defendants.  Upon discovery of further particulars to allow such JJD Defendants to be specifically named, they will be served with citation and process and provided

proper notice of these claims as required by law.  These Defendants were actively involved in the illegalities, improprieties, and violations as alleged herein.  The allegations lodged against these Defendants concern actions taken outside the proper course and scope of legitimate, legal or permissible discretionary acts and, as such, the claims against JJD are pursued against them in their individual capacities or as otherwise permitted by applicable law.  Alternatively, these Defendants' actions and conduct violated clearly established statutory or constitutional rights of John Doe which a reasonable person would have known and should not have violated; were done in furtherance of the flawed and unconstitutional investigative and disciplinary proceedings at issue as alleged herein; were done in violation of applicable institutional policies, procedures and norms, as well as in violation of applicable law; and/or were done intentionally and with malice. Additionally or in the alternative, these Defendants' responsibilities (to the extent acting or purporting to act under color of law) included, but were not limited to, ensuring that the institutional Defendants (to include MDA, UTHealth and UTPD, as applicable) complied with all applicable due process laws and requirements; complied with all equal protection laws; complied with all applicable institutional policies; complied with Title IX of the Educational Amendments of 1972, 20 USC §1681, *et seq.*; and ensured equal, fair, and nondiscriminatory treatment of all persons and groups, including John Doe.

18.     Plaintiff's causes of action arose from or are connected with one or more of Defendants' acts that occurred in whole or in part in Harris County, Texas.  Venue is proper in this Court, in the County in which all or part of the causes of action accrued, pursuant to TEXAS CIV. PRAC. & REM. CODE §15.002(a)(1), (2), (3) and (4).

19.     The monetary damages sought by Plaintiff, exclusive of attorneys' fees and costs of court, exceed the minimum jurisdictional limits of this Court.  Plaintiff also seeks declaratory judgment relief, injunctive relief and/or other equitable relief in this case, to the extent such is necessary to effectuate justice and to remedy the wrongs committed by Defendants; to attempt to make Plaintiff whole; and to prevent ongoing wrongs, improprieties and illegalities being committed by Defendants.

20.     John Doe engaged in all requested, required, and mandated administrative processes (to the extent he was afforded such processes), and has exhausted all applicable and reasonable administrative processes (to the extent any were available, offered or allowed). Accordingly, all conditions precedent to Plaintiff pursuing these claims as well as Plaintiff's recovery of or obtaining of relief as requested herein have occurred or have been met or performed.

## III.  NATURE OF THE CASE

21.     John Doe was subjected to the ramifications of, and damages resulting from, the systemic failures of a flawed and unconstitutional investigative/disciplinary system and multiple proceedings that allowed the manipulation of official processes in a way that was discriminatory and patently illegal.  John was falsely accused of improper conduct by a female co-worker and co-student, Li (Lily) Cai ("Cai").  The accusations made by Cai, on their face, did not rise to the level of characterization that was given to those accusations by Defendants.  What next transpired was a series of flaws, failures, and outright illegalities committed by Defendants that resulted in actions being taken against John that caused irreparable harm; that violated applicable laws, statutes, institutional policies, and common sense; that lacked due process; that were discriminatory on their

face; and that were unconstitutional in the manner in which the system was set up as well as in the manner in which Defendants' executed their "plan of action" that resulted in damage to John's personal and professional standing.

22.     The allegations made by Cai against John did not, on their face, meet the institutions' definition of sexual harassment or any other violation of institutional policies.  The investigative actions that next followed were nothing short of criminal (on the part of Defendants).  Defendants proceeded to conduct an unfair and inadequate investigation into certain of the allegations, misconstruing and misinterpreting the evidence and witness testimony.  Defendants' ignored John's credible testimony and relied on implicit, gender-biased beliefs to discredit John's testimony and that of each and every co-worker/witness who provided evidence to the investigators involved in this debacle.  And even when the findings of the Defendant investigators were overwhelmingly in favor of John and wholly discredited Cai and her false accusations, Defendants still continued the implementation of negative action against John that resulted in his failure to timely return and resume his medical schooling; that resulted in John failing to be able to timely and fully return to work; and that perpetuated the negative impacts of the false accusations even after they were found to be unsubstantiated.

23.     The policies of MDA, UTHealth, and UTPD and the investigative/disciplinary actions of all Defendants violated John's due process and equal protection rights by creating a disciplinary/investigative process that, from the outset, discriminatorily punishes and harms the innocently accused; that is applied unequally and without due process due to gender-based biases; that deprives the accused of material information (required to be provided under applicable policies

and legal requirements) necessary to defend against the accusations; that fails to afford the accused constitutional protections; that failed to follow the institutions' applicable policies; and that was implemented in furtherance of the cancel culture ideology that fosters gender-based attacks irrespective of wholly favorable evidence, wholly favorable investigative findings, and the lack of any credible evidence to substantiate or even support the accusations.  John's due process rights were obliterated through the implementation of a series of predetermined "actions" taken by Defendants that incorporated implicit and explicit gender-based biases.

### IV. FACTUAL BACKGROUND

24.     Plaintiff John was an aspiring medical student whose long-term career goal was laser-focused on cancer research to illuminate the cellular mechanisms of genomic stability and aging/age-associated disorders to better develop treatments for cancer.  John was actively pursuing a dual educational and research track to better accomplish a career as a physician-scientist through combining clinical practice with lab research.  John was well on his way to accomplishing his career dreams and to achieve the educational background and career training that would ultimately allow John to provide for his family and accomplish great things in the field of cancer research and treatment, until he was falsely accused with accusations of sexual harassment; subjected to dual institutional investigations conducted by UTHealth and MDA, investigative processes that were unconstitutionally flawed and that failed to follow and comply with the institutions' own policies; that failed to protect John's constitutionally-protected due process and equal protection rights; that failed to implement corrective action upon investigative findings that wholly refuted the sexual harassment accusations; and that continued the discriminatory treatment of the accused

utilizing gender-based biases.

25.     John's educational background was stellar, having obtained Bachelor's (2009) and Master's (2013) degrees in Biomedical Engineering from Johns Hopkins University in Baltimore, Maryland ("Johns Hopkins").  While attending Johns Hopkins, John met his wife, and they were married in November of 2013, shortly after both had graduated from Johns Hopkins.

26.     John began medical school at UTHealth McGovern Medical School ("MMS") in August of 2015.  A short time later, John pursued the opportunity to work at MDA doing medical research for/with the former President of MDA, Dr. Ronald A. DePinho, in his research lab (referred to herein as the "DePinho Lab").  John worked in the DePinho Lab on a part-time basis for 2 years prior to working there full time.  The DePinho Lab was competitive and demanding, which allowed John to excel while working in areas of cancer research that were important and rewarding to John.

27.     While completing his second year of medical school, John received the Howard Hughes Medical Institute Medical Research Fellows award ("HHMI grant"), which provided funding that allowed him to pursue medical research on a more full-time basis.  John was accepted into The University of Texas MD Anderson Cancer Center UTHealth Graduate School of Biomedical Sciences ("GSBS"), which is a dual-degree program that he would complete along with medical school at MMS.  John was on leave from his medical school studies at MMS while he was working fulltime at MDA.  In 2018, John applied for and was awarded a second year of research as an HHMI Medical Research Fellow.  This, again, provided funding for John to continue working in cancer research at the DePinho Lab, along with financial assistance and other benefits

for him and his family.

28.    Cai was a Chinese-national graduate student in the GSBS program.  She began working at the DePinho Lab in 2017, years after John had already been working there.  Cai was classified as a Graduate Research Assistant with MDA, and was also enrolled as a PhD candidate with GSBS.  By comparison, John had already been working at the DePinho Lab for 2 years (part time) and 1 year (full time).  John held three classifications between MDA and UTHealth:  i) Research Medical Student with MDA as part of the HHMI Fellowship Program, working fulltime in the DePinho Lab; ii) a third-year medical student with UTHealth MMS; and iii) GSBS MD/PhD candidate.

29.    In the years leading up to 2018, John worked hard, long hours for many years to excel in his educational studies as well as work experiences in cancer research.  John's research projects in the DePinho Lab were successful, where he cultivated a good working relationship with Dr. Ronald DePinho.  John also had an exceptionally good relationship with his professors, associate professors, the deans and other medical school administrative personnel, colleagues, co-workers, and others with whom he had dealings.  His reputation was stellar, having demonstrated a high level of performance at both his cancer research as well as his educational studies.  John was on a highly positive upward trajectory in both his studies as well as professional opportunities, producing results for the institutions with whom he was affiliated.  John's work in the area of cancer research was of exceptionally high caliber … until the false allegations were made by Cai that led to the systemic and institutional failures as alleged herein.

30.    In the Fall of 2018, John was one of four graduate students working in the DePinho

Lab. John, however, was the only male of that group. This peer group of graduate-level students also consisted of Cai and two other females. The atmosphere in the DePinho Lab was competitive and demanding, requiring John and others wishing to succeed to work long hours to participate in and accomplish the exciting cancer research conducted at that lab.

31.    In the months leading up to the events at issue in this case, Cai struggled both personally and professionally. Cai and/or other family members had discussed the fact that she was suffering from both physical maladies as well as mental problems/issues. It was well known by persons working in the DePinho Lab that Cai suffered research setbacks at the DePinho Lab. The setbacks were significant in that it required Cai to abandon research that she had been working on for some time in furtherance of her Ph.D., resulting in her having to start on wholly new research projects. The stress of these negative research impacts was easily observed by John and others in the DePinho Lab.

32.    During this same time, John continued to excel. His research projects at the DePinho Lab were going well. John had just received the second of two illustrious and prestigious HHMI grants and was working on another incredibly significant grant that would provide substantial funding for a good portion (if not the remainder) of John's medical/GSBS studies. John's hard working was paying off, and he was intent on continuing and completing his educational and cancer research/work-related goals at UTHealth and MDA. The grant application on which John was working diligently for exceptionally long hours for many weeks would help fund the remainder of his MD/PhD training, including paying for his tuition and health insurance, and provide to John and his family a stipend for 5 years. Not only was this grant opportunity

financially significant for John and his family, but was equally significant for professional and career-building reasons.  Likewise, the continuation of John's work with MDA and his educational studies with MMS at UTHealth were hugely significant for his future medical and research opportunities and, ultimately, for his entire career.

33.    Throughout the advancement of his working career, John worked professionally and collegially with others, treating fellow students and lab peers with utmost professionalism and respect.  When Cai was faltering in her research at the DePinho Lab, as with other co-workers, John responded to Cai's distress by helping in extremely limited ways.  John interacted with Cai in ways similar to how he interacted with other co-workers.  The communications between John and Cai, however, were somewhat limited in that Cai preferred to communicate with John using social media and/or phone apps that utilized the Mandarin language.

34.    Despite being an Asian-American citizen of the United States, John was raised in California and educated in the United States.  His primary language was/is English.  John had extremely limited ability to communicate in Mandarin.  Conversely, since Cai was born and educated in China prior to coming to the United States, Cai had a good command of Mandarin, with some limitations in the use of the English language.  Cai's preference to communicate in Mandarin using social media and phone apps created some difficulties with John understanding some (and at times many) of Cai's communications.

35.    Likewise, John's use of the Mandarin to English and English to Mandarin social media and phone apps ("the Apps") to translate his intended words and phrases to Mandarin had significant limitations in terms of effective communications.  Not only were the Apps difficult to

use, the overall messaging and communications resulting in skewed and unintended interpretations and language conversions.  That was simply because of the inherent nature of the languages involved (i.e., there oftentimes is not a direct word-for-word translation, combined with limited interpretation of phrases and concepts that are distinctly different between the two languages involved).  Nonetheless, John continued to interact professionally and with sensitivity to the difficulties Cai was having generally as well as in her work at the DePinho Lab.

36.    Cai continued to communicate with John in a fairly sociable fashion in the months leading up to October/November of 2018.  The communications by John were sociable, normal and pleasant.  However, during the same time that John was excelling in his work and research, Cai's work was mediocre, inferior and failing.  Cai's research setbacks were creating problems for her upcoming deadlines that were significant for her PhD studies.  Cai also suffered some health issues (about which she made general inquiries to John, as he had completed several years of medical school).  Additionally, the DePinho Lab was scheduled to receive additional graduate students that would be undertaking research projects similar to those being done by John and Cai. All of these factors pressured Cai further, incentivizing Cai to find ways to alleviate the pressures of upcoming deadlines and the inherent competition between peers that inevitably develops.  At that time, John continued to be the only male of their peer group of graduate students.

37.    Based on limited information provided by personnel with UT Police—Houston, and then later from personnel with UTHealth and MDA, Cai proceeded with what is believed to be her plan to alleviate the problems created by her failing research and its negative implications on her PhD program.  Cai created "victim status" for herself by making and pursuing false

John Doe vs. MDA / UTHEALTH / UTPD et al
Original Petition & RFD

Page 23

allegations and claims against John, which actions are believed to have resulted in certain benefits to her.  In the process, she disseminated false and defamatory statements and publications about John, and maliciously pursued false criminal charges against John.

38.     In late October of 2018, unbeknownst to John, Cai sent email correspondence to Ron DePinho (head of the DePinho Lab at MDA where John was working) complaining of sexual harassment and stalking by John.  Defendant Wakefield was notified about Cai's complaint the next day.  Wakefield, as the Director of EEO and HR Regulations and the Title IX Coordinator for MDA, knew or most definitely should have known the policies applicable to this situation.  Those policies include provisions that provide constitutional and due process protections to all persons, including the accused such as John.  It was the duty and responsibility of Wakefield and all of the MDA Actors and UTHealth Actors to know, follow and evenly apply (in a nondiscriminatory fashion) the protections afforded by the MDA and UTHealth policies, as well as the protections afforded under applicable laws.  The systemic failures began at this time, and continued to mount as further time progressed, all of which resulted in negative ramifications to John due to the inherently gender-biased nature of the policies and/or how they were and would be interpreted, implemented, and applied.  What followed was nothing short of horrendous.

39.     On or about November 13, 2018, John was questioned by personnel with UT Police.  Limited information was provided to John, other than statements about certain accusations made by Cai.  Prior to any questioning of him by any of the Defendants, John should have been provided certain specific information about the accusations made against him.  He should have been provided the applicable institutional policies, and afforded all rights available under those policies

and under the law.  Unfortunately, Defendants wholly failed, as will be set forth in more detail below.

40.      On or about November 15, 2018, John was informed by Wakefield (MDA's Title IX Director) that a fellow worker and student (Cai) had made a complaint of sexual harassment against John.  However, John was not provided a copy of the complaint, nor was he provided specifics about the allegations Cai made against John.  Instead, with no advance notice, John was interrogated by Defendant Reed (MDA Actor) and by Defendant Obeng (UTH Actor) over events that occurred and words that had been written months earlier.  Defendant Wakefield confiscates John's work badge and laptop.  MDA Title IX coordinator Wakefield confiscates John's work badge (used to gain access to the MDA and UTHealth facilities) and laptop.  Wakefield issues a memorandum advising John that "allegations of sexual harassment/sexual misconduct have been brought to the attention of EEO and HR Regulations" and places John on Administrative leave. John is prohibited from returning to campus or to the MDA facilities.  No written summary or explanation of Cai's complaint is provided to Chen.

41.      The next day (11/16/2018), Defendant Obeng emails John a document entitled "Respondent Notice & Interim Measures Memo."  Shortly thereafter, John is arrested by UTPD personnel for the charge of "harassing communications."   Defendant McNeese issues a memorandum to John notifying him of the existence of the complaint, presumably under UTHealth Handbook of Operating Procedures ("HOOP") #59.  The correspondence sent to John stated:

> This memorandum is intended to provide you with notice that the Title IX Coordinator has received a complaint that names you as the Respondent under HOOP Policy #59 *Sexual Misconduct*. The Office of Diversity & Equal Opportunity has been appointed to conduct the investigation arising from the

> complaint. On November 15, 2018, you were provided the opportunity to review
> the allegations against you and to respond. You will receive a written summary of
> the allegations and your responses to review, affirm and return to our office.

McNeese's statement above was wholly false, as John was not provided the opportunity to review

the allegations against him on November 15, 2018.  Additionally, John was only provided with

vague allegations regarding the allegations made by Cai.

42.     On November 20, 2018, the ramifications of the false allegations and specious

criminal charges further manifested as a GPS ankle monitor was placed on John.  He is again

ordered not to enter the MDA DePinho Lab where he previously worked and where his cancer

research projects continued to languish without his presence.  Based on information and belief,

further discussions between UTPD personnel and Cai take place that John asserts are indicative

of Defendants' wrongful actions as further alleged herein.  Much of the "behind the scenes"

discussions and investigative information remained hidden from John despite policies and legal

authorities requiring such information/documentation to be fully disclosed and provided to John

to allow him a fair opportunity to respond to the allegations.

43.     On November 27, 2018, as a result of the criminal proceedings initiated and

pursued against John by certain of the Defendants, and without affording John any due process,

John's place of residence was added as an exclusion area for his GPS monitor.  John and his

pregnant wife were forced to move on unreasonably short notice, or face the reality of further

criminal charges being brought.  John was forced to break the apartment lease and immediately

move himself and his family out of their residence.

44.     After further requests were made by John to be provided meaningful information

about the allegations made against him that were the subject of the investigations conducted by UTHealth and MDA Title IX Offices and their personnel, Wakefield again only provides excerpts of the allegations.  The excepts were far from sufficient to allow John a meaningful opportunity to address and defend against the allegations.

45.    John provides a statement to the UTHealth and MDA Title IX investigators.  John addresses what little information he had about the allegations, and provides further defining information that contradicts Cai's claims and version of events.  Witnesses (other DePinho Lab personnel) whose identities were provided by Cai were purportedly interviewed.  Cai asserted the witnesses had direct knowledge and observations of events and would support Cai's claims. When those witnesses corroborated John's version of events and discredited Cai's claims and allegations, Cai claimed the witnesses were lying and were not to be believed.

46.    John was requested to provide further feedback, information, or other evidence concerning the investigated matters.  John did, providing to the UTHealth investigators credible, consistent, and corroborated information and testimony.   Despite the overwhelming weight and degree of the credible evidence favoring John's version of events and wholly contradicting Cai's claims and allegations, Defendants nonetheless continued the farce of "fair, equal and nondiscriminatory" treatment and, instead, disregarded the plethora of credible, consistent, and corroborated testimony.  For reasons that can only be explained by gender-based biases and disparate treatment practices, Defendants continued the status quo of negative actions in place against John that prevented him from continuing his educational studies; that denied John equal, fair, and equitable educational and work opportunities; and that prevented him from working at

MDA and continuing his cancer research.  More significantly, the status quo of improper, illegal, discriminatory, and unsubstantiated negative actions taken against John continued to inflict harm to his personal and professional reputations, standings, educational and work opportunities, and grant funding already awarded but not able to be commenced due to Defendants' unreasonably harsh restrictions that continued against John.

47.     On November 15, 2018, John was placed on Investigative Leave by MDA.  John was prevented from re-entering any of the MDA premises and prohibited from contacting any MDA workforce members.  This effectively stopped John's cancer research at MDA as well as his ability to interact with Dr. DePinho and others at the DePinho Lab.  Further ramifications to John's research projects were further exacerbated as a result of the gender biases that were discriminatorily implemented throughout the investigative and disciplinary proceedings.

48.     On November 16, 2018, John was officially notified by UTHealth about a complaint made against him, and about the investigation that UTHealth would conduct.  Similar to the conditions imposed by MDA, John was prohibited from coming onto the UTHealth campus or entering any UTHealth buildings (unless a specific appointment was prearranged).  John was deprived of educational and work-related research opportunities, in violation of applicable institutional policies and laws.

49.     With the help and encouragement of the UTPD Actors as well as certain of the MDA Actors and UTHealth Actors, criminal charges were filed and pursued against John.  False criminal claims were made that alleged John harassed Cai on dates between April 15, 2018 and October 29, 2018.  John and his wife (who was pregnant with their first child at the time) were

forced to vacate the university housing operated by UTHealth due to ramifications from the criminal charges Cai filed and pursued, as a part of John's bond orders. John was forced to hire criminal defense counsel, and to defend his good name, reputation and civil liberties against the false accusations and charges filed and pursued against him.

50.     MDA and UTHealth conducted a joint investigation of Cai's allegations against John. The investigation had dual repercussions for John, and Cai knew that. John's work with MDA along with his MD/PhD studies with UTHealth MMS were both implicated—and negatively impacted—by the false accusations and by Defendants' actions, including: i) Defendants' systemic failure to follow and apply, in a nondiscriminatory fashion, all of the applicable policies and procedures; ii) the manner in which the policies and procedures were infected with gender-based biases; iii) the gender-based ramifications discriminatorily applied to males that were not applied equally to females; iv) gender-based interpretive biases that violated John's constitutional, due process and equal protection rights; and v) failures to timely implement corrective action once the falsity of the allegations became known and readily evident, among other things.

51.     John had substantial difficulty obtaining sufficient, adequate, or even minimally useful information about the specific allegations asserted against him, despite substantial efforts being made to obtain that information. Instead of following applicable institutional policies and applicable law, Defendants hid, disguised, and simply refused to provide this information. Instead, bits and pieces of information trickled from Defendants. Likewise, John ran into similar roadblocks with obtaining specifics about the factual basis for the criminal charges. It was only later in the processes, after investigative improprieties had occurred, that John discovered some of

the false statements and accusations that had been made against him and that formed the basis of the investigations, the findings, the negative educational and work ramifications, and the criminal charges.

52.     According to information that was later provided to John, Cai's false accusations and evidence-lacking allegations about John included (in generalized summary fashion) the following:

a)     John was sexually harassing Cai for about a year (i.e., from approximately November of 2017 to November of 2018);

b)     John initiated and took actions to intimidate Cai by repeatedly following her and stalking her for long periods of time;

c)     John engaged in intimidation and harassing actions by repeatedly staring at her for extraordinarily long periods of time;

d)     John repeatedly tapped Cai on her back and shoulders;

e)     John engaged in orchestrated actions to improperly force Cai to talk to John and to disrupt her scheduled activities;

f)     John "beat" Cai during research experiments, and engaged in unwanted and improper actions towards her while at work;

g)     John improperly touched Cai on multiple occasions, and stood and/or would get close to her in manners that were unwelcome and intimidating, and would engage in behaviors that Cai initially asserted (or certain of the Defendants' assumed and surmised through the lens of gender-biased presumptions that were wholly lacking on evidence or any corroboration) amounted to sexual harassment;

h)     John improperly stalked Cai by improperly following her to her home; by improperly following her at lunchtime; and by running after her down hallways;

i)     John engaged in actions towards Cai that reflected John was romantically interested in Cai;

j)     John intentionally sent threatening messages to Cai to harass her; and

k) John started working late hours at the MDA lab to harass, intimidate, threaten and/or scare Cai.

53.    On February 5, 2019, UTHealth issues a Preliminary Investigative Report that contains limited references to its investigative findings.  On February 7, 2019, John and his legal counsel review the preliminary UTHealth Title IX Report at MMS facilities (not yet being provided a sufficient degree of what was included in the allegations as well as the evidence discovered during the investigation.  Defendant Reed emails to John a preliminary MDA Title IX Report.  The MDA Report provided was only an Executive Summary of the investigative findings, and was even more sketchy, providing extremely limited information concerning the allegations as well as the evidence to support the investigative findings.

54.    On February 22, 2019, John receives notice from MDA and UTPD personnel about the creation and dissemination of a "Risk Determination" concerning John.  The Risk Determination was purportedly created by the UTPD Actors, and was based not on any legitimate evidence, testimony, or corroboration, but instead was done with gender-based biases despite the repudiation of Cai's version of events by witnesses and the evidence garnered during the investigations.  John had been removed from MDA and UTHealth facilities, and consequently was denied educational and work opportunities, based largely or significantly on a risk assessment that John was denied the opportunity to contest, and without due process and other constitutional protections.

55.    Cai's actions in combination with the manner in which the Defendants' handled, investigated, treated, and interpreted the investigative findings relating to Cai's allegations resulted

in violations of institutional policies, the failure to afford John constitutional and due process protections, and irreparable harm and damages to John that could, would and should have been negated and minimized had Defendants' acted within the bounds of the law and ensured John was treated fairly, equitably, and in a nondiscriminatory fashion.

56.     John provides a statement to the UTHealth and MDA Title IX investigators.  John addresses what little information he had about the allegations, and provides further defining information that contradicts Cai's claims and version of events.  Witnesses (other DePinho Lab personnel) whose identities were provided by Cai were purportedly interviewed.  Cai asserted the witnesses had direct knowledge and observations of events and would support Cai's claims. When those witnesses corroborated John's version of events and discredited Cai's claims and allegations, Cai claimed the witnesses were lying and were not to be believed.

57.     John was requested to provide further feedback, information, or other evidence concerning the investigated matters.  John did, providing to the UTHealth investigators credible, consistent, and corroborated information and testimony.   Despite the overwhelming weight and degree of the credible evidence favoring John's version of events and wholly contradicting Cai's claims and allegations, Defendants nonetheless continued the farce of "fair, equal and nondiscriminatory" treatment and, instead, disregarded the plethora of credible, consistent, and corroborated testimony.

58.     On March 1, 2019, Defendant Obeng emails John a copy of UTHealth's February 28, 2019, Determination Letter containing UTHealth's findings relating to John and the Cai allegations.  The UTHealth Determination Letter states in part:

After careful review of the information gathered by the EO investigation and additional comments both parties submitted for consideration, the determination following the completed investigation is there has been no substantiation of a violation of HOOP Policy #59, as the behaviors that were able to be confirmed could not be established as sex-based."

59.    Noticeably prevalent with what was issued as the final Determination Letter reflecting the findings of the EO investigation was the manner in which John's credible, consistent, and corroborated testimony and evidence was disregarded, and how the documents and other witness testimony consistent with John's version of the events was given relatively little weight compared to Cai's concocted, unsubstantiated and contradicted false allegations.  Also troubling and pervasively evident was the manner in which John's objections to the failure by Defendants to follow their own institutional policies was wholly ignored and disregarded, and often resulted in disdain and bad treatment of John when he asserted his due process and constitutional rights be provided and honored

60.    Despite Cai's allegations of sexual harassment and other sex-based misconduct, the Title IX investigations contradicted Cia and found no substantiation to any of these accusations.  At this juncture, given the results of Defendants' EO investigations supporting and favoring John or, at the very least, contradicting and/or not supporting Cai's version of events or her perception of those events, the negative ramifications of Cai's false claims should have been immediately and wholly rectified.  They were not.  For reasons that can only be explained by gender-based biases and disparate treatment practices, Defendants continued the status quo of negative actions in place against John that prevented him from continuing his educational studies; that denied John equal, fair, and equitable educational and work opportunities; and that prevented

him from working at MDA and continuing his cancer research.  More significantly, the status quo of improper, illegal, discriminatory, and unsubstantiated negative actions taken against John continued to inflict harm to his personal and professional reputations, standings, educational and work opportunities, and grant funding already awarded but not able to be commenced due to Defendants' unreasonably harsh restrictions that continued against John.

61.     The events that continued to transpire "snowballed" into a mass of finger pointing by Defendants to other affiliated governmental entities/units to avoid what fairness and equity would logically mandate at this stage, that being the retraction of the negative ramifications and status quo on which John was put pending the investigation, and appropriate action being taken against the female accuser (Cai) that the institutional policies indicated should be applicable to the false claims she brought against John.  MDA took the position that UTHealth needed to perform some act and/or make some decision in order for MDA to correct the negative status quo John continued to suffer from and allow John to continue his cancer research work at MDA's DePinho Lab.  Despite there being no assertions that John violated any UTHealth policies, and despite the UTHealth EO investigate report confirming the lack of any policy violations, UTHealth refers this matter over to UTHealth's Student Evaluations and Promotions Committee (SEPC) to determine whether the allegations raised by Cai (and wholly refuted by the evidence, but for gender-biased leanings of the investigators) could still be used to prevent John from continuing his medical school studies.

62.     John continued to take actions to oppose the negative ramifications of a gender-biased, discrimination-based system, and the results generated from such a system.  Throughout

the entire administrative and investigative processes, John repeatedly requested that the institutional policies be applied fairly, equally and in a non-discriminatory fashion. John requested the ability to present evidence and witness testimony, and to have representatives accompany him. No action was properly taken by Defendants to correct (or even address) the policy violations that occurred early on in the investigative process. John was never allowed to examine or cross-examine witnesses. John was never provided the required information reflecting the allegations Cai made against him (instead being given very limited summaries or synopsis). Even more disturbing was the manner in which all of the Defendants were communicating with each other, scheming and presenting their suggestions on how to defeat John because he chose to fight their inherently gender-biased and discriminatory system and insist upon due process and other constitutional rights along with institutional policies being applied available and applied fairly, equally and in a non-discriminatory fashion to him and to other students and researchers affiliated with MDA and UTHealth.

63.    In the months that followed the release of the "largely favorable to John" EO investigative findings reports, John began to discover the roles certain of the individual Defendants played in the administrative/investigative process that demonstrated the illegalities and other violations of law complained about herein. Defendants (and hired agents working for and on their behalf) were so arrogant and bold as to even plainly articulate (verbally or in writing) their disdain for John's insistence that policies should be followed and applied equally, fairly and in a non-discriminatory fashion to everyone, including John. They ridiculed and threatened John with further negative action being taken against him if he continued to insist upon MDA and

John Doe vs. MDA / UTHEALTH / UTPD et al
Original Petition & RFD

Page 35

UTHealth following the law and their own policies.

64.     John began to discover the roles that certain of the Defendants played in concocting, initiating and pursuing the criminal charges against him.  UTPD and its personnel were instrumentally involved in the initiation of the criminal charges, steering and coaching Cai and helping to create false risk assessment analysis that would prove to be instrumental in creating the incentive to continue the criminal prosecution despite their being no basis for such criminal charges, and despite their not existing probable cause to bring and pursue such criminal charges.

65.     On April 17, 2019, the trial court dismissed the criminal charges against John. UTPD and its personnel were upset that they were unable to "make the charges stick."  As will be shown in more detail below, King (with the help of and in conspiracy with Miller and Williams) continued to create and fabricate false pretenses and basis for a high, negative risk assessment.  They continued the farce that John presented a risk to the safety and personal wellbeing of Cai and others.  They presented such wholly fabricated "junk science" to others at/with MDA and UTHealth.  They continued to demonize John, largely because he had the gumption to fight Defendants' gender-biased, discriminatory, and illegal system, and because he was succeeding.

66.     The events that followed were nothing short of astounding in that Defendants continued to twist and change the rules and, in the process, fail to follow their own policies and fail to provide to John due process and other constitutional rights.  Defendants changed the rules on prior communicated requirements applicable to John's continued medical studies.  For example, according to the UTHealth GSBS policies and requirements, John was to take the

USMLE Step 1 Exam by a certain time geared upon his progression at the MMS medical school. Following Defendants' defeats at both the administrative level (EO Investigations do not substantiate the allegations of sex-based misconduct) and with the prosecution of criminal claims, John received correspondence from UTHealth GSBS Associate Dean Bill Mattox dated May 9, 2019, that changes the date by which John was required to have taken the USMLE Step 1 Exam. The new date was moved up to December 6, 2019.

67. Even though John was largely vindicated by the investigation findings (and 100% vindicated with respect to any sex-based misconduct accusations), MDA continues to impose conditions of employment with MDA that were discriminatory and that continued the farce of gender-based disparate treatment systemically prevalent at MDA and UTHealth. MDA attempts to impose a "Management Plan" that put severe restrictions on John and his ability to work on MDA's premises; deferred to the false accuser's schedule, whims and wishes; exposed John to further harassment and risk of false claims by the same accuser (Cai); and evidenced with finality the fact that MDA's system was corrupt, lacks due process, and wholly disregards constitutional and other equal protection rights of individuals like John.

68. Nonetheless, John continued to try and maneuver MDA's corrupt, gender-biased, discriminatory system. John provided feedback and explanations as to the problems, risks, and concerns with certain of the Management Plan requirements. Without any discussion, appeal, or consideration, MDA's position was that the gender-biased illegal Management Plan would be followed, or John would be prevented from being able to work at MDA. Ironically, at this same time, the false accuser (Cai) continued to receive favored treatment from MDA and others, with

no ramifications for the false, unsubstantiated accusations of sex-based harassment and misconduct that she made, and that Defendants promoted in furtherance of their corrupt, gender-biased systems.

69.     In July of 2019, John had multiple communications with MDA personnel (Dr. Ron DePinho, Kent DeShazo, and David Taylor) about the Management Plan and his return to work. MDA's position continued to change, making clear that Defendants would do whatever they could to stop John from continuing his work at the DePinho Lab.  John was first told that, irrespective of how vague, ambiguous and confusing some of the Management Plan terms were as well as how they would be applied in given circumstances, MDA HR personnel required John to accept all of the gender-biased, disparately applied conditions of employment as is, or he would simply not be allowed to return to work.  A few days later (July 19, 2019), MDA's David Taylor informs John that they will not proceed with the process to return him to work until MDA receives a "letter of good standing" from UTHealth.  This was one of the first outward indications reflecting the "ping ponging" between MDA and UTHealth to continue to perpetuate a systemically gender-biased system that discriminates against males, to continue to refuse to follow applicable existing policies and legal requirements, and to continue the wholesale obliteration of due process and constitutional rights to which John was entitled.

70.     UTHealth forwarded John to consideration before the UTHealth SEPC.  The SEPC and the manner in which it functioned further demonstrates how UTHealth continues to refuse to provide due process and afford persons (like John) their constitutional rights.  John requested to be allowed to be represented by a support person.  That request was denied.  John requested to be

John Doe vs. MDA / UTHEALTH / UTPD et al
Original Petition & RFD

Page 38

allowed to have a support person present during the SEPC proceedings.  That request was denied.

These requests were significant in that, had John been allowed to have a support person present,

further efforts would be made to seek and obtain the right to question and examine witnesses.

Given what was setting up to be a "kangaroo court" of sorts within the SEPC process, in August

of 2019, John provided a detailed, written statement (with accompanying exhibits) to be provided

to each and every member of the SEPC.  John emails Defendant Wakefield specifically requesting

that the SEPC be provided with **all evidence** relevant to the Title IX case and the Cai accusations.

Upon information and belief, UTHealth failed and refused to provide much of the relevant

evidence, particularly the exculpatory evidence demonstrating the motivations and other factors

showing the accuser (Cai) to be mentally unstable with a history of making and saying false

things.  Exculpatory evidence also existed with respect to neutral, firsthand witnesses who

contradicted the factual events claimed by Cai, and much more.

71.     UTHealth nonetheless continued with a process that was systemically

discriminatory with inherent gender-biases built into the system, and with wholesale lack of due

process.  For example, at the first SEPC hearing that took place on September 23, 2019, John was

not allowed to be accompanied by a support person or legal counsel; John was not allowed to be

present during the proceedings except for the limited time he was questioned before the panel;

the proceedings were conducted in secret, without John's ability to question or present

exculpatory information/evidence in response to the statements made in secret outside of his

presence; John was not allowed to present for the testimony of any other witnesses; John was not

allowed to question any of the witnesses; and John was not allowed to present any witnesses.

John was not even provided any information about the identities of witnesses called to appear before the SEPC.

72.     John, however, did see Defendant King entering and/or exiting the SEPC proceedings, presumably done to present information and the false, fabricated "risk assessment" and similar determinations that UTPD was intent on using against John despite the criminal charges being dismissed and despite the EO investigative findings being largely favorable to John and 100% decisive concerning any false accusations of sex-based misconduct.

73.     On October 8, 2019, John was informed that the SEPC "could not make a decision." John had previously been admitted to the MMS GSBS and to the medical school. John had already met all requirements for his continued admission for his medical studies. That was the status quo on admissions. The false accusations by Cai and the events that followed attempted to derail John's continued admission for medical studies.

74.     When the SEPC could not make a decision in support of Wakefield's finding, the status quo of John's continued admission for medical studies should have been implemented. That would be the result in a non-biased, non-discriminatory system that honored due process and other constitutional rights. But that was not the case. Instead, UTHealth and the UTHealth Actors continued the perpetuation of gender-biased disciplinary ramifications by refusing to allow John to continue his medical studies, and by requiring him to be subjected to further discriminatory and disparate treatment. John was ordered to under a full psychiatric evaluation, and to incur all costs associated with such evaluation. Despite his objections to this, John complied. Unfortunately, the ping-ponging effect between the UTHealth actions and the MDA actions

continued, resulting in John being deprived of his rights to continue his medical studies and to continue his cancer research work at MDA in the DePinho Lab.  The ramifications of a gender-biased, systemically discriminatory system that lacks due process and that obliterates constitutionally protected rights continue for John.

75.     Given all of the evidence John was able to discover and amass to date (which was hardly the full extent of the evidence, information and documents that should have been turned over to John in a system that was not gender-biased and systemically discriminatory against males, and one that honored due process and other constitutional rights), John filed complaints with Institutional Compliance at both MDA and UTHealth on November 26, 2019.   John's complaints presented allegations of policy violations by individuals handling the Title IX complaint and the investigations that followed.  On December 2, 2019, John also filed complaints with Institutional Compliance at both MDA and UTHealth alleging violations by accuser Cai for making a false complaint and for stalking (based on the institutions' policies and other applicable definitions of this sort of conduct).

76.     John is notified in early January of 2020 that MDA had retained attorney Darren Gibson and the firm of Littler Mendelson to investigate certain of the complaints John had filed.  As it turns out, Darren Gibson had a long history of perpetuating the gender-biases at institutions like MDA and UTHealth, consistently and systematically "rubber stamping" the institution's conduct and ensuring that investigative findings were favorable to the institution paying him and his firm.  Gibson had a history of lectures and presentations that made clear his biased positions on factual scenarios similar to what occurred to John.  Instead of conducting a fair, full, and

reasonably complete investigation, Gibson instead acted like "judge, jury and executioner" when it came to such investigations, making one-sided, unilateral decisions about what would be investigated and what would not be investigated. He refused to consider the other side, and limited his investigations to what he wanted presented to substantiate his presumptive findings made in advance of the investigation.

77.     During the investigation of John's complaint, Gibson engaged in Gestapo-type tactics when questioning John. Gibson at times would interrupt John and try to stop him from articulating and presenting his position fully. Gibson made implicit as well as outwardly explicit threats against John, using other MDA anti-retaliation policies as leverage in an attempt to get John to "back off" of certain of his complaints. The Gibson Gestapo interrogations (occurring on multiple days) of John was nothing short of horrendous, filled with iterations of preconceived ideology that perpetuated the gender-biases already prevalent in the UTHealth and MDA systems.

78.     On January 24, 2020, Defendant Obeng contacts John about investigating the "false complaint" and stalking allegations John made concerning Cai. Alert to the fact that Obeng was previously involved (and highly instrumental) in the first round of EO investigations and had exhibited the preconceived gender-biased notions to perpetuate a systemically discriminatory system, John expresses his concerns about potential and/or existing biases, prejudices and/or conflicts of interest stemming from Obeng's involvement in the first round of investigations. John requests that the complaint be assigned to a neutral investigator that did not have preconceived notions or other biases.

79.     On February 5, 2020, John meets with Gibson at the MDA offices for

interrogation.  Gibson's proclivities in furtherance of preconceived gender-biases were in full force.  Gibson at times would raise his voice and change his demeanor (exhibiting anger) towards John, in an effort to intimidate John and get him to "back off" aspects of his complaint.  At other times, Gibson would come right out and threaten John with "anti-retaliation" policy violations, again in an effort to get John to back off.  During the interrogation, John also provided areas of investigation that he requested and encouraged Gibson to entertain, including co-workers who were witnesses to the underlying Cai events that could shed light on the fact that Cai had knowingly made false allegations against John.

80.    MDA and UTHealth again ping-ponged their investigations of John's complaints, staggering the communications and questioning in a thinly veiled timing scheme to allow the sharing of information in what should have been independent investigations.  Again, the MDA and UTHealth systems were set up to promote gender biases and to ensure that maneuvering the two systems would be so problematic that the due process and constitution violations would continue to remain covered up and unexposed.

81.    On February 13, 2020, Obeng notifies John that UTHealth would not reassign John's complaint to an impartial investigator, instead electing to continue the investigation of this complaint by Obeng despite her preconceived notions and gender-based biases.  John reminds Obeng that the Clery Act requires proceedings of this nature to be conducted by officials who do not have a conflict of interest or bias.  Such legal requirements, however, were of no moment to Obeng and her group.  They continued to deny John the legal, due process, and other constitutional protections he was seeking.

82.     On February 27, 2020, Gibson continued the Gestapo interrogation of John. During this session, however, he intensified the threats and combative questioning strategies.  At one point in time, Gibson relays the outright threat of charging John with violations of applicable non-retaliation policies, even though John's right to make a complaint was absolutely protected by the institution's policies and was consistent with his constitutional and other legal rights.

83.     John had continued to comply with all requirements concerning the SEPC-ordered psychiatric evaluations, completing all sessions, and obtaining a report (by the psychiatric personnel) that John should be allowed to continue his medical studies.  The SEPC met again on March 3, 2020.  Again, John was not allowed typical due process rights (right to be present; right to present witnesses; right to examine and confront witnesses; etc.).

84.     On March 11, 2020, the SEPC issued a decision to allow John to resume his medical studies.  At this juncture in time, John had been denied all semblance of due process and other rights (with resulting negative ramifications on him and his career, reputations, and financial standing) that began back in November of 2018.  John is also informed that he is required to take the USMLE Step 1 Exam by July 1, 2020, which is contrary to the policy stated in MMD's Academic Policies and Guidelines (again evidencing disparate and discriminatory treatment of John resulting from the systemically gender-biased systems in place).  John also provides a position statement to Gibson, in light of Gibson's problematic interrogation tactics described above.

85.     On March 26, 2020, Obeng informs John that UTHealth would not initiate an investigation of John's complaints against Cai, providing little to no basis for such decision.  John

was not allowed to present any evidence, witnesses, or even have a hearing on the complaint. John was denied any appeal rights.  More importantly, how UTHealth and MDA handled the complaints John made was further proof of the gender biases inherently prevalent in these illegal systems.  Cai's false complaints against John resulted in him being placed on administrative leave, with restrictions in place that effectively terminated all educational and work opportunities whatsoever.  Cai's false complaints gave Cai favored and "victim status" treatment, and vilified John from every angle.  Cai's false complaints resulted in dual Title IX investigations, with wholesale disregard for John's due process, equal protection and other constitutional rights.  Even after the investigations concluded largely favorable to John, the negative "temporary" actions taken against him were not timely or fully rectified.  This perpetuated the negative ramifications that necessarily results from illegal, discriminatory, gender-biased systems with preconceived notions based simply on accusations as opposed to following the rule of law.

86.    Conversely, John's complaints made against Cai resulted in policies not being followed and implemented in a similar fashion to how John was treated.  Likewise, no actions were taken against Cai pending investigations.  Ultimately, UTHealth refused to do any investigation at all.

87.    On April 24, 2020, Gibson emails to John his preliminary investigation report.  As was signaled by Gibson throughout the interrogation and pseudo-investigative processes, Gibson's concluded that none of John's allegations have been substantiated.  Moreover, true to his threats during the investigative process, Gibson makes a finding that John's mere accusation of improprieties against Cai (which claims by John were substantiated by the MDA and UTHealth

initial EO investigative findings) were a violation of MDA's non-retaliation policy.   In other words, John's mere allegation against Cai, according to the inherently biased Gibson, was in and of itself another violation by John.   MDA's system was now coming full circle, demonstrating through the corruption referenced above that the system was grossly discriminatory; promotes gender biases; and deprives parties of fundamental due process and other constitutional and statutory rights.

88.     On April 29, 2020, John requests to be allowed to examine all exhibits and evidence relevant to Gibson's report (and which are cited to in the report) in order to provide a response.   This request that John be provided even basic evidence on which Gibson relied in arriving at his findings was denied on April 30, 2020.

89.     On May 5, 2020, Campbell notifies John about the results of the November 2019 complaint John files against MDA, including allegations of gender-bias and other improprieties against Wakefield and Reed.   Without providing any basis for such decisions, and without reference to any evidence whatsoever (along with refusing to provide such evidence in support of the decisions to John), Campbell found all of John's complaint allegations to be unsubstantiated except for the violation of policies that Wakefield and Reed were found to have committed in failing to provide proper notice to John about Cai's original complaint.   Campbell found that Wakefield and Reed's **"failure to provide such notification [about Cai complaint against John] resulted in a substantiated Code of Conduct violation as to Principle One regarding compliance with MD Anderson policies and procedures."**   The impact to John from such violation, however, is never rectified.   On the contrary, MDA continues to heap onto the situation

John Doe vs. MDA / UTHEALTH / UTPD et al
Original Petition & RFD

Page 46

further failures to follow applicable law and afford John due process and other rights.  Likewise, they continue the ever-present gender biases so systemically woven into their system that the system must be torn down and restructured in order to afford basic due process and constitutional rights to those affected, including John.

90.     On or about May 11, 2020, John provides further information and documents to Gibson, including witness statements of co-workers that provided direct evidence supporting John's complaint.  Recognizing that the Gibson investigation was not a real, true or even remotely appropriate investigation (but instead was MDA's and Gibson's efforts to "go through the motions, but with a preconceived decision already intended"), MDA and Gibson reopened the investigation to consider the witness statement John provided, along with questioning of other co-workers (all of whom should have been questioned to begin with in furtherance of a proper investigation).  The import of what happened here is that Gibson (and MDA) got caught with outright investigative failures (in furtherance of the corrupt, gender-bias system), and then try to cover those up by going through the motions of considering evidence that should have been considered **before** the initial decision was made, but was not.

91.     On May 29, 2020, true to form, Campbell informed John that she was adopting the Gibson farce of an investigation and found John's complaints to be unsubstantiated.  Campbell further found John's right to lodge a complaint was in itself a retaliatory act towards Cai.  It is befuddling how Gibson and Campbell could credibly come to these conclusions given that Cai's sex-based misconduct accusations were found to be wholly unsubstantiated; given that neutral witnesses of co-workers (albeit male co-workers) provided evidence of Cai's malicious intent as

well as the falsity of Cai's allegations and their observed motivations for Cai's improper actions; and given that policies applicable to the situation were found not to have been followed.

92.     John ultimately gained access to resuming his medical studies, albeit with a 2-year delay and the negative repercussions of such a delay.  The ramifications of his work opportunities with MDA's DePinho Lab, however, continued.  John was not allowed to continue his work in the DePinho Lab, and instead was required to transfer elsewhere.  Cai, on the other hand, continues to reap the benefits that necessarily result from a discriminatory, gender-biased system of policy failures, implementation failures, investigative failures, and violations of due process and constitutional rights.

93.     The MDA and UTHealth systems continued to impose negative ramifications on John, while at the same time continued to reward Cai despite the fact that she made false accusations of sex-based misconduct that Defendants' own EO investigations found to be unsubstantiated.   MDA and UTHealth along with the other Defendants perpetuated the discriminatory treatment and the use of policies, procedures and governmental resources that, without a doubt, incorporate gender-biases that result in the wholesale failure to afford persons like John even basic due process and constitutional rights.

94.     As a result of the wrongful actions by Defendants against John, John's medical studies and cancer research have been irreparably harmed and damaged.  John was not allowed to return to work at MDA's DePinho Lab.  John's research in the DePinho Lab was jeopardized, sabotaged and ultimately wholly destroyed.  John's relationships and reputations with Dr. DePinho, other professors, assistant professors, MDA administration personnel, UTHealth deans

and administrative personnel, fellow students, and co-workers have been seriously damaged, if not entirely ruined. John suffered, and in all likelihood will continue to suffer, from the delays in readmittance to his GSBS and MMS studies, losing/delaying semesters of his medical studies, and creating an inexplicable void that will, in all reasonable likelihood, have substantial negative repercussions to John in terms of occupational opportunities as well as the timing of those opportunities. John has been negatively impacted in his medical studies, PhD studies, cancer research, and has sustained damage to his reputations (both personally and professionally) and his standing in the medical and cancer research communities.

95.     The criminal charges filed and pursued against John were without probable cause, baseless, and without merit. John was required to hire defense counsel to address those criminal charges. John was faced with the risk of loss of liberty and freedom, and suffered the stigma associated with such criminal charges being initiated and pursued, irrespective of the baseless and meritless nature of the charges and allegations. While the criminal charges were dismissed on or about April 17, 2019, certain of the Defendants continue the legal fight in an effort to avoid John being wholly vindicated (along with the ramifications that will necessarily result when that vindication occurs). UTPD along with the help of others at MDA and UTHealth continue to promote the false ideology that John is dangerous and a risk to others, despite John being vindicated at pretty much every level of the investigative processes over the past 2+ years.

96.     In addition to financial and personal resources being used in the criminal proceedings, Defendants' wrongful and illegal actions required John to incur medical and legal costs and expenses to address the investigative and administrative matters with MDA and with

UTHealth; to address the fallout from the manner in which the accusations were investigated and handled; and to defend his good name, standing and reputation.  Despite the investigative findings concluding that the allegations and accusations made against John were unsubstantiated, MDA initially put limitations and conditions on John that were mandatory upon his return to work at MDA.  The limitations and conditions of employment were disparate and discriminatory, and done without affording John even minimal (much less the full measure) of the constitutional and due process rights to which he was absolutely entitled.   When John attempted to assert his constitutional, due process, and institutional policy rights, MDA later appeared to not allow John to return to MDA at all, with MDA presumably content to simply cease further interactions with John and allow him to "rot on the vine" through stonewalling and the failure to timely correct the improprieties that Defendants effected through their failures as set forth in more detail below.

### Violations Committed by Defendants

97.    Based on the factual events set forth above, Defendants violated their own policies in furtherance of their gender-biased systems of investigations and disciplinary actions. Defendants also violated due process and other constitutional protections to which John (and other similarly situated persons) was entitled.   For example, HOOP Policy #59 provides for the following due process:

1. Written notice of the formal complaint, including notice of the grievance process,
   a. a notice of the allegations that potentially constitute prohibited conduct under Hoop #59, ***including sufficient details about the alleged conduct***, including the identity of the parties, if known, and the ***date(s), time(s), and location(s) of the alleged conduct*** known by the university at the time of the Formal Complaint,
   b. a statement of the potential policy violations being investigated,
   c. a statement that the respondent is presumed not responsible for the alleged conduct and that the determination regarding responsibility will be made at the

conclusion of the grievance process,

d.  a statement that both parties may have an advisor of their choice, who may be, but is not required to be, an attorney, and may inspect and review all evidence,

e.  ***a statement that the parties may review evidence gathered as part of any investigation***,

f.  a statement of the provision of this policy that knowingly making false statements or knowingly submitting false information during the Grievance process is prohibited and subject to disciplinary action, and

g.  any other relevant information

*HOOP #59 III.D.4.* (emphasis added).

98.     Contrary to the requirements of policy HOOP #59, John was given at best a vague, verbal notice of the allegations of sexual harassment and possibly stalking, but none of the notices and information as required under HOOP #59.  The manner in which UTHealth and MDA carried out their investigations resulted in John suffering many process deprivations.  John was denied due process when Obeng and Reed failed to provide fair and reasonable notice of the charges against him.  No written notice of the charges and no summary of the allegations were provided to John timely, as required by the policy.  MDA/UTHealth were required to provide John with notice of the complaint and all other information set forth in HOOP #59, and allow him seven (7) days to respond in writing.  This was not done.  John was not provided with written notice of the procedures or rules applicable to the allegations against him on November 15, 2018.  John was not advised verbally or in writing that he could provide questions to ask the accuser or witnesses at the November 15, 2018 meeting.  John was not advised at that meeting that he had the right to have an advisor present, or that he was not obligated to answer questions or answer questions in the presence of UTHealth's Title IX coordinator.

99.     John was not provided with a description of the nature of the specific misconduct

on which the complaint relied.  It was not until more than two weeks later that (December 7, 2018) after he had already been questioned by investigators and after he had been suspended from his work and school that MDA's Wakefield gave John "excerpts" of the allegations against him, still failing to provide him a summary of the allegations sufficient to assist John in defending against the fabricated allegations.

100.    Defendants violated MDA's Admin. Sexual Harassment/Sexual Misconduct Complaint Resolution Procedures in multiple respects.  See MDA Admin. Policy 1962.  This policy provides for a host of protections, including appeal rights.  In particular, the determination of a violation or disciplinary action imposed or that results may be appealed.  John was not afforded hearing and appeal rights to which he was entitled under the policy.

101.    Each individual policy right that was violated contributes to further manifestations of additional improprieties that become exponentially difficult to overcome.  Each step of the process to which John was subjected was filled with utter contempt, direct and indirect hostility, threats of retaliation, further charges for John asserting his policy and due process rights, and a host of other ramifications that demonstrate the MDA and UTHealth systems are fundamentally unfair; inherently and systemically gender-biased and discriminatory; and result in the abolition of basic due process and constitutional rights, all of which John was subjected to and damaged by.

## V.  INCORPORATION OF ALLEGATIONS

102.    All of the allegations in each of the foregoing paragraphs are incorporated by reference into each of the following claims for relief as if fully set forth in each such claim.

## VI.  CAUSES OF ACTION

### A.  VIOLATION OF JOHN'S CONSTITUTIONAL RIGHTS UNDER ARTICLE I, SECTION 19 OF THE TEXAS CONSTITUTION AND FOURTH, FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION 42 U.S.C. §1983 – DUE PROCESS VIOLATIONS

103.    Based upon and incorporating the facts pled above, Plaintiff John asserts claims for violations of his constitutional rights protected by Article I, Section 19 of the Texas Constitution, as well as his constitutional rights protected by the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States.  The actions of Defendants (as set forth above) reflect the wholesale disregard for John's constitutional rights to due process of law under Article I, Section 19 of the Texas Constitution.   John's Fourth Amendment and Fourteenth Amendment constitutional rights were violated by and through the actions of Defendants and their agents and representatives as set forth above, including their actions to initiate and accomplish the administrative proceedings without regard to John's due process rights and without regard to the applicable institutional policies.   Additionally, Defendants committed further and additional violations of John's rights by and through the malicious criminal prosecution of John as well as his false arrest and the resulting actions taken as part of the criminal proceedings.  Defendants, without probable cause or other basis, sought, initiated, filed, pursued and prosecuted false criminal charges against John, and did so maliciously.

104.    With respect to the due process violations, the Due Process Clause of the United States Constitution is implicated by higher education disciplinary decisions, procedures and inherently discriminatory and gender-biased systems that fail to provide for due process rights, and that are implemented without regard to established policies and procedures that should be

John Doe vs. MDA / UTHEALTH / UTPD et al
Original Petition & RFD

Page 53

fairly, evenly and equitably applied to all persons.

105.   As MDA and UTHealth promised and assured to all students and employees (including John), and as guaranteed by the United States Constitution, John was entitled to i) a meaningful opportunity to be heard; ii) the right to fair, even and non-discriminatory application of all policies and procedures within the realm of the proceedings; and iii) a full and fair process (including all appeal rights) commensurate with the seriousness of the allegations and the potential discipline, sanctions and repercussions he faced.  Before enrolling at UTHealth and continuing his educational endeavors through the opportunities he sought at MDA, John relied on their promises—as public educational entities and/or affiliated with and part of the State of Texas—to honor John's due process rights under the constitution of the State of Texas as well as the United States Constitution.

106.   The Fourteenth Amendment provides that no person shall be deprived "of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV, §1.  The Fourteenth Amendment protects both procedural and substantive due process.  Procedural due process ensures that state actors utilize the required and fair proceedings before they can deprive someone of a life, liberty, or property interest.  Defendants' actions deprived John of liberties and property interests (including his interests in pursuing medical studies as well as his interests in the cancer research he was conducting as well as the grant applications on which he was working at the time the false allegations were made), in violation of his due process rights.  John had a constitutionally protected liberty interest under the Texas Constitution in pursuing a higher public medical education.

107.   John also had/has reputational interests that were damaged by Defendants' actions.

Defendants' actions impeded John's career goals and his reputation, and did so without affording John minimal due process protections.  Moreover, given John's accomplishments to date and his standing in his career field, his good name, reputation, honor and integrity were irreparably harmed and damaged by Defendants' failures to provide minimal due process.

108.    The individual MDA Actors, UTHealth Actors, and UTPD Actors were all acting or purporting to act under color of law and/or were acting at times in their official capacities, and at times in their individual capacities.  These individual Defendants committed violations of John's rights secured by the Texas and United States Constitutions, with such deprivations resulting from the actions of all the individual Defendants (in combination with other Jake and Jane Does, or with their help).

109.    Defendants violations of John's due process rights include the failure on both substantive and procedural basis.   Given the disciplinary sanctions at issue concerning the accusations that were made against John, in combination with the criminal allegations and charges that were concurrently initiated and pursued, Defendants should have employed more formalized and stringent processes to ensure John's due process rights were fully provided.   Instead, Defendants did just the opposite, failing and refusing to provide even minimal, less stringent opportunities for John: i) to be heard, ii) to present witnesses and evidence, iii) to be provided sufficient information of the allegations made, iv) to confront or cross examine witnesses, v) to be provided the evidence claimed in support of the allegations, vi) to be provided the evidence to support the investigative findings, vii) to appeal the findings, amongst other things.

110.    Moreover,  the  systemically  gender-biased  systems  at  MDA  and  UTHealth

encouraged and fostered an environment that promoted preconceived notions and beliefs, as opposed to following the evidence and arriving at a fair, logical, common-sense and accurate conclusion based on the credible evidence presented.  The notions of equity, fairness, and clarity are "thrown out the window" when it comes to how Defendants implemented the investigative processes of their respective disciplinary systems.  Defendants violated John's procedural due process rights in multiple respects, including: i) Defendants' failure to provide John with information of the allegations sufficient to allow him to respond and present a full defense; ii) Defendants' failure to provide John the evidence to support the incriminating decisions and actions taken against John; iii) Defendants' failure and refusal to provide John the information, documents, and evidence on which they rely in support of their findings and any decisions on actions then taken against John; and iv) Defendants' failure and refusal to follow institutional policies and to allow John to be represented or have representative advisors present, to allow John to present witnesses, to allow John to examine and cross-examine witnesses, and to allow John the ability to even be present during the proceedings.

111.    The initial administrative leave and the harsh restrictions, directives, and other negative ramifications that followed and that were imposed on John were, in and of themselves, harmful, harsh deprivations of John's liberties and property rights.  The manner in which the two governmental units (MDA and UTHealth) "ping ponged" John between different administrative requirements and proceedings prolonged the negative ramifications to John from Defendants' illegal and unconstitutional actions.  Given the severity of the allegations and the resulting disciplinary ramifications as well as loss of liberties, freedoms and property rights, John should

John Doe vs. MDA / UTHEALTH / UTPD et al
Original Petition & RFD

Page 56

have been afforded some of the most formal, stringent procedural due processes available, as he had requested.

112.    Each individual act committed by Defendants in furtherance of their illegal scheme was in itself a violation of 42 USC §1983, and a violation of a myriad of John's constitutional rights.  The totality of the actions by Defendants also exemplified and demonstrated the disparate, ad hoc, discriminatory and gender-biased systems in play.   These disciplinary/investigative systems were and remain replete with systemic gender-based biases that promote the continuation of wholesale deprivations of substantive and procedural due process, and as such injunctive relief is necessary to take corrective action to: i) enjoin MDA and UTHealth, as well as any and all of the other individual Defendants, from continuing to utilize such illegal and unconstitutional disciplinary and investigative systems and processes; and ii) correct John's academic record and standing, as well as provide to John the full benefits of work opportunities to which he was entitled had the illegalities stemming from the false accusations not occurred.  Simply put, corrective action through injunctive relief is necessary to stop Defendants' arrogant refusal to follow the law and to stop the continuation of due process and constitutional violations inherent in such systems.

113.    Defendants violated the Texas Constitution as well as the U.S. Constitution when John was deprived of requisite due process and equal protection to reach a preordained result.  Those deprivations continued despite findings largely favorable to John, indicating the loss of liberties and property rights resulting from inherently biased and discriminatory systems that fail to provide sufficient substantive and procedure due process, and that fail to follow well-established legal authorities applicable to MDA and UTHealth.  John was deprived sufficient notice of the

allegations, and deprived a fair opportunity to review and examine the information Defendants claimed, gathered, or had in support of the allegations and findings.  A thorough inspection and examination was needed for John to defend himself fully and fairly against the false accusations.

114.    Defendants presumed John's guilt and failed to examine critically the discrepancies in Cai's testimony and assertions.  Defendants failed to give equal or fair consideration to John's testimony and evidence due to the gender-based biases at play.  Defendants failed to fairly evaluate the testimony and evidence of neutral witnesses (co-workers and co-students), instead opting to perpetuate the lie that every accusation of sex-based misconduct must be given a higher magnitude of credence irrespective of the contradictions surrounding such accusations.  Defendants employed gender-biased stereotypes to credit Cai's allegations over John's evidence and testimony (and that of all other witnesses), reaching an erroneous conclusion that was contrary to the credible evidence, and denying John the right to a process (including a fair hearing or appeal) free of bias.  Certain of the Defendants (MDA Actors, UTHealth Actors and UTPD Actors) accepted and promoted Cai's allegations as credible and truthful despite inconsistencies and neutral witness testimony to the contrary, and despite Cai's own mental health conditions that causally relate to her perceptions and the state of reality that existed at the time.  John had no opportunity to question or cross-examine Cai for bias or motive, and to fully present his position on this vital fact.  It is hardly reasonable for Defendants to take the position that John failed to present evidence of his position when he was denied every opportunity to do so and ordered to have no interaction with his accuser; ordered to refrain from accessing MDA and UTHealth facilities; and prevented from seeing the accusations or the evidence he was to refute.

John Doe vs. MDA / UTHEALTH / UTPD et al
Original Petition & RFD

Page 58

115.    As a direct and proximate result of the above conduct, John sustained significant damages and injuries, including, without limitation: i) reputational damage accompanied by an alteration in legal status that deprived him of a right he previously held; ii) economic injuries and financial costs/losses, both past and future; iii) mental anguish; iv) loss of property rights, as well as loss of occupational and educational opportunities; v) and the continued deprivation of work-related opportunities to which he should be allowed and would have obtained but for Defendants' wrongful actions as set forth herein.

116.    Accordingly, in addition to monetary damages for economic injuries, costs and other financial losses, John seeks injunctive relief, including full reinstatement to all educational and work opportunities.  John also seeks prospective injunctive relief requiring Defendants MDA and UTHealth to correct his educational and work records, and to reinstate him to the positions he had or should have had but for Defendants' wrongful actions and conduct.

117.    Based on the allegations set forth herein, John is also entitled to a declaration that MDA's and UTHealth's policies, as applied to John and others similarly situated, violate due process rights afforded to John and others pursuant to the Texas and US Constitutions.  Such declaratory judgment relief includes, but is not limited to:  i) a declaration that MDA and UTHealth's policies and procedures, as they were applied to and implemented against John, were and continue to be unconstitutional and a violation of due process rights; and ii) a declaration that MDA and UTHealth's policies and procedures, as they were applied to and implemented against John, violate the Due Process Clause of the United States Constitution such that a) John is fully reinstated to the full measure of all benefits of educational and work opportunities at UTHealth

and MDA that would and should be available to him but for Defendants' wrongful conduct; b) John's academic and work records are expunged of any and all references to the false allegations as well as any negative ramifications of same; c) Defendants are prohibited and enjoined from disclosing the false allegations and the results of any disciplinary actions (temporary or otherwise) concerning John; and d) John is provided all remedial actions to put John at the same level of accomplishments (both educationally and occupationally) had Defendants not committed the wrongful acts as alleged herein.

### B.   VIOLATION OF JOHN'S CONSTITUTIONAL RIGHTS UNDER ARTICLE I, SECTIONS 3 AND 3A OF THE TEXAS CONSTITUTION AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION 42 U.S.C. §1983 – EQUAL PROTECTION CLAUSE VIOLATIONS

118.     Based upon and incorporating the facts pled above, Plaintiff John asserts claims for violations of his constitutional rights protected by Sections 3 and 3a of Article I of the Texas Constitution, and as protected by the Fourteenth Amendment of the Constitution of the United States.  The actions of Defendants (as set forth in the allegations above) reflect unconstitutional gender bias and sex discrimination supporting John's claims that MDA and UTHealth violated John's equal protection rights as guaranteed by Article I, Sections 3 and 3a of the Texas Constitution, and as guaranteed by the Fourteenth Amendment of the U.S. Constitution, and therefore are violations of 42 U.S.C. §1983.  John is entitled to a declaration that MDA's and UTHealth's policies as applied to John violated his equal protection rights such that a) John is fully reinstated to the full measure of all benefits of educational and work opportunities at UTHealth and MDA that would and should be available to him but for Defendants' wrongful conduct; b) John's academic and work records are expunged of any and all references to the false allegations

as well as any negative ramifications of same; c) Defendants are prohibited and enjoined from disclosing the false allegations and the results of any disciplinary actions (temporary or otherwise) concerning John; and d) John is provided all remedial actions to put John at the same level of accomplishments (both educationally and occupationally) had Defendants not committed the wrongful acts as alleged herein.  Additionally, John seeks and is entitled to monetary damages for economic losses and other financial ramifications from Defendants' wrongful actions and conduct as alleged herein.

### C.   VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972

119.   Based upon and incorporating the facts pled above, Plaintiff John asserts claims for violations of Title IX of the Education Amendments of 1972 (referred to herein as "Title IX"). Title IX provides, in relevant part, that: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  Title IX applies to an entire school or institution if any part of that school receives federal funds.  MDA and UTHealth receive federal funding, and as such are required to abide fully by the Title IX requirements.  Title IX violations may occur by an institution's imposition of institutional discipline where gender is a motivating factor in the decisions that result in negative action like the actions and decisions to which John was subjected by Defendants.  John alleges and asserts facts, with supporting evidence, showing that Defendants discriminated against John on the basis of his gender/sex.

120.   John is entitled to a declaration that MDA's and UTHealth's policies as applied to John violated Title IX such that a) John is fully reinstated to the full measure of all benefits of

educational and work opportunities at UTHealth and MDA that would and should be available to him but for Defendants' wrongful conduct; b) John's academic and work records are expunged of any and all references to the false allegations as well as any negative ramifications of same; c) Defendants are prohibited and enjoined from disclosing the false allegations and the results of any disciplinary actions (temporary or otherwise) concerning John; and d) John is provided all remedial actions to put John at the same level of accomplishments (both educationally and occupationally) had Defendants not committed the wrongful acts as alleged herein.  Additionally, John seeks and is entitled to monetary damages for economic losses and other financial ramifications from Defendants' wrongful actions and conduct as alleged herein.

### D.    VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972

121.    Based upon and incorporating the facts pled above, Plaintiff John asserts claims for declaratory relief against MDA and UTHealth.  John has a tangible legal interest in requiring MDA and UTHealth administer their respective policies, procedures and Title IX regulations and guidelines in a lawful manner.  This includes ensuring the policies, procedures and regulations (as promulgated by each respective institution or governmental unit) do not discriminate based on gender; are void of gender biases; and are applied, equally, fairly and equitably without regard to gender/sex or any other prohibited factor.  MDA and UTHealth have violated John's rights under State and Federal law, including the constitutional provisions cited to above.

122.    John's education and future employment and career opportunities have been severely damaged.  Without appropriate redress, the unfair and erroneous outcomes of the EO Investigations and the outcomes of John's complaints will continue to cause John irreparable harm.

Accordingly, there exists a justiciable controversy concerning John and his educational and occupational rights, opportunities, and benefits.  Judicial intervention is not premature because unless Defendants' actions are enjoined, MDA will continue to obstruct John's occupational opportunities (compared to what John had before the wrongful actions took place) and, further, UTHealth's indicated position of further negative actions contemplated against John as a result of the recent findings made by Campbell will continue.

123.    All elements for bringing a cause of action for violations of 42 U.S.C. §1983 based on malicious prosecution of criminal proceedings, and/or for malicious criminal prosecution through the filing and prosecution of false charges for harassing communications, exist.  Criminal prosecutions were commenced against John that were initiated or procured by Defendants.  Such criminal prosecutions at issue as set forth in this pleading were terminated in John's favor, and he was innocent of all such charges.  Defendants did not have probable cause to initiate or procure such prosecutions.  The prosecutions were initiated and procured with malice, resulting in John suffering substantial damages and injuries.

### E.    VIOLATION OF JOHN'S CONSTITUTIONAL RIGHTS §1983 ALTERNATIVE CLAIMS BASED ON NEGLIGENCE

124.    Based upon and incorporating the facts pled above, Plaintiff John asserts alternative claims for violations of 42 U.S.C. §1983 resulting from Defendants' negligence in failing to properly implement policies and procedures that are free of unconstitutional gender-based biases and other discriminatory factors, and with respect to Defendants' negligence in failing to investigate and evaluate evidence concerning the underlying allegations in a way that was legal and that fully complies with applicable State and Federal laws as alleged and pled herein.

John Doe vs. MDA / UTHEALTH / UTPD et al
Original Petition & RFD

Page 63

Defendants UTHealth and MDA implemented and put in place discriminatory policies, or alternatively applied such policies in illegal ways, instead of ensuring that adequate and much needed policies, procedures, protocols and guidelines were implemented and followed. Defendants failed to properly monitor and supervise personnel engaged in carrying out the actions in furtherance of such illegal policies, procedures, protocols and guidelines as alleged herein. Defendants failed to provide training and controls over the ability of its personnel to deal with and address false statements and to prevent any personnel (including UTPD Actors) from providing false information in order to effectuate the violations against John as set forth above.  Either Defendants' actual maliciousness, or alternatively Defendants' indifference concerning the actions of their duly charged agents and representatives, resulted in the improper initiation and procurement of the disciplinary processes and the criminal charges against John.  Such policy failures now and in the future resulted, and will continue to result, in the continuing violations of the constitution rights of citizens and residents of Texas and the United States.

125.    Proper remedial measures and the implementation of adequate policies, procedures, guidelines and protocols, in combination with proper oversight, monitoring, supervision and training of personnel carrying out the actions, would prevent situations to occur that allow for and effectuate the violations of constitutional rights similar to those violations that John was caused to suffer.  Additionally, all Defendants were negligent, or in the alternative committed violations of John's constitutional and civil rights in violation of 42 U.S.C. §1983, in the following respects:

a.    Failing to implement written policies, procedures, protocols and guidelines for its investigating and supervisory personnel in the context of the proceedings John was forced to defend;

b.   Failing to implement written policies, procedures, protocols and guidelines for its investigating and supervisory personnel ensuring that probable cause exists based on truthful information and statements to initiate and/or pursue or participate in pursuing criminal charges and proceedings;

c.   Failing to implement written policies, procedures, protocols and guidelines for its investigating and supervisory personnel preventing the implementation and use of processes that are illegal and that violate due process and other constitutional rights and/or that violate the protections afforded to John under Title IX, including the full measure of all substantive and procedural due process protections as alleged and pled herein;

d.   Failing to implement written policies, procedures, protocols and guidelines for its investigating and supervisory personnel, along with training and proper secondary oversight, to prevent the illegal investigatory processes as well as the ramifications to persons falsely accused like John was in this case; and

e.   Failing to supervise and train its investigating personnel to ensure that all processes and actions are free of gender biases, and to ensure that all actions by Defendants and their personnel comply with applicable State and Federal law, thereby ensuring that all constitutionally protected rights are not infringed or obliterated, as was the case in Defendants' wrongful actions to John in this case.

126.   All elements for bringing a cause of action for violations of 42 U.S.C. §1983 based on such negligence exist.   Disciplinary proceedings as well as criminal prosecutions were commenced against John that were initiated or procured by or through Defendants and their representatives and accomplished through the failures to have in place the policies, procedures, protocols and guidelines set forth above.  With respect to the criminal prosecution at issue as set forth in this pleading, such criminal proceedings were terminated in John's favor through the Court of Appeals level, as he was innocent of all such charges.  The disciplinary proceedings and criminal prosecutions, and all resulting impacts and negative repercussions to John, would have been wholly avoided if the policies, procedures, protocols and guidelines had been in place and properly utilized.  These failures resulted in John suffering substantial damages and injuries.

### F. VIOLATION OF JOHN'S CONSTITUTIONAL RIGHTS TEXAS CONSTITUTION ARTICLE I, §17

127.    Under the "Takings Clause" of Article I, §17 of the Texas Constitution, citizens are protected from the property being taken, damaged or destroyed for or applied to public use without adequate compensation or consent.  Based upon and incorporating the facts pled above, Plaintiff John asserts claims for violations of the Takings Clause (under the Texas Constitution) committed by Defendants.  More specifically, through the illegal actions, schemes and conspiracies set forth above, Defendants violated the Takings Clause by improperly and illegally taking (or by permissibly taking utilizing illegal methods and means) John's rights in and to the research grants, and by improperly and illegally taking (or by permissibly taking utilizing illegal methods and means) John's rights in and to the property items damaged and destroyed by and through the implementation of unconstitutional processes as referenced above.  This includes the taking or destruction of John's research ongoing at the time that the false allegations were made, along with Defendants implementation of the wrongful actions against John as alleged above.  Such actions intentionally performed and taken by Defendants were accomplished through the wrongful actions committed by Defendants and their agents and representatives; were without justification, privilege or excuse; resulted in the taking of John's property and property rights; and were either wholly or partially for public use.  The taking of John's property and property rights resulted in substantial damages and injuries to John.

### G. CONSPIRACY CLAIMS

128.    Based upon and incorporating the facts pled above, Defendants jointly conspired with each other, with their agents and representatives, and with other third parties to violate John's

constitutional rights in multiple respects as set forth above, all of which constitutional violations are incorporated herein by reference.  These claims include the involvement and participation of other Jake and Jane Does against whom John's claims are now being brought.  They jointly conspired to procure and effectuate the violations of the Texas Constitution as well as the violations of the US Constitution and 42 U.S.C. §1983; to initiate and procure the malicious criminal prosecution of John; to accomplish the constitutional violations of John's Fourth, Fifth and Fourteenth Amendments; to accomplish the due process and equal protection violations as alleged herein; and to inflict the damages and injuries to John as set forth herein.

## VII.  CAUSATION AND JOINT LIABILITY

129.    Each and all of the above were the proximate or producing causes of damages and injuries to John who was innocent of any fault contributing to or causing these damages and injuries.  All conditions precedent to John's recovery of damages have been met or have occurred.

130.    John alleges and asserts, as appropriate, the doctrines of agency, respondent superior and vicarious liability.  Defendants MDA and UTHealth are believed to be, at all material times, the principals for whom Defendant UTPD and the MDA Actors, UTHealth Actors, and UTPD Actors took actions that caused or participated in causing injuries and damages to John.  Likewise, Defendant UTPD and the UTPD Actors were the agents of MDA and UTHealth, acting for or on behalf of MDA and UTHealth at all material times.  Accordingly, John asserts and pleads that Defendants are and should be found jointly and severally liable for John's damages and injuries resulting from each claim or cause of action to which each Defendant may be liable under applicable law, including those caused by others involved in the conspiracies to accomplish their

illegal schemes, artifices and enterprises, and including those caused by others employed by Defendants or working with Defendants to cause the damages and injuries as set forth and alleged herein.

## VIII. DAMAGES

131.    As a direct and proximate result of Defendants' conduct and actions, John has suffered damages and injuries, which are continuing in nature, in addition to the injuries and damages pled above, which are incorporated herein by reference.  John suffered, suffers and will continue to suffer economic losses; loss of funds, monies, assets and property; loss of income/revenues and business/professional opportunities; loss of education opportunities; loss of earnings/profits; mental anguish and emotional upheaval; diminishment in and loss of earnings opportunities and earning capacities, both past and future; damage to John's personal and professional reputations; and other damages as will be proven at trial.  John seeks all compensatory and pecuniary damages, in the past and the future, to which he may be entitled.  John also seeks compensatory and consequential damages proximately flowing from the wrongful conduct and actions of Defendants.

132.    John has also incurred damages and injuries in the form of out-of-pocket costs and expenses to correct Defendants' unlawful and wrongful acts as asserted herein above including, but not limited to, attorney's fees for such legal services in connection with preparation, trial, appeal and collection as may become necessary, along with all fees incurred to defend against the criminal charges as well as the administrative proceedings and this legal proceeding.  John seeks all other incidental and consequential damages as are supported by the facts underlying John's

John Doe vs. MDA / UTHEALTH / UTPD et al
Original Petition & RFD

Page 68

claims in this litigation and to which John may be entitled under the claims as alleged and pled herein, as well as for violations of 42 U.S.C. §1983 and for violations of his constitutional rights.

133.    John also seeks damages and compensation for the severe and substantial mental anguish, physical ramifications from the wrongful conduct set forth herein, emotional distress and compensatory damages, along with damage to his professional and personal reputations that resulted from the wrongful actions of Defendants.  John seeks damage and compensation for losses to business relationships with other persons and companies; loss of business opportunities; and loss of professional and cancer research opportunities.  Accordingly, John seeks all reasonable general, special, incidental and consequential damages as are available, whether at law or in equity, and as shall be proven at trial.

134.    Because Defendants' conduct was intentional, fraudulent, deceptive, willful and malicious, or alternatively was reckless and grossly negligent, John further seeks exemplary or enhanced damages to the extent permitted by law.  If and to the extent such exemplary or enhanced damages are permitted, John seeks such damages in amounts to be determined by the jury but no less than are appropriate, necessary and proper to punish Defendants for their criminal, unlawful, fraudulent, deceptive and malicious conduct (or their grossly negligent and reckless conduct and actions) in furtherance of their violations of 42 U.S.C. §1983 and violations of John's constitutional rights; to deter Defendants from committing such unlawful, fraudulent, deceptive and malicious conduct (or alternatively grossly negligent conduct) in the future; and to serve as an example to others.

135.    John seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and also to avoid unjust enrichment to the Defendants.  John also seeks post judgment interest at the maximum rate allowed by law.

## IX.  JURY DEMAND

136.    John asserts his right under Article I, Section 15 of the Texas Constitution and hereby demands a jury trial in accordance with TEX. R. CIV. P. 216.

WHEREFORE, premises considered, **JOHN DOE** respectfully requests that Defendants be cited to appear and answer this Petition and that he be granted temporary and/or permanent injunctive relief, declaratory judgment relief, and all other injunctive or equitable relief against Defendants as pled and requested herein.

Additionally, on final hearing, **JOHN DOE** further requests that he have and recover judgment against Defendants, jointly and severally, as follows:

a.    For all general, special, incidental and consequential damages to which Plaintiff may be entitled pursuant to this Petition or any amendment(s) thereto, including but not limited to all those damages set forth and pled herein;

b.    Compensatory, pecuniary and consequential damages, attorneys' fees and litigation costs, and out of pocket expenses, including compensation for mental anguish, emotional upheaval, and damage to personal and professional reputations, relationships, contractual rights, and business/professional opportunities;

c.    Enhanced, statutory and/or exemplary/punitive damages, to the extent permitted by law;

d.    Prejudgment interest at the highest rate permitted by law;

e.    Post judgment interest at the highest rate permitted by law from the date of judgment until paid;

f.      Costs of Court;

and all such other and further relief, at law or in equity, to which Plaintiff **JOHN DOE** may be justly

entitled whether by this Petition or by any amendment hereto and which this Court deems proper.

Respectfully submitted,

KRENEK LAW OFFICES, PLLC

By:  /s/ Eddie M. Krenek
      Eddie M. Krenek
      edkrenek@kreneklaw.com
      Texas Bar No. 11724980
      Tricia K. Krenek
      tkthompson@kreneklaw.com
      Texas Bar No. 24031324
      21555 Provincial Blvd.
      Katy, Texas 77450
      Telephone: (281) 578-7711
      Fax: (281) 578-8988

ATTORNEYS FOR PLAINTIFF JOHN DOE

Unofficial Copy Office of Marilyn Burgess District Clerk