**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **JOHN DOE** | § | |
|     **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **THE UNIVERSITY OF TEXAS M.D.** | § | |
| **ANDERSON CANCER CENTER;** | § | |
| **THE UNIVERSITY OF TEXAS HEALTH** | § | **CIVIL ACTION NO. 4:21-cv-1356** |
| **SCIENCE CENTER AT HOUSTON;** | § | |
| **THE UNIVERSITY OF TEXAS AT** | § | |
| **HOUSTON POLICE DEPARTMENT;** | § | |
| **MARGARET MCNEESE;** | § | |
| **TIFFANY DILLARD OBENG;** | § | |
| **MICHAEL REDWINE; DEANA MOYLAN;** | § | |
| **SHERI WAKEFIELD; YOLAN A. CAMPBELL;** | § | |
| **KAREN D. (HARVEY) REED;** | § | |
| **VICKI L. KING; KIMBERLY D. MILLER;** | § | |
| **PATRICIA J. WILLIAMS; and all other** | § | **JURY DEMANDED** |
| **affiliated JAKE/JANE DOES** | § | |
|     **Defendants.** | § | |

---

## PLAINTIFF'S SECOND AMENDED COMPLAINT

---

    Plaintiff  **JOHN DOE** (sometimes referred to herein as "John" or "John Doe" or

"Plaintiff")[1] files this Plaintiff's Second Amended Complaint, bringing suit against **THE**

---

[1] Plaintiff John Doe files this lawsuit pseudonymously given the sensitive nature of the allegations (proven to be false) and the stigma that attaches to the accused from wholly specious allegations like those alleged.  Not only does John Doe deny the allegations, the investigations conducted overwhelmingly show his actions to be proper and the claims unfounded.  Plaintiff asserts masking is necessary to avoid/minimize further damage and injuries to Plaintiff.

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 1

UNIVERSITY OF TEXAS M.D. ANDERSON CANCER CENTER (sometimes referred to herein as "MDA"); THE UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT HOUSTON (sometimes referred to herein as "UTHealth"); MARGARET MCNEESE ("McNeese"); TIFFANY DILLARD OBENG ("Obeng"); MICHAEL REDWINE ("Redwine"); DEANA MOYLAN ("Moylan") [McNeese, Obeng, Redwine and Moylan sometimes collectively referred to herein as "UTH Actors"]; SHERI WAKEFIELD ("Wakefield"); YOLAN A. CAMPBELL ("Campbell"); KAREN D. (HARVEY) REED ("Reed") [Wakefield, Campbell and Reed sometimes collectively referred to herein as "MDA Actors"]; VICKI L. KING ("King"); KIMBERLY D. MILLER ("Miller"); PATRICIA J. WILLIAMS ("Williams") [King, Miller and Williams sometimes collectively referred to herein as "campus police Actors"]; and all other affiliated JAKE/JANE DOES ("JJD") [the JJD Defendants include all MDA, UTHealth and UTPD personnel involved in the actionable violations that caused and contributed to the damages and injuries to John Doe, as alleged herein, including those working in concert and conspiracy with other named Defendants] (all of these named defendants sometimes collectively referred to herein as "Defendants").  For such claims and causes of action, John Doe would respectfully show as follows:

## I.      PARTIES, JURISDICTION AND VENUE

1.      Plaintiff **John Doe** is an individual that was residing in Harris County, Texas during some or all of the material events at issue in this case.  John Doe was actively employed

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 2

at MDA and affiliated with UTHealth in certain capacities that related to his pursuit of educational and work opportunities in the healthcare field, in furtherance of a career that was many years in the making. John Doe was irreparably harmed, both personally and professionally, by the wrongful, illegal, and improper actions of the Defendants as alleged herein. The damages and injuries to John Doe are continuing in nature, and will be exacerbated or exponentially magnified if corrective action and other relief requested herein are not granted and implemented.

2.      Defendant **The University of Texas M.D. Anderson Cancer Center ("MDA")** is a governmental agency or unit of the State of Texas. MDA has been served with citation and process, and has answered and made an appearance herein. MDA was engaged in the actions and courses of conduct, and fostered and facilitated the improprieties and illegalities (about which Plaintiff complains) in Harris County, Texas at all material times relevant to the claims and matters at issue in this lawsuit. MDA is the beneficiary of state appropriates and is the recipient of state and federal grants and funding. Such financial funding requires MDA to comply with applicable due process protections and antidiscrimination laws, including, but not limited to, Title IX of the Educational Amendments of 1972, 20 USC §1681, *et seq*. and Title VII, 42 USC §2000A and §2000e, *et seq*.

3.      Defendant **The University of Texas Health Science Center at Houston** ("UTH" or "**UTHealth**") is a governmental agency or unit of the State of Texas. UTHealth has been served with citation and process, and has answered and made an appearance herein. UTHealth was engaged in the actions and courses of conduct, and fostered and facilitated the improprieties and illegalities (about which Plaintiff complains) in Harris County, Texas at all material times relevant

to the claims and matters at issue in this lawsuit.  UTHealth is the beneficiary of state appropriates and is the recipient of state and federal grants and funding.  Such financial funding requires MDA to comply with applicable due process protections and antidiscrimination laws, including, but not limited to, Title IX of the Educational Amendments of 1972, 20 USC §1681, *et seq*.

4.      Defendant **The University of Texas at Houston Police Department** (referred to herein as "**campus police**" or "**UTPD**" or "**UTP**") is a governmental agency or unit of the State of Texas, with this unit and its personnel serving both MDA and UTHealth in various capacities. No claims are brought against UTPD as a separately-existing entity/defendant; however, references to the actions of campus police and its personnel are included and set forth hereinbelow, with such actions being taken not only in the official and/or individual capacities of the individuals referenced (as specifically alleged herein), but also with respect to such individuals acting as the agents and representatives of UTHealth and MDA in furtherance of the wrongful actions undertaken by these entities in accomplishing the wrongful actions as alleged herein.

5.      Defendant **Margaret McNeese** ("**McNeese**") was the Title IX Coordinator and Vice Dean for Admissions and Student Affairs, McGovern Medical School, at UTHealth and/or with respect to the roles and actions taken concerning UTHealth's Student Evaluations and Promotions Committee ("SEPC").  McNeese also served in a decision-making and/or management capacity over certain of the organizational units under the control of UTHealth, as well as in her capacity over campus police personnel acting as agents for her and/or UTHealth.  McNeese has been served with citation and process, and has answered and made an appearance herein.  This Defendant was actively involved in the illegalities, improprieties, and violations as alleged herein.

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 4

The allegations lodged against this Defendant concern actions taken outside the proper course and scope of legitimate, legal, or permissible discretionary acts and, as such, are pursued against this Defendant in her individual capacity or as otherwise permitted by applicable law.  Alternatively, this Defendant's actions and conduct violated clearly established statutory or constitutional rights of John Doe which a reasonable person would have known and should not have violated; were done in furtherance of the flawed and unconstitutional investigative and disciplinary proceedings at issue as alleged herein; were done in violation of applicable institutional policies, procedures and norms, as well as in violation of applicable law; and/or were done intentionally and with malice.  Additionally or in the alternative, this Defendant's responsibilities (to the extent acting or purporting to act under color of law) included, but were not limited to, ensuring that the institutional Defendants (to include MDA and UTHealth, as applicable) and the campus police personnel complied with all applicable due process laws and requirements; complied with all equal protection laws; complied with all applicable institutional policies; complied with Title IX of the Educational Amendments of 1972, 20 USC §1681, *et seq*.; and ensured equal, fair, and nondiscriminatory treatment of all persons and groups, including John Doe.

6.     Defendant **Tiffany Dillard Obeng** ("**Obeng**") was an Equal Opportunity Advisor in the Diversity & Equal Opportunity Department at UTHealth.  Obeng has been served with citation and process, and has answered and made an appearance herein.  This Defendant was actively involved in the illegalities, improprieties, and violations as alleged herein.  The allegations lodged against this Defendant concern actions taken outside the proper course and scope of legitimate, legal, or permissible discretionary acts and, as such, are pursued against this Defendant

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 5

in their individual capacity or as otherwise permitted by applicable law.  Alternatively, this Defendant's actions and conduct violated clearly established statutory or constitutional rights of John Doe which a reasonable person would have known and should not have violated; were done in furtherance of the flawed and unconstitutional investigative and disciplinary proceedings at issue as alleged herein; were done in violation of applicable institutional policies, procedures and norms, as well as in violation of applicable law; and/or were done intentionally and with malice. Additionally or in the alternative, this Defendant's responsibilities (to the extent acting or purporting to act under color of law) included, but were not limited to, ensuring that the institutional Defendants (to include MDA and UTHealth, as applicable) and the campus police personnel complied with all applicable due process laws and requirements; complied with all equal protection laws; complied with all applicable institutional policies; complied with Title IX of the Educational Amendments of 1972, 20 USC §1681, *et seq*.; and ensured equal, fair, and nondiscriminatory treatment of all persons and groups, including John Doe.

7.      Defendant **Michael D. Redwine** ("**Redwine**") serves/served as Associate Professor of Diagnostic and Interventional Imaging and as Chair of the Student Evaluation and Promotions Committee at UTHealth.  Redwine has been served with citation and process, and has answered and made an appearance herein.  This Defendant was actively involved in the illegalities, improprieties, and violations as alleged herein.  The allegations lodged against this Defendant concern actions taken outside the proper course and scope of legitimate, legal, or permissible discretionary acts and, as such, are pursued against this Defendant in their individual capacity or as otherwise permitted by applicable law.  Alternatively, this Defendant's actions and conduct

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 6

violated clearly established statutory or constitutional rights of John Doe which a reasonable person would have known and should not have violated; were done in furtherance of the flawed and unconstitutional investigative and disciplinary proceedings at issue as alleged herein; were done in violation of applicable institutional policies, procedures and norms, as well as in violation of applicable law; and/or were done intentionally and with malice.  Additionally or in the alternative, this Defendant's responsibilities (to the extent acting or purporting to act under color of law) included, but were not limited to, ensuring that the institutional Defendants (to include MDA and UTHealth, as applicable) and the campus police personnel complied with all applicable due process laws and requirements; complied with all equal protection laws; complied with all applicable institutional policies; complied with Title IX of the Educational Amendments of 1972, 20 USC §1681, *et seq*.; and ensured equal, fair, and nondiscriminatory treatment of all persons and groups, including John Doe.

8.     Defendant **Deana Moylan** ("Moylan") served/serves as the Deputy Title IX Coordinator and Associate Vice President of Diversity and Equal Opportunity at UTHealth. Moylan has been served with citation and process, and has answered and made an appearance herein.  This Defendant was actively involved in the illegalities, improprieties, and violations as alleged herein.  The allegations lodged against this Defendant concern actions taken outside the proper course and scope of legitimate, legal, or permissible discretionary acts and, as such, are pursued against this Defendant in their individual capacity or as otherwise permitted by applicable law.  Alternatively, this Defendant's actions and conduct violated clearly established statutory or constitutional rights of John Doe which a reasonable person would have known and should not

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 7

have violated; were done in furtherance of the flawed and unconstitutional investigative and disciplinary proceedings at issue as alleged herein; were done in violation of applicable institutional policies, procedures and norms, as well as in violation of applicable law; and/or were done intentionally and with malice.   Additionally or in the alternative, this Defendant's responsibilities (to the extent acting or purporting to act under color of law) included, but were not limited to, ensuring that the institutional Defendants (to include MDA and UTHealth, as applicable) and the campus police personnel complied with all applicable due process laws and requirements;  complied with all equal protection laws; complied with all applicable institutional policies; complied with Title IX of the Educational Amendments of 1972, 20 USC §1681, *et seq*.; and ensured equal, fair, and nondiscriminatory treatment of all persons and groups, including John Doe.

9.     Defendant **Sheri Wakefield** ("**Wakefield**") served/serves as Director, EEO & Title IX Coordinator, HR EEO at MDA.  Wakefield has been served with citation and process, and has answered and made an appearance herein.  This Defendant was actively involved in the illegalities, improprieties, and violations as alleged herein, and was found (by MDA) to have committed violations of MDA policies concerning her actions relating to John Doe.  The allegations lodged against this Defendant concern actions taken outside the proper course and scope of legitimate, legal, or permissible discretionary acts and, as such, are pursued against this Defendant in their individual capacity or as otherwise permitted by applicable law.  Alternatively, this Defendant's actions and conduct violated clearly established statutory or constitutional rights of John Doe which a reasonable person would have known and should not have violated; were done in

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 8

furtherance of the flawed and unconstitutional investigative and disciplinary proceedings at issue as alleged herein; were done in violation of applicable institutional policies, procedures and norms, as well as in violation of applicable law; and/or were done intentionally and with malice. Additionally or in the alternative, this Defendant's responsibilities (to the extent acting or purporting to act under color of law) included, but were not limited to, ensuring that the institutional Defendants (to include MDA and UTHealth, as applicable) and the campus police personnel complied with all applicable due process laws and requirements; complied with all equal protection laws; complied with all applicable institutional policies; complied with Title IX of the Educational Amendments of 1972, 20 USC §1681, *et seq*.; complied with Title VII, 42 USC §2000A and §2000e, *et seq.*; and ensured equal, fair, and nondiscriminatory treatment of all persons and groups, including John Doe.

10.     Defendant **Yolan A. Campbell** ("**Campbell**") serves/served as Associate Vice President, HR Operations, HR Administration at MDA.  Campbell has been served with citation and process, and has answered and made an appearance herein.  This Defendant was actively involved in the illegalities, improprieties, and violations as alleged herein.  The allegations lodged against this Defendant concern actions taken outside the proper course and scope of legitimate, legal, or permissible discretionary acts and, as such, are pursued against this Defendant in their individual capacity or as otherwise permitted by applicable law.  Alternatively, this Defendant's actions and conduct violated clearly established statutory or constitutional rights of John Doe which a reasonable person would have known and should not have violated; were done in furtherance of the flawed and unconstitutional investigative and disciplinary proceedings at issue

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 9

as alleged herein; were done in violation of applicable institutional policies, procedures and norms, as well as in violation of applicable law; and/or were done intentionally and with malice. Additionally or in the alternative, this Defendant's responsibilities (to the extent acting or purporting to act under color of law) included, but were not limited to, ensuring that the institutional Defendants (to include MDA and UTHealth, as applicable) and the campus police personnel complied with all applicable due process laws and requirements; complied with all equal protection laws; complied with all applicable institutional policies; complied with Title IX of the Educational Amendments of 1972, 20 USC §1681, *et seq*.; complied with Title VII, 42 USC §2000A and §2000e, *et seq*.; and ensured equal, fair, and nondiscriminatory treatment of all persons and groups, including John Doe.

11.     Defendant **Karen D. Reed** ("**Reed**") serves/served as Human Rights Specialist, HR EEO at MDA, and remains in human resources in MDA's HR Leave Center, Total Rewards department.  Reed has been served with citation and process, and has answered and made an appearance herein.  This Defendant was actively involved in the illegalities, improprieties, and violations as alleged herein.  The allegations lodged against this Defendant concern actions taken outside the proper course and scope of legitimate, legal, or permissible discretionary acts and, as such, are pursued against this Defendant in their individual capacity or as otherwise permitted by applicable law.  Alternatively, this Defendant's actions and conduct violated clearly established statutory or constitutional rights of John Doe which a reasonable person would have known and should not have violated; were done in furtherance of the flawed and unconstitutional investigative and disciplinary proceedings at issue as alleged herein; were done in violation of applicable

institutional policies, procedures and norms, as well as in violation of applicable law; and/or were done intentionally and with malice.   Additionally or in the alternative, this Defendant's responsibilities (to the extent acting or purporting to act under color of law) included, but were not limited to, ensuring that the institutional Defendants (to include MDA and UTHealth, as applicable) and the campus police personnel complied with all applicable due process laws and requirements; complied with all equal protection laws; complied with all applicable institutional policies; complied with Title IX of the Educational Amendments of 1972, 20 USC §1681, *et seq.*; complied with Title VII, 42 USC §2000A and §2000e, *et seq.*; and ensured equal, fair, and nondiscriminatory treatment of all persons and groups, including John Doe.

12.     Defendant **Vicki L. King** ("King") serves/served as Assistant Chief, University Police, Police Department-Special Ops, Converged Threat / Risk Protection & Investigations at UTPD (known as and referred to herein as campus police); acting in affiliated capacities with MDA and UTHealth (acting as their agents in conjunction with other individual Defendants identified herein); and employed by / acting as the agent of MDA in a vicarious employment capacity.   King has been served with citation and process, and has answered and made an appearance herein.   This Defendant was actively involved in the illegalities, improprieties, and violations as alleged herein.   The allegations lodged against this Defendant concern actions taken outside the proper course and scope of legitimate, legal, or permissible discretionary acts and, as such, are pursued against this Defendant in their individual capacity or as otherwise permitted by applicable law.   Alternatively, this Defendant's actions and conduct violated clearly established statutory or constitutional rights of John Doe which a reasonable person would have known and

should not have violated; were done in furtherance of the flawed and unconstitutional investigative and disciplinary proceedings at issue as alleged herein; were done in violation of applicable institutional policies, procedures and norms, as well as in violation of applicable law; and/or were done intentionally and with malice.   Additionally or in the alternative, this Defendant's responsibilities (to the extent acting or purporting to act under color of law) included, but were not limited to, ensuring that the institutional Defendants (to include MDA and UTHealth, as applicable) and the campus police personnel complied with all applicable due process laws and requirements; complied with all equal protection laws; complied with all applicable institutional policies; complied with Title IX of the Educational Amendments of 1972, 20 USC §1681, *et seq.*; and ensured equal, fair, and nondiscriminatory treatment of all persons and groups, including John Doe.

13.     Defendant **Kimberly D. Miller** ("**Miller**") serves/served as a Detective in the Threat Management Investigations division with UTPD (known as and referred to herein as campus police); acting in affiliated capacities with MDA and UTHealth (acting as their agents in conjunction with other individual Defendants identified herein); and employed by / acting as the agent of UTHealth in a vicarious employment capacity.   Miller has been served with citation and process, and has answered and made an appearance herein.   This Defendant was actively involved in the illegalities, improprieties, and violations as alleged herein.   The allegations lodged against this Defendant concern actions taken outside the proper course and scope of legitimate, legal, or permissible discretionary acts and, as such, are pursued against this Defendant in their individual capacity or as otherwise permitted by applicable law.   Alternatively, this Defendant's actions and

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 12

conduct violated clearly established statutory or constitutional rights of John Doe which a reasonable person would have known and should not have violated; were done in furtherance of the flawed and unconstitutional investigative and disciplinary proceedings at issue as alleged herein; were done in violation of applicable institutional policies, procedures and norms, as well as in violation of applicable law; and/or were done intentionally and with malice.

14.     Defendant **Patricia J. Williams** ("**Williams**") serves/served as Inspector in the Threat Management Unit, Special Operations Bureau with UTPD (known as and referred to herein as campus police); acting in affiliated capacities with MDA and UTHealth (acting as their agents in conjunction with other individual Defendants identified herein); and employed by / acting as the agent of MDA in a vicarious employment capacity..  Williams was believed to be located at, and may be served with citation and process at, what was or is her principal office address located at:  **7777 Knight Rd., Houston, Texas 77054 [(713) 745-5299], or wherever this Defendant may be found**.  To date, Plaintiff does not know where this Defendant is located for purposes of service and needs discovery of her last known address from Defendants MDA and/or UTHealth in order to effectuate service on her.  This Defendant was actively involved in the illegalities, improprieties, and violations as alleged herein.  The allegations lodged against this Defendant concern actions taken outside the proper course and scope of legitimate, legal, or permissible discretionary acts and, as such, are pursued against this Defendant in their individual capacity or as otherwise permitted by applicable law.  Alternatively, this Defendant's actions and conduct violated clearly established statutory or constitutional rights of John Doe which a reasonable person would have known and should not have violated; were done in furtherance of the flawed

and unconstitutional investigative and disciplinary proceedings at issue as alleged herein; were done in violation of applicable institutional policies, procedures and norms, as well as in violation of applicable law; and/or were done intentionally and with malice.  Additionally or in the alternative, this Defendant's responsibilities (to the extent acting or purporting to act under color of law) included, but were not limited to, ensuring that the institutional Defendants (to include MDA and UTHealth, as applicable) and the campus police personnel complied with all applicable due process laws and requirements; complied with all equal protection laws; complied with all applicable institutional policies; complied with Title IX of the Educational Amendments of 1972, 20 USC §1681, *et seq*.; and ensured equal, fair, and nondiscriminatory treatment of all persons and groups, including John Doe.

15.    Defendants **Jake and Jane Does** are personnel affiliated with MDA, UTHealth and/or UTPD (acting on behalf of MDA and UTHealth) that were involved in the actionable violations that caused and contributed to the damages and injuries to John Doe, as alleged herein, including those working in concert and conspiracy with other named Defendants.  Upon discovery of further particulars to allow such JJD Defendants to be specifically named, they will be served with citation and process and provided proper notice of these claims as required by law.  These Defendants were actively involved in the illegalities, improprieties, and violations as alleged herein.  The allegations lodged against these Defendants concern actions taken outside the proper course and scope of legitimate, legal or permissible discretionary acts and, as such, the claims against JJD are pursued against them in their individual capacities or as otherwise permitted by applicable law.  Alternatively, these Defendants' actions and conduct violated clearly established

statutory or constitutional rights of John Doe which a reasonable person would have known and should not have violated; were done in furtherance of the flawed and unconstitutional investigative and disciplinary proceedings at issue as alleged herein; were done in violation of applicable institutional policies, procedures and norms, as well as in violation of applicable law; and/or were done intentionally and with malice. Additionally or in the alternative, these Defendants' responsibilities (to the extent acting or purporting to act under color of law) included, but were not limited to, ensuring that the institutional Defendants (to include MDA and UTHealth, as applicable) and the campus police personnel complied with all applicable due process laws and requirements; complied with all equal protection laws; complied with all applicable institutional policies; complied with Title IX of the Educational Amendments of 1972, 20 USC §1681, *et seq.*; complied with Title VII, 42 USC §2000A and §2000e, *et seq.*; and ensured equal, fair, and nondiscriminatory treatment of all persons and groups, including John Doe.

16.     This case was initially filed in Harris County, Texas, asserting claims based on both federal law and state law. Plaintiff's causes of action arose from or are connected with one or more of Defendants' acts that occurred in whole or in part in Harris County, Texas. Venue is proper in this Court, in the County and in the Federal Judicial Division and District in which all or part of the causes of action accrued.

17.     The case was removed by Defendants on the basis of federal court jurisdiction pursuant to 28 USC §1441(a). Venue is proper in the Southern District of Texas under 28 USC §1441(a).

18.     The monetary damages sought by Plaintiff, exclusive of attorneys' fees and costs of court, exceed the minimum jurisdictional limits of this Court.  Plaintiff also seeks declaratory judgment relief, injunctive relief and/or other equitable relief in this case, to the extent such is necessary to effectuate justice and to remedy the wrongs committed by Defendants; to attempt to make Plaintiff whole; and to prevent ongoing wrongs, improprieties and illegalities being committed by Defendants. Such claims for injunctive relief are brought against the named defendants in their official capacities.

19.     John Doe engaged in all requested, required, and mandated administrative processes (to the extent he was afforded such processes), and has exhausted all applicable and reasonable administrative processes (to the extent any were available, offered or allowed). Accordingly, all conditions precedent to Plaintiff pursuing these claims as well as Plaintiff's recovery of or obtaining of relief as requested herein have occurred or have been met or performed.

## II.     NATURE OF THE CASE

20.     John Doe was subjected to the ramifications of, and damages resulting from, the individual and systemic failures of a flawed and unconstitutional investigative/disciplinary system and multiple proceedings that allowed the manipulation of official processes in a way that was discriminatory and patently illegal.  John was falsely accused of improper conduct by a female co-worker and co-student, Li (Lily) Cai ("Cai").  The accusations made by Cai, on their face, did not rise to the level of characterization that was given to those accusations by Defendants.  More specifically as will be further pled hereinbelow, the accusations made by Cai on their face do not rise to any level of actionable redress, and do not allege harassment based on sex or any other

basis.  The actions about which claims against John Doe were alleged do not rise to any violations of policy or laws, and were labeled improperly and illegally in an effort to effectuate the violations alleged herein.   What next transpired was a series of flaws, failures, and outright illegalities committed by Defendants that resulted in actions being taken against John that caused irreparable harm; that violated applicable laws, statutes, institutional policies, and common sense; that lacked due process; that were discriminatory on their face; and that were unconstitutional in the manner in which the system was set up as well as in the manner in which Defendants' executed their "plan of action" that resulted in damage to John's personal and professional standing.

21.    The allegations made by Cai against John did not, on their face, meet the institutions' definition of sexual harassment or any other violation of institutional policies.[2]  At the time that John was notified about the existence of a complaint, none of the Defendants provided to John even a basic level of information concerning the complaint.  Likewise, John was not provided sufficient or the minimally-required information to which John was entitled concerning a complaint of this nature.[3]  The investigative actions that next followed were nothing short of criminal (on the part of Defendants).  Defendants proceeded to conduct an unfair and inadequate investigation into certain of the allegations, misconstruing and misinterpreting the evidence and

---

[2] Cai's complaint against John is set forth in the investigative reports/summaries attached as exhibits.  In summary, the complaints purport to assert claims of sexual and other forms of harassment, physical assaults, and stalking, among other things (all of which claims were determined to be unfounded).

[3] Due process requirements as set forth in and mandated by the Clery Act, 20 USC §1092, *et seq.*, were not provided to John by MDA and UTHealth or by the individual defendants in positions of authority charged with ensuring such due process rights were afforded to John.  Moreover, the institutional policies were wholly deficient of minimal requirements mandated by the Clery Act.  Institutional Defendants, including MDA and UTHealth, were found to be in violation of the Clery Act requirements by the Clery Act Compliance Division of the FSA.

witness testimony.  Defendants' ignored John's credible testimony and relied on implicit, gender-biased beliefs to discredit John's testimony and that of each and every co-worker/witness who provided evidence to the investigators involved in this debacle.  And even when the findings of the Defendant investigators were overwhelmingly in favor of John and wholly discredited Cai and her false accusations, Defendants still continued the implementation of negative action against John that resulted in his failure to timely return and resume his medical schooling; that resulted in John failing to be able to timely and fully return to work; and that perpetuated the negative impacts of the false accusations even after they were found to be unsubstantiated.  The claims of sex-based harassment were wholly discredited and found to be unfounded.  The investigations should never have been brought under sexual harassment policies as the allegations never rose to the level of implicating any action based on sexual harassment policies.

22.    The policies of MDA, UTHealth, and UTPD[4] and the investigative/disciplinary actions of all Defendants violated John's due process and equal protection rights by creating a disciplinary/investigative process that, from the outset, discriminatorily punishes and harms the innocently accused; that is applied unequally and without due process due to gender-based biases; that deprives the accused of material information (required to be provided under applicable policies and legal requirements) necessary to defend against the accusations; that fails to afford the accused constitutional protections; that failed to follow the institutions' applicable policies; and that was

---

[4] To be clear, John is not asserting direct claims against UTPD.  The factual allegations and references to UTPD are included to provide information in furtherance of John's claims, and continue to be included herein in furtherance of claims against MDA and UTHealth on whose behalf UTPD personnel were acting as alleged and set forth herein.

implemented in furtherance of the cancel culture ideology that fosters gender-based attacks irrespective of wholly favorable evidence, wholly favorable investigative findings, and the lack of any credible evidence to substantiate or even support the accusations.  John's due process rights were obliterated through the implementation of a series of predetermined "actions" taken by Defendants that incorporated implicit and explicit gender-based biases.

23.     With respect to John's employment with MDA, and in furtherance of his compliance with UTHealth and MDA policies, John pursued institutional complaints that relate to improprieties and policy violations committed by certain of the Defendants, as well as improprieties and policy violations committed by Cai.  The manner in which Defendants processed, investigated and treated John's complaints reflect the disparate and discriminatory treatment, policies and procedures systemically inherent within the institutions.  John's complaints were not given similar accord and treatment by UTHealth, MDA and UTPD.  Policies applicable to the perpetrators accused of violations in the complaints were not followed, with those accused persons being treated far favorably (as compared to John).  Additionally or in the alternative, the manner in which the complaints were treated and investigated reflected wholly disparate and discriminatory treatment of John and others similarly situated, in violation of constitutional and statutory prohibitions as well as institutional policies.[5]

---

[5] Not only were the investigations conducted by biased, paid investigators, the investigations were inadequate, failed to question relevant witnesses (provided by John), and were expanded (in a perfunctory, superficial manner) only after John called out investigative deficiencies and provided witness statements containing relevant factual evidence.  Moreover, during the investigative process, the hired investigators threatened and attempted to intimidate John into withdrawing aspects of the complaints, and thereafter retaliated against John.

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 19

### III. FACTUAL BACKGROUND

24.     Plaintiff John was an aspiring medical student whose long-term career goal was laser-focused on cancer research to illuminate the cellular mechanisms of genomic stability and aging/age-associated disorders to better develop treatments for cancer.  John was actively pursuing a dual educational and research track to better accomplish a career as a physician-scientist through combining clinical practice with lab research.  John was well on his way to accomplishing his career dreams and to achieve the educational background and career training that would ultimately allow John to provide for his family and accomplish great things in the field of cancer research and treatment, until he was falsely accused with accusations of sexual harassment and stalking; subjected to dual institutional investigations conducted by UTHealth and MDA, investigative processes that were unconstitutionally flawed and that failed to follow and comply with the institutions' own policies; that failed to protect John's constitutionally-protected due process and equal protection rights; that failed to implement corrective action upon investigative findings that wholly refuted the sexual harassment accusations; and that continued the discriminatory treatment of the accused utilizing gender-based biases.

25.     John's educational background was stellar, having obtained Bachelor's (2009) and Master's (2013) degrees in Biomedical Engineering from Johns Hopkins University in Baltimore, Maryland ("Johns Hopkins").  While attending Johns Hopkins, John met his wife, and they were married in November of 2013, shortly after both had graduated from Johns Hopkins.

26.     John began medical school at UTHealth McGovern Medical School ("MMS" or "UTMS") in August of 2015.  A short time later, John pursued the opportunity to work at MDA

doing medical research for/with the former President of MDA, Dr. Ronald A. DePinho, in his research lab (referred to herein as the "DePinho Lab").  John worked in the DePinho Lab on a part-time basis for 2 years while attending medical school classes prior to working there full time.  The DePinho Lab was competitive and demanding, which allowed John to excel while working in areas of cancer research that were important and rewarding to John.

27.     While completing his second year of medical school, John received the Howard Hughes Medical Institute Medical Research Fellows award ("HHMI grant"), which provided funding that allowed him to pursue medical research on a more full-time basis.  John was accepted into The University of Texas MD Anderson Cancer Center UTHealth Graduate School of Biomedical Sciences ("GSBS"), which is a dual-degree program that he would complete along with medical school at MMS.  John was on leave from his medical school studies at MMS while he was working fulltime at MDA.  In 2018, John applied for and was awarded a second year of research as an HHMI Medical Research Fellow.  This, again, provided funding for John to continue working in cancer research at the DePinho Lab, along with financial assistance and other benefits for him and his family.

28.     Cai was a Chinese-national graduate student in the GSBS program.  She began working at the DePinho Lab in 2017, years after John had already been working there.  Cai was classified as a Graduate Research Assistant with MDA, and was also enrolled as a PhD candidate with GSBS.  By comparison, John had already been working at the DePinho Lab for 2 years (part time) and 1 year (full time).  John held three classifications between MDA and UTHealth:  i) Research Medical Student with MDA as part of the HHMI Fellowship Program, working fulltime

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 21

in the DePinho Lab; ii) a third-year medical student with UTHealth MMS; and iii) GSBS MD/PhD student.

29.     In the years leading up to 2018, John worked hard, long hours for many years to excel in his educational studies as well as work experiences in cancer research.  John's research projects in the DePinho Lab were successful, where he cultivated a good working relationship with Dr. Ronald DePinho.   John also had an exceptionally good relationship with his professors, associate professors, the deans and other medical school administrative personnel, colleagues, coworkers, and others with whom he had dealings.  His reputation was stellar, having demonstrated a high level of performance at both his cancer research as well as his educational studies.  John was on a highly positive upward trajectory in both his studies as well as professional opportunities, producing results for the institutions with whom he was affiliated.  John's work in the area of cancer research was of exceptionally high caliber … until the false allegations were made by Cai that led to the systemic and institutional failures as alleged herein.

30.     In the Fall of 2018, John was one of four graduate students working in the DePinho Lab.  John, however, was the only male of that group.  This peer group of graduate-level students also consisted of Cai and two other females.   The atmosphere in the DePinho Lab was competitive and demanding, requiring John and others wishing to succeed to work long hours to participate in and accomplish the exciting cancer research conducted at that lab.

31.     In the months leading up to the events at issue in this case, Cai struggled both personally and professionally.  Cai and/or other family members had discussed the fact that she was suffering from both physical maladies as well as mental problems/issues.  It was well known

by persons working in the DePinho Lab that Cai suffered research setbacks at the DePinho Lab. The setbacks were significant in that it required Cai to abandon research that she had been working on for some time in furtherance of her Ph.D., resulting in her having to: i) start on wholly new research projects, ii) change advisory committee members; iii) change her GSBS program affiliation, and iv) postpone her candidacy exam.  The stress of these negative research impacts was easily observed by John and others in the DePinho Lab.

32.     During this same time, John continued to excel.  His research projects at the DePinho Lab were going well.  John had just received the second of two illustrious and prestigious HHMI grants and was working on another incredibly significant grant that would provide substantial funding for a good portion (if not the remainder) of John's medical/graduate studies. John's hard working was paying off, and he was intent on continuing and completing his educational and cancer-research/work-related goals at UTHealth and MDA.  The grant application on which John was working diligently for exceptionally long hours for many weeks would help fund the remainder of his MD/PhD training, including paying for his tuition and health insurance, and provide to John and his family a stipend for 5 years.  Not only was this grant opportunity financially significant for John and his family, but was equally significant for professional and career-building reasons.  Likewise, the continuation of John's work with MDA and his educational studies with MMS at UTHealth were hugely significant for his future medical and research opportunities and, ultimately, for his entire career.

33.     Throughout the advancement of his working career, John worked professionally and collegially with others, treating fellow students and lab peers with utmost professionalism and

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 23

respect. When Cai was faltering in her research at the DePinho Lab, as with other co-workers, John responded to Cai's distress by helping in extremely limited ways. John interacted with Cai in ways similar to how he interacted with other co-workers. The communications between John and Cai, however, were somewhat limited in that Cai preferred to communicate with John using social media and/or phone apps that utilized the Mandarin language.

34.     Despite being an Asian-American citizen of the United States, John was raised in California and educated in the United States. His primary language was/is English. John had extremely limited ability to communicate in Mandarin. Conversely, since Cai was born and educated in China prior to coming to the United States, Cai had a good command of Mandarin, with some limitations in the use of the English language. Cai's preference to communicate in Mandarin using social media and phone apps created some difficulties with John understanding some (and at times many) of Cai's communications.

35.     Likewise, John's use of the Mandarin to English and English to Mandarin social media and phone apps ("the Apps") to translate his intended words and phrases to Mandarin had significant limitations in terms of effective communications. Not only were the Apps difficult to use, the overall messaging and communications resulting in skewed and unintended interpretations and language conversions. That was simply because of the inherent nature of the languages involved (i.e., there oftentimes is not a direct word-for-word translation, combined with limited interpretation of phrases and concepts that are distinctly different between the two languages involved). Nonetheless, John continued to interact professionally and with sensitivity to the difficulties Cai was having generally as well as in her work at the DePinho Lab.

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 24

36.     Cai continued to communicate with John in a fairly sociable fashion in the months leading up to October/November of 2018.  The communications by John were sociable, normal and pleasant.  However, during the same time that John was excelling in his work and research, Cai's work was mediocre, inferior and failing.  Cai's research setbacks were creating problems for her upcoming deadlines that were significant for her PhD studies.  Cai also suffered some health issues (about which she made general inquiries to John, as he had completed two years of medical school).  Additionally, the DePinho Lab was scheduled to receive additional graduate students that would be undertaking research projects similar to those being done by John and Cai.  All of these factors pressured Cai further, incentivizing Cai to find ways to alleviate the pressures of upcoming deadlines and the inherent competition between peers that inevitably develops.  At that time, John continued to be the only male of their peer group of graduate students.

37.     Based on limited information provided by personnel with UT Police—Houston, and then later from personnel with UTHealth and MDA, Cai proceeded with what is believed to be her plan to alleviate the problems created by her failing research and its negative implications on her PhD program.  Cai created "victim status" for herself by making and pursuing false allegations and claims against John, which actions are believed to have resulted in certain benefits to her.  In the process, she disseminated false and defamatory statements and publications about John, and maliciously pursued false criminal charges against John.[6]

---

[6] See Exhibit 9, affidavit of Jincheng Han.  All redactions in exhibits attached hereto, including Exhibit 9, redact John Doe's real name, and is intended to replace it with John Doe.

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 25

38.     In late October of 2018, unbeknownst to John, Cai sent email correspondence to Ron DePinho (head of the DePinho Lab at MDA where John was working) complaining of sexual harassment and stalking by John.  Defendant Wakefield was notified about Cai's complaint the next day.  Wakefield, as the Director of EEO and HR Regulations and the Title IX Coordinator for MDA, was required to know the policies applicable to this situation, and was further required by law to receive annual training to ensure that her knowledge would remain current.  Those policies include provisions that provide constitutional and due process protections to all persons, including to accused persons such as John, and that meet the minimal requirements of the Clery Act and other statutory and constitutional benchmarks.  It was the duty and responsibility of Wakefield and all of the MDA Actors and UTHealth Actors to know, follow and evenly apply (in a nondiscriminatory fashion) the protections afforded by the MDA and UTHealth policies, as well as the protections afforded under applicable laws.  The systemic failures began at this time, and continued to mount as further time progressed, all of which resulted in negative ramifications to John due to the inherently gender-biased nature of the policies and/or how they were and would be interpreted, implemented, and applied.  What followed was nothing short of horrendous.

39.     On or about November 13, 2018, John was questioned by personnel with campus police.  These campus police personnel are agents of and/or employees of MDA and/or UTHealth; are bound by all MDA/UTHealth policies (including those policies not followed concerning the treatment of John in this case); and were working in coordination with the other MDA/UTHealth employees and personnel who are Defendants in this case. Instead of following MDA/UTHealth policies, only limited information was provided to John, other than statements about certain

accusations made by Cai.  Prior to any questioning of him by any of the Defendants, John should have been provided certain specific information about the accusations made against him, as called for in the applicable policies.  He should have been provided the applicable institutional policies, and afforded all rights available under those policies and under the law.  Unfortunately, Defendants (including the campus police acting in conjunction with Defendants) wholly failed, as will be set forth in more detail below.

40.    On or about November 15, 2018, John was informed by Wakefield (MDA's Title IX Director) that a fellow worker and student (Cai) had made a complaint of sexual harassment against John.  However, John was not provided a copy of the complaint, nor was he provided specifics about the allegations Cai made against John.  Instead, with no advance notice, John was interrogated by Defendant Reed (MDA Actor) and by Defendant Obeng (UTH Actor) over events that occurred and words that had been written months earlier. Instead of following the requirements of federal and state law (including the requirements for due process mandated by the state and federal constitutions, and mandated by applicable statutes, including the Clery Act), Defendants (specifically-identified in more detail below) wholly failed to follow the law and policies, and disregarded John's rights.[7]  Defendant Wakefield confiscated John's work badge (used to gain access to the MDA and UTHealth facilities) and laptop.  Wakefield issues a memorandum advising John that "allegations of sexual harassment/sexual misconduct have been brought to the attention of EEO and HR Regulations" and places John on Administrative leave.[8]  John is prohibited from

---

[7] See Exhibits 1a through 1d [UTHealth Policies]; see Exhibits 2a through 2f [MDA Policies].
[8] See Exhibit 3a.

returning to campus or to the MDA facilities, and prohibited from returning to the DePinho Lab where he had ongoing research projects/experiments in need of immediate and ongoing attention, resulting in all such experiments and John's ongoing research projects being essentially ruined and destroyed.  No written summary or explanation of Cai's complaint is provided to Plaintiff.

41.     The next day (11/16/2018), Defendant Obeng emails John a document entitled "Respondent Notice & Interim Measures Memo."[9]  Shortly thereafter, John is arrested by campus police personnel for the charge of "harassing communications."  Defendant McNeese issues a memorandum to John notifying him of the existence of the complaint, presumably under UTHealth Handbook of Operating Procedures ("HOOP") #59.[10]  The correspondence[11] sent to John stated:

> …This memorandum is intended to provide you with notice that the Title IX Coordinator has received a complaint that names you as the Respondent under HOOP Policy #59 *Sexual Misconduct.*

> …The Office of Diversity & Equal Opportunity has been appointed to conduct the investigation arising from the complaint. On November 15, 2018, you were provided the opportunity to review the allegations against you and to respond. You will receive a written summary of the allegations and your responses to review, affirm and return to our office.

McNeese's statements above were wholly false, as John was not provided the opportunity to review the allegations against him on November 15, 2018.  Additionally, John was only provided with vague excerpts of the allegations lodged against him by Cai, and was not given fair notice of the claims or the documents/information required by the Clery Act or by applicable policies.[12]

---

[9] See Exhibit 3b.
[10] See Exhibit 1a (2018 version) and 1b (2021 version).
[11] See Exhibit 3b.
[12] See Exhibit 4.

42.     On November 20, 2018, the ramifications of the false allegations and specious criminal charges further manifested as a GPS ankle monitor was placed on John.[13]  He is again ordered not to enter the MDA DePinho Lab where he previously worked and where his cancer research projects continued to languish without his presence.  Based on information and belief, further discussions between campus police personnel and Cai take place that John asserts are indicative of Defendants' wrongful actions as further alleged herein.  Much of the "behind the scenes" discussions and investigative information remained hidden from John despite policies and legal authorities requiring such information/documentation to be fully disclosed and provided to John to allow him a fair opportunity to respond to the allegations.

43.     On November 27, 2018, as a result of the criminal proceedings initiated and pursued against John by certain of the Defendants, and without affording John any due process, John's place of residence was added as an exclusion area for his GPS monitor.[14]  John and his pregnant wife were forced to move on unreasonably short notice, or face the reality of further criminal charges being brought.  John was forced to break the apartment lease and immediately move himself and his family out of their residence.

---

[13] The GPS ankle monitor was particularly large, obtrusive, and not easily concealed due to its size.  Attempts to conceal the device resulted in a conspicuous bulge that was readily evident.  This created extreme emotional distress and reputation damage by its very use, making interaction or attendance in public places problematic.  The requirement of such a device was done punitively and without any basis, as John was not a flight risk.  Moreover, use of a GPS ankle monitoring device is wholly inconsistent with the criminal charge of "electronic harassing communication."

[14] These onerous, unwarranted additional restrictions were believed to have been done at the urging of campus police personnel and possibly other Defendants, and was accomplished and implemented without approval by the trial court judge or without due process afforded to John.

44.     After further requests were made by John to be provided meaningful information about the allegations made against him that were the subject of the investigations conducted by UTHealth and MDA Title IX Offices and their personnel, Wakefield again only provides excerpts of the allegations.  The excerpts were far from sufficient to allow John a meaningful opportunity to address and defend against the allegations.

45.     Despite not being given the required notices and information about the allegations made against him, John provides a statement to the UTHealth and MDA Title IX investigators. John addresses what little information he had about the allegations, and provides further defining information that contradicts Cai's claims and version of events.  Witnesses (other DePinho Lab personnel) whose identities were provided by Cai were purportedly interviewed.[15]  Cai asserted the witnesses had direct knowledge and observations of events and would support Cai's claims. When those witnesses corroborated John's version of events and discredited Cai's claims and allegations, Cai claimed the witnesses were lying and were not to be believed.[16]  This information was provided directly to Defendants, which should have redirected Defendants' actions against

---

[15] Further evidence of systemic gender-based discriminatory treatment was reflected by the fact that actions were taken and warnings were made to John about talking to / tampering with witnesses; however, no such actions were taken and warnings relayed to Cai as the female accuser.

[16] It is noteworthy that none of the Defendants timely revealed to John the fact that Cai's witnesses wholly contradicted Cai's version of events, and largely corroborated John's version of events, which information should have been timely provided to John to allow John to incorporate such witness corroboration in his response to the complaints and investigative findings.  Moreover, despite the neutral witnesses contradicting Cai's version of events and corroborating John's version of events, Defendants nonetheless took actions that overlooked and failed to incorporate neutral witness testimony contrary to Defendants' predetermined results.  Defendants incorporated negative ramifications onto John in the Management Plan and Risk Assessment, which was then used in the SEPC meetings under the assumption that Cai's claims were true, when in fact the neutral witness testimony reflected otherwise.  John was not notified about, and was unable to discover, the favorable (to John) witness testimony until much later in time after PIA requests were made.  Under MDA/UTHealth policies, this information should have been provided to John on a timely basis so that he would have been able to utilize it in the disciplinary proceedings.

John.  On the contrary, Defendants "doubled down" their path towards further, harsh negative ramifications being taken against John.

46.     John was requested to provide further feedback, information, or other evidence concerning the investigated matters.  John did, providing to the UTHealth investigators credible, consistent, and corroborated information and testimony refuting Cai's allegations.  Despite the overwhelming weight and degree of the credible evidence favoring John's version of events and wholly contradicting Cai's claims and allegations, Defendants nonetheless continued the farce of "fair, equal and nondiscriminatory" treatment and, instead, disregarded the plethora of credible, consistent, and corroborated testimony.  For reasons that can only be explained by gender-based biases and disparate treatment practices, Defendants continued the status quo of negative actions in place against John that prevented him from continuing his educational studies; that denied John equal, fair, and equitable educational and work opportunities; and that prevented him from working at MDA and continuing his cancer research.  More significantly, the status quo of improper, illegal, discriminatory, and unsubstantiated negative actions taken against John continued to inflict harm to his personal and professional reputations, standings, educational and work opportunities, and grant funding already awarded but not able to be commenced due to Defendants' unreasonably harsh restrictions that continued against John.

47.     On November 15, 2018, John was placed on Investigative Leave by MDA.  John was prevented from re-entering any of the MDA premises and prohibited from contacting any MDA workforce members.  This effectively stopped John's cancer research at MDA as well as his ability to interact with Dr. DePinho and others at the DePinho Lab; created an environment of

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 31

disparate and discriminatory treatment; and negatively impacted him and his work, his career and his reputations.  Further ramifications to John's research projects were further exacerbated as a result of the gender biases that were discriminatorily implemented throughout the investigative and disciplinary proceedings.

48.    On November 16, 2018, John was officially notified by <u>UTHealth</u> about a complaint made against him, and about the investigation that UTHealth would conduct.  Similar to the conditions imposed by MDA, John was prohibited from coming onto the UTHealth campus or entering any UTHealth buildings (unless a specific appointment was prearranged).  John was deprived of educational and work-related research opportunities, in violation of applicable institutional policies and laws.

49.    With the help and encouragement of the campus police Actors as well as certain of the MDA Actors and UTHealth Actors, criminal charges were filed and pursued against John. False criminal claims were made that alleged John harassed Cai on dates between April 15, 2018 and October 29, 2018.  John and his wife (who was pregnant with their first child at the time) were forced to vacate the university housing operated by UTHealth due to ramifications from the criminal charges Cai filed and pursued, as a part of John's bond orders.  John was forced to hire criminal defense counsel, and to defend his good name, reputation and civil liberties against the false accusations and charges filed and pursued against him.

50.    MDA and UTHealth conducted a joint investigation of Cai's allegations against

John.  The investigation had "triple" repercussions[17] for John, and Cai knew that.  John's work with MDA along with his MD/PhD studies with UTHealth MMS were both implicated—and negatively impacted—by the false accusations and by Defendants' actions, including: i) Defendants' systemic failure to follow and apply, in a nondiscriminatory fashion, all of the applicable policies and procedures; ii) the manner in which the policies and procedures were infected with gender-based biases; iii) the gender-based ramifications discriminatorily applied to males that were not applied equally to females; iv) gender-based interpretive biases that violated John's constitutional, due process and equal protection rights; and v) failures to timely implement corrective action once the falsity of the allegations became known and readily evident, among other things.

51.    John had substantial difficulty obtaining sufficient, adequate, or even minimally useful information about the specific allegations asserted against him, despite substantial efforts being made to obtain that information.  Instead of following applicable institutional policies and applicable law, Defendants hid, disguised, and simply refused to provide this information.  Instead, bits and pieces of information trickled from Defendants.  Likewise, John ran into similar roadblocks with obtaining specifics about the factual basis for the criminal charges.  It was only later in the processes, after investigative improprieties had occurred, that John discovered some of the false statements and accusations that had been made against him and that formed the basis of

---

[17] There were three investigative and/or official proceedings happening simultaneously as a result, those being the UTH investigation, the MDA investigation, and the investigation/proceedings in criminal court.

the investigations, the findings, the negative educational and work ramifications, and the criminal charges.

52.     According to information that was later provided to John, Cai's false accusations and evidence-lacking allegations about John included (in generalized summary fashion) the following:

a)      John was sexually harassing Cai for about a year (i.e., from approximately November of 2017 to November of 2018);

b)      John initiated and took actions to intimidate Cai by repeatedly following her and stalking her for long periods of time;

c)      John engaged in intimidation and harassing actions by repeatedly staring at her for extraordinarily long periods of time;

d)      John repeatedly tapped Cai on her back and shoulders;

e)      John engaged in orchestrated actions to improperly force Cai to talk to John and to disrupt her scheduled activities;

f)      John "beat" Cai during research experiments, and engaged in unwanted and improper actions towards her while at work;

g)      John improperly touched Cai on multiple occasions, and stood and/or would get close to her in manners that were unwelcome and intimidating, and would engage in behaviors that Cai initially asserted (or certain of the Defendants' assumed and surmised through the lens of gender-biased presumptions that were wholly lacking on evidence or any corroboration) amounted to sexual harassment;

h)      John improperly stalked Cai by improperly following her to her home; by improperly following her at lunchtime; and by running after her down hallways;

i)      John engaged in actions towards Cai that reflected John was romantically interested in Cai;

j)      John intentionally sent threatening messages to Cai to harass her; and

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 34

k)      John started working late hours at the MDA lab to harass, intimidate, threaten and/or scare Cai.

53.     On February 5, 2019, UTHealth issues a Preliminary Investigative Report that contains limited references to its investigative findings.[18]  On February 7, 2019, John and his legal counsel review the preliminary UTHealth Title IX Report at MMS facilities (not yet being provided a sufficient degree of what was included in the allegations as well as the evidence discovered during the investigation, depriving John of due process rights and of the ability to adequately respond to the allegations).  Defendant Reed emails to John a preliminary MDA Title IX Report.[19]  The MDA Report provided was only an Executive Summary of the investigative findings, and was even more sketchy, providing extremely limited information concerning the allegations as well as the evidence to support the investigative findings.

54.     On February 22, 2019, John receives notice from MDA and campus police personnel about the creation and dissemination of a "Risk Determination" concerning John.[20] The Risk Determination was purportedly created by the campus police Actors, and was based not on any legitimate evidence, testimony, or corroboration, but instead was done with gender-based biases despite the repudiation of Cai's version of events by witnesses and the evidence garnered during the investigations.  John had been removed from MDA and UTHealth facilities, and consequently was denied educational and work opportunities, based largely or significantly on a

---

[18] See Exhibit 5a, UTH Report (report contained most redactions before it was provided to John Doe; Doe's real name was also redacted).
[19] See Exhibit 5b, MDA Report (redacted by John regarding name references).
[20] See Exhibit 16, 2-Stop Communications and Risk Assessments.

risk assessment that John was denied the opportunity to contest, and without due process and other constitutional protections.

55.     Cai's actions in combination with the manner in which the Defendants' handled, investigated, treated, and interpreted the investigative findings relating to Cai's allegations resulted in violations of institutional policies, the failure to afford John constitutional and due process protections, and irreparable harm and damages to John that could, would and should have been negated and minimized had Defendants' acted within the bounds of the law and ensured John was treated fairly, equitably, and in a nondiscriminatory fashion.

56.     On March 1, 2019, Defendant Obeng emails John a copy of UTHealth's February 28, 2019, Determination Letter[21] containing UTHealth's findings relating to John and the Cai allegations.  The UTHealth Determination Letter states in part:

> After careful review of the information gathered by the EO investigation and additional comments both parties submitted for consideration, the determination following the completed investigation is there has been no substantiation of a violation of HOOP Policy #59, as the behaviors that were able to be confirmed could not be established as sex-based."

57.     Noticeably prevalent with what was issued as the final Determination Letter reflecting the findings of the EO investigation was the manner in which John's credible, consistent, and corroborated testimony and evidence was disregarded, and how the documents and other witness testimony consistent with John's version of the events was given relatively little weight compared to Cai's concocted, unsubstantiated and contradicted false allegations.  Also,

---

[21] See Exhibit 6.

troubling and pervasively evident was the manner in which John's objections to the failure by Defendants to follow their own institutional policies was wholly ignored and disregarded, and often resulted in disdain and bad treatment of John when he asserted his due process and constitutional rights be provided and honored.

58.     Despite Cai's allegations of sexual harassment and other sex-based misconduct, the Title IX investigations contradicted Cai and found no substantiation to any of these accusations.  At this juncture, given the results of Defendants' EO investigations supporting and favoring John or, at the very least, contradicting and/or not supporting Cai's version of events or her perception of those events, the negative ramifications of Cai's false claims should have been immediately and wholly rectified.  They were not.  For reasons that can only be explained by gender-based biases and disparate treatment practices, Defendants continued the status quo of negative actions in place against John that prevented him from continuing his educational studies; that denied John equal, fair, and equitable educational and work opportunities; and that prevented him from working at MDA and continuing his cancer research.  More significantly, the status quo of improper, illegal, discriminatory, and unsubstantiated negative actions taken against John continued to inflict harm to his personal and professional reputations, standings, educational and work opportunities, and grant funding already awarded but not able to be commenced due to Defendants' unreasonably harsh restrictions that continued against John.

59.     The events that continued to transpire "snowballed" into a mass of finger pointing by Defendants to other affiliated governmental entities/units to avoid what fairness and equity would logically mandate at this stage, that being the retraction of the negative ramifications and

status quo on which John was put pending the investigation, with appropriate action being taken against the female "false" accuser (Cai) that the institutional policies indicated should be applicable to the false claims she brought against John.  MDA took the position that UTHealth needed to perform some act and/or make some decision in order for MDA to correct the negative status quo John continued to suffer from and allow John to continue his cancer research work at MDA's DePinho Lab.  Despite there being no assertions that John violated any UTHealth policies, and despite the UTHealth EO investigate report confirming the lack of any policy violations, UTHealth refers this matter over to UTHealth's Student Evaluations and Promotions Committee ("SEPC") to determine whether the allegations raised by Cai (and wholly refuted by the evidence, but for gender-biased leanings of the investigators) could still be used to prevent John from continuing his medical school studies.

60.     The interplay between and connections among certain of the Defendants are evident and problematic.  For example, Defendant McNeese, who is in charge of Title IX at UTHealth, refers the matter involving John Doe to Student Affairs, a department she also oversees and is in charge of.  The SEPC is under the jurisdiction of Student Affairs.  The violations that occurred by Defendants (as set forth in detail below) utilized an ever-expanding interplay of connections that permeated both UTHealth and MDA, utilizing the campus police in the process.  All of this was done to effectuate the harm about which John now complains, despite the improprieties and policy violations being ever present.   In other words, by utilizing the connections that permeate both MDA and UTHealth along with the departments over which the individual Defendants control, the violations committed by one "leg" of the investigation should

have negated the use of improper "findings" or "negated accusations."  Unfortunately, that did

not happen here.  Instead, when Defendants like McNeese could not substantiate Cai's accusation

against John under Title IX, and when violations of due process were found to have occurred in

the Title IX investigation, McNeese continued to utilize "fruit of the poisonous tree" in other

departments she oversaw, knowing full well that the complaints were unsubstantiated and that

policy and due process violations had occurred.

61.     John continued to take actions to oppose the negative ramifications of a gender

biased, discrimination-based system, and the results generated from such a system.  Throughout

the entire administrative and investigative processes, John repeatedly requested that the

institutional policies be applied fairly, equally and in a non-discriminatory fashion.  John

requested the ability to present evidence and witness testimony, and to have representatives

accompany him.  No action was properly taken by Defendants to correct (or even address) the

policy violations that occurred early on in the investigative process.  John was never allowed to

examine or cross-examine witnesses.  John was never provided the required information

reflecting the allegations Cai made against him (instead being given very limited summaries or

synopsis).

62.     Even more disturbing was the manner in which all of the Defendants were

communicating with each other, scheming and presenting their suggestions on how to defeat John

because he chose to fight their inherently gender-biased and discriminatory system and insist upon

due process and other constitutional rights along with institutional policies being applied available

and applied fairly, equally and in a non-discriminatory fashion to him and to other students and

researchers affiliated with MDA and UTHealth.   One example of this that played out in a particularly illogical and harmful way was the Risk Determination that Defendants and the campus police utilized against John.   One of the supporting "evidences" Defendants used in that Risk Determination was the fact that John would not admit guilt for allegations that the UTHealth and MDA investigations found to be unsubstantiated, and which the trial court dismissed as being without basis.   Yet they still wanted John to admit guilt (despite investigative findings to the contrary), and when he wouldn't, this was used against him in the systemically discriminatory Risk Determination processes at play within MDA and UTHealth.

63.     In the months that followed the release of the "largely favorable to John" EO investigative findings reports, John began to discover the roles certain of the individual Defendants played in the administrative/investigative process that demonstrated the illegalities and other violations of law complained about herein.   Defendants (and hired agents working for and on their behalf) were so arrogant and bold as to even plainly articulate (verbally or in writing) their disdain for John's insistence that policies should be followed and applied equally, fairly and in a non-discriminatory fashion to everyone, including John.   They ridiculed and threatened John with further negative action being taken against him if he continued to insist upon MDA and UTHealth following the law and their own policies.

64.     John began to discover the roles that certain of the Defendants played in concocting, initiating and pursuing the criminal charges against him.   Campus police and its personnel were instrumentally involved in the initiation of the criminal charges, steering and coaching Cai and helping to create false risk assessment analysis that would prove to be

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 40

instrumental in creating the incentive to continue the criminal prosecution despite their being no basis for such criminal charges, and despite their not existing probable cause to bring and pursue such criminal charges.

65.     Concurrent with the administrative investigations and institutional proceedings, criminal charges were initiated and pursued against John Doe (based on Cai's false claims, and at with the assistance of Defendants with campus police) for harassment.[22]   On April 17, 2019, the trial court dismissed the criminal charges against John.[23]   Campus police and its personnel were upset that they were unable to "make the charges stick."   As will be shown in more detail below, King (with the help of and in conspiracy with Miller and Williams) continued to create and fabricate false pretenses and basis for a high, negative risk assessment.[24]   They continued the farce that John presented a risk to the safety and personal wellbeing of Cai and others.   They presented such wholly fabricated "junk science" to others at/with MDA and UTHealth.   They continued to demonize John, largely because he had the gumption to fight Defendants' gender-biased, discriminatory, and illegal system, and because he was succeeding.

66.     The events that followed were nothing short of astounding in that Defendants continued to twist and change the rules and, in the process, fail to follow their own policies and fail to provide to John due process and other constitutional rights.   Defendants changed the rules

---

[22] See Exhibit 8a.
[23] See Exhibit 8b.   The dismissal was appealed by prosecutors to the Fourteenth Court of Appeals, which appellate court affirmed the dismissal, demonstrating that the criminal charges had no legal merit.   See Exhibit 8c for 14th Court of Appeals decision and judgment.
[24] See Exhibit 16.

on prior communicated requirements applicable to John's continued medical studies. For example, according to the UTHealth policies and requirements, John was to take the USMLE Step 1 Exam by a certain time geared upon his progression at the MMS medical school. Following Defendants' defeats at both the administrative level (EO Investigations do not substantiate the allegations of sex-based misconduct) and with the prosecution of criminal charges, John received correspondence from UTHealth GSBS Associate Dean Bill Mattox dated May 9, 2019 that changes the date by which John was required to have taken the USMLE Step 1 Exam. The new date was moved up to December 6, 2019.

67. Even though John was largely vindicated by the investigation findings (and 100% vindicated with respect to any sex-based misconduct accusations), MDA continues to impose conditions of employment with MDA that were discriminatory and that continued the farce of gender-based disparate treatment systemically prevalent at MDA and UTHealth. MDA attempts to impose a "Management Plan"[25] that put severe restrictions on John and his ability to work on MDA's premises; deferred to the false accuser's schedule, whims and wishes; exposed John to further harassment and risk of false claims by the same accuser (Cai); and evidenced with finality the fact that MDA's system was corrupt, lacks due process, and wholly disregards constitutional and other equal protection rights of individuals like John.

68. Nonetheless, John continued to try and maneuver MDA's corrupt, gender-biased, discriminatory system. John provided feedback and explanations as to the problems, risks, and

---

[25] See Exhibit 7, Management Plan.

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 42

concerns with certain of the Management Plan requirements. Without any discussion, appeal, or consideration, MDA's position was that the gender-biased illegal Management Plan would be followed, or John would be prevented from being able to work at MDA. Ironically, at this same time, the false accuser (Cai) continued to receive favored treatment from MDA and others, with no ramifications for the false, unsubstantiated accusations of sex-based harassment and misconduct that she made, and that Defendants promoted in furtherance of their corrupt, gender biased systems.

69.      In July of 2019, John had multiple communications with MDA personnel (Dr. Ron DePinho, Kent DeShazo, and David Taylor) about the Management Plan and his return to work. MDA's position continued to change, making clear that Defendants would do whatever they could to stop John from continuing his work at the DePinho Lab. John was first told that, irrespective of how vague, ambiguous and confusing some of the Management Plan terms were as well as how they would be applied in given circumstances, MDA HR personnel required John to accept all of the gender-biased, disparately applied conditions of employment as is, or he would simply not be allowed to return to work. A few days later (July 19, 2019), MDA's David Taylor informs John that they will not proceed with the process to return him to work until MDA receives a "letter of good standing" from UTHealth. This was one of the first outward indications reflecting the "ping ponging" between MDA and UTHealth to continue to perpetuate a systemically gender biased system that discriminates against males, to continue to refuse to follow applicable existing policies and legal requirements, and to continue the wholesale obliteration of due process and constitutional rights to which John was entitled.

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 43

70.     UTHealth Title IX, under the leadership of the Title IX Coordinator, Defendant Margaret McNeese, forwarded John to consideration before the UTHealth SEPC, chaired by Defendant Michael Redwine who reports directly to McNeese.[26]  The SEPC and the manner in which it functioned further demonstrates how UTHealth continues to refuse to provide due process and afford persons (like John) their constitutional rights.  Instead of being given the opportunity to correct the due process deficiencies of the Title IX investigation, John was given even less due process before the SEPC. Furthermore, by referring John to the SEPC, which is within Student Affairs Office led also by McNeese herself, she could keep John within her clutches and continue her agenda subjecting John to sex-based discrimination. John requested to be allowed to have a support person present during the SEPC proceedings.  That request was denied by Redwine.  This request was significant in that, had John been allowed to have a support person present, further effort would be made to seek and obtain the right to question and examine witnesses.  Other representation of John, such as by legal counsel, was also not permitted.  Given what was setting up to be a "kangaroo court" of sorts within the SEPC process, in August of 2019, John provided a detailed, written statement (with accompanying exhibits) to be provided to each and every member of the SEPC.[27]  John emails Defendants Wakefield and McNeese specifically requesting that the SEPC be provided with **all evidence** relevant to the Title IX case and the Cai accusations.  Upon information and belief, MDA and UTHealth failed and refused to provide

---

[26] See Exhibit 11, conglomerated correspondences between John and UTHealth concerning SEPC proceedings.
[27] See Exhibit 10, John Doe Statement to SEPC (exhibits referenced in and attached to John Doe's statement to SEPC not included).

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 44

much of the relevant evidence, particularly the exculpatory evidence demonstrating the motivations and other factors showing the accuser (Cai) to be mentally unstable with a history of making and saying false things.  Exculpatory evidence also existed with respect to neutral, firsthand witnesses who contradicted the factual events claimed by Cai, and much more.

71.     UTHealth nonetheless continued with a process that was systemically discriminatory with inherent gender-biases built into the system, and with wholesale lack of due process.  For example, at the first SEPC hearing that took place on September 23, 2019, John was not allowed to be accompanied by a support person or legal counsel; John was not allowed to be present during the proceedings except for the limited time he was questioned before the panel; the proceedings were conducted in secret, without John's ability to question or present exculpatory information/evidence in response to the statements made in secret outside of his presence; John was not allowed to present for the testimony of any other witnesses; John was not allowed to question any of the witnesses; and John was not allowed to present any witnesses. John was not even provided any information about the identities of witnesses called to appear before the SEPC.

72.     John, however, did see Defendant King entering and/or exiting the SEPC proceedings, presumably done to present information and the false, fabricated "risk assessment" and similar determinations that campus police was intent on using against John despite the criminal charges being dismissed and despite the EO investigative findings being largely favorable to John and 100% decisive concerning any false accusations of sex-based misconduct.

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 45

Statements were made by King in John's presence that indicated the urging of continued negative actions being taken against John by MDA and/or UTHealth.

73.     On October 8, 2019, John was informed that the SEPC "could not make a decision." The SEPC's inability to affirmatively find against John should have ended the negative proceedings. But that didn't happen. John had previously been admitted to the MMS GSBS and to the medical school. John had already met all requirements for his continued admission for his medical studies. That was the status quo on admissions. The false accusations by Cai and the events that followed attempted to derail John's continued admission for medical studies.

74.     When the SEPC could not make a decision in support of Cai's allegations, the status quo of John's continued admission for medical studies should have been implemented. That would be the result in a non-biased, non-discriminatory system that honored due process and other constitutional rights. But that was not the case. Instead, UTHealth and the UTHealth Actors continued the perpetuation of gender-biased disciplinary ramifications by refusing to allow John to continue his medical studies, and by requiring him to be subjected to further discriminatory and disparate treatment. Defendant Redwine ordered John to undergo a full psychiatric evaluation, and to incur all costs associated with such evaluation. Such requirement was wholly unsupported by any evidence or proceedings, and was in violation of the American with Disabilities Act, amongst other things. Despite his objections to this, John complied. Unfortunately, the "ping-ponging" effect between the UTHealth actions and the MDA actions continued, resulting in John being deprived of his rights to continue his medical studies and to continue his cancer research work at MDA in the DePinho Lab. The ramifications of a gender

biased, systemically discriminatory system that lacks due process and that obliterates constitutionally protected rights continue for John.

75.     Given all of the evidence John was able to discover and amass to date (which was hardly the full extent of the evidence, information and documents that should have been turned over to John in a system that was not gender-biased and systemically discriminatory against males, and one that honored due process and other constitutional rights), John filed complaints with Institutional Compliance[28] at both MDA and UTHealth on November 26, 2019.  John's complaints presented allegations of policy violations by individuals handling the Title IX complaint and the investigations that followed.  On December 2, 2019, John also filed complaints with Institutional Compliance at both MDA and UTHealth alleging violations by accuser Cai for making a false complaint and for stalking (based on the institutions' policies and other applicable definitions of this sort of conduct).

76.     John is notified in early January of 2020 that MDA had retained attorney Darren Gibson and the firm of Littler Mendelson to investigate certain of the complaints John had filed.  As it turns out, Darren Gibson had a long history of perpetuating the gender-biases at institutions like MDA and UTHealth, consistently and systematically "rubber stamping" the institution's conduct and ensuring that investigative findings were favorable to the institution paying him and his firm.  Gibson had a history of lectures and presentations that made clear his biased positions on factual scenarios similar to what occurred to John.  Those actions have continued to be

---

[28] See Exhibit 12, UTHealth Office of Institutional Compliance Memos in response to complaints.

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 47

rewarded by MDA and UTHealth, with further and additional services and monetary compensation to Gibson and his firm being provided.  Instead of conducting a fair, full, and reasonably complete investigation, Gibson instead acted like "judge, jury and executioner" when it came to such investigations, making one-sided, unilateral decisions about what would be investigated and what would not be investigated.  He refused to consider the other side or conduct an unbiased investigation, instead limiting his investigations to what he wanted presented to substantiate his presumptive findings made in advance of the investigation.

77.     During the investigation of John's complaint, Gibson engaged in Gestapo-type tactics when questioning John.  Gibson at times would interrupt John and try to stop him from articulating and presenting his position fully.  Gibson made implicit as well as outwardly explicit threats against John, using other MDA anti-retaliation policies as leverage in an attempt to get John to "back off" of certain of his complaints.  The Gibson Gestapo interrogations (occurring on multiple days) of John was nothing short of horrendous, filled with iterations of preconceived ideology that perpetuated the gender-biases already prevalent in the UTHealth and MDA systems.

78.     On January 24, 2020, Defendant Obeng contacts John about investigating the "false complaint" and stalking allegations John made concerning Cai.[29]  Alert to the fact that Obeng was previously involved (and highly instrumental) in the first round of EO investigations and had exhibited the preconceived gender-biased notions to perpetuate a systemically discriminatory system, John expresses his concerns about potential and/or existing biases,

---

[29] See Exhibit 14, Obeng multiple email correspondences.

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 48

prejudices and/or conflicts of interest stemming from Obeng's involvement in the first round of investigations.  John requests that the complaint be assigned to a neutral investigator that did not have preconceived notions or other biases.

79.     On February 5, 2020, John meets with Gibson at the MDA offices for interrogation.  Gibson's proclivities in furtherance of preconceived gender-biases were in full force.  Gibson at times would raise his voice and change his demeaner (exhibiting anger) towards John, in an effort to intimidate John and get him to "back off" aspects of his complaint.  At other times, Gibson would come right out and threaten John with "anti-retaliation" policy violations, again in an effort to get John to back off.  During the interrogation, John also provided areas of investigation that he requested and encouraged Gibson to entertain, including co-workers who were witnesses to the underlying Cai events that could shed light on the fact that Cai had knowingly made false allegations against John.

80.     MDA and UTHealth again ping-ponged their investigations of John's complaints, staggering the communications and questioning in a thinly veiled timing scheme to allow the sharing of information in what should have been independent investigations.  Again, the MDA and UTHealth systems were set up to promote gender biases and to ensure that maneuvering the two systems would be so problematic that the due process and constitution violations would continue to remain covered up and unexposed.

81.     On February 13, 2020, Obeng notifies John that UTHealth would not reassign John's complaint to an impartial investigator, instead electing to continue the investigation of this complaint by Obeng despite her preconceived notions and gender-based biases, and despite her

previous improprieties committed as part of the UTHealth team.  John reminds Obeng that the Clery Act requires proceedings of this nature to be conducted by officials who do not have a conflict of interest or bias.  Such legal requirements, however, were of no moment to Obeng and her group.  They continued to deny John the legal, due process, and other constitutional protections he was seeking and to which he was entitled under the law.

82.    On February 27, 2020, Gibson continued the Gestapo interrogation of John. During this session, however, he intensified the threats and combative questioning strategies.  At one point in time, Gibson relays the outright threat of charging John with violations of applicable non-retaliation policies, even though John's right to make a complaint was absolutely protected by the institution's policies and was consistent with his constitutional and other legal rights.

83.    John had continued to comply with all requirements concerning the SEPC-ordered psychiatric evaluations, completing all sessions, and obtaining a report (by the psychiatric personnel) that John should be allowed to continue his medical studies.  The SEPC met again on March 3, 2020.  Again, John was not allowed typical due process rights (right to be present throughout the entirety of evidence presentation, as John was allowed to be present only for a very limited part of the meeting; right to present witnesses; right to examine and confront witnesses; etc.).

84.    On March 11, 2020, the Redwine issued a decision to allow John to resume his medical studies with the condition that he receive mental health therapy for one year and incur the totality of associated costs for such harsh, improperly-imposed psychiatric therapy

requirements.[30]  At this juncture in time, John had been denied all semblance of due process and other rights (with resulting negative ramifications on him and his career, reputations, and financial standing) that began back in November of 2018.  John is also informed that he is required to take the USMLE Step 1 Exam by July 1, 2020, which is contrary to the policy stated in MMS's Academic Policies and Guidelines (again evidencing disparate and discriminatory treatment of John resulting from the systemically gender-biased systems in place).  John also provides a position statement to Gibson, in light of Gibson's problematic interrogation tactics described above.

85.    On March 26, 2020, Obeng informs John that she would not initiate an investigation of John's complaints against Cai, providing little to no basis for such decision.  John was not allowed to present any evidence, witnesses, or even have a hearing on the complaint.  John was denied any appeal rights.  More importantly, how UTHealth and MDA handled the complaints John made was further proof of the gender biases inherently prevalent in these illegal systems.  Cai's false complaints against John resulted in him being placed on administrative leave, with restrictions in place that effectively terminated all educational and work opportunities whatsoever.  Cai's false complaints gave Cai favored and "victim status" treatment, and vilified John from every angle.  Cai's false complaints resulted in dual Title IX investigations, with wholesale disregard for John's due process, equal protection and other constitutional rights.  Even

---

[30] These conditions were in addition to other discriminatory conditions of employment and studies that were imposed by Defendants UTHealth and MDA, and that were mandated and assessed by the individual Defendants as reflected in the applicable documents, correspondences and communications.

after the investigations concluded largely favorable to John, the negative "temporary" actions taken against him were not timely or fully rectified.  This perpetuated the negative ramifications that necessarily results from illegal, discriminatory, gender-biased systems with preconceived notions based simply on accusations as opposed to following the rule of law.

86.     Conversely, John's complaints made against Cai resulted in policies not being followed and implemented in a similar fashion to how John was treated.  Likewise, no actions were taken against Cai pending investigations.  Ultimately, UTHealth refused to do any investigation at all.

87.     On April 24, 2020, Gibson emails to John his preliminary investigation report.  As was signaled by Gibson throughout the interrogation and pseudo-investigative processes, Gibson concluded that none of John's allegations have been substantiated.  Moreover, true to his threats during the investigative process, Gibson makes a finding that John's mere accusation of improprieties against Cai (which claims by John were substantiated by the MDA and UTHealth initial EO investigative findings) were a violation of MDA's non-retaliation policy.  In other words, John's mere allegation against Cai (according to the inherently biased, paid for, and compromised Gibson) was alleged by MDA to be, in and of itself, another violation by John.  MDA's system was now coming full circle, demonstrating through the corruption referenced above that the system was grossly discriminatory; promotes gender biases; and deprives parties of fundamental due process and other constitutional and statutory rights.

88.     On April 29, 2020, John requests to be allowed to examine all exhibits and evidence relevant to Gibson's report (and which are cited to in the report) in order to provide a

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 52

response.  This request that John be provided even basic evidence on which Gibson relied in arriving at his findings was denied on April 30, 2020.

89.     On May 5, 2020, Campbell notifies John about the results of the November 2019 complaint John files against MDA, including allegations of gender-bias and other improprieties against Wakefield and Reed.[31]  Without providing any basis for such decisions, and without reference to any evidence whatsoever (along with refusing to provide such evidence in support of the decisions to John), Campbell found all of John's complaint allegations to be unsubstantiated except for the violation of policies that Wakefield and Reed were found to have committed in failing to provide proper notice to John about Cai's original complaint.  Campbell found that Wakefield and Reed's "**failure to provide such notification [about Cai complaint against John] resulted in a substantiated Code of Conduct violation as to Principle One regarding compliance with MD Anderson policies and procedures.**"[32]  The impact to John from such violation, however, is never rectified.  On the contrary, MDA continues to heap onto the situation further failures to follow applicable law and afford John due process and other rights.  Likewise, they continue the ever-present gender biases so systemically woven into their system that the system must be torn down and restructured or reconstructed in order to afford basic due process and constitutional rights to those affected, including John.

90.     On or about May 11, 2020, John provides further information and documents to

---

[31] See Exhibit 15a.
[32] Plaintiff submits that this finding followed Clery Act violations that the Clery Act investigation found existed.  See Clery Compliance letter from US Department of Education dated 5/28/2020 and included as Exhibit 13.

Gibson, including witness statements of co-workers that provided direct evidence supporting John's complaint. Recognizing that the Gibson investigation was not a real, true or even remotely appropriate investigation (but instead was MDA's and Gibson's efforts to "go through the motions, but with a preconceived decision already intended"), MDA and Gibson reopened the investigation to consider the witness statement John provided, along with questioning of other coworkers (all of whom should have been questioned to begin with in furtherance of a proper investigation). The import of what happened here is that Gibson (and MDA) got caught with outright investigative failures (in furtherance of the corrupt, gender-bias system), and then try to cover those up by going through the motions of considering evidence that should have been considered **before** the initial decision was made, but was not.

91. On May 29, 2020, true to form, Campbell informed John that she was adopting the Gibson farce of an investigation and found John's complaints to be unsubstantiated.[33] Campbell further found John's right to lodge a complaint was in itself a retaliatory act towards Cai. It is befuddling how Gibson and Campbell could credibly come to these conclusions given that Cai's sex-based misconduct accusations were found to be wholly unsubstantiated; given that neutral witnesses of co-workers (albeit male co-workers) provided evidence of Cai's malicious intent as well as the falsity of Cai's allegations and their observed motivations for Cai's improper actions; and given that policies applicable to the situation were found not to have been followed.

---

[33] See Exhibit 15b.

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 54

92.     John ultimately gained access to resuming his medical studies, albeit with a 2-year delay and the negative repercussions of such a delay.  The negative ramifications on John's work opportunities with MDA's DePinho Lab, however, remained.  John was not allowed to continue his work in the DePinho Lab, and instead was required to transfer elsewhere.  Up until July of 2020, John and his representatives were working on the "Management Plan" requirements that were disparately imposed on him to return to work at the DePinho Lab.  However, when John filed complaints for policy and other violations against Cai, Wakefield and Reed (along with certain of the institutional defendants), Defendant MDA and the individual Defendants affiliated/employed with MDA retaliated against John by disallowing his return to his place of work at the DePinho Lab.  Cai, on the other hand, continued to reap the benefits that necessarily result from a discriminatory, gender-biased system of policy failures, implementation failures, investigative failures, and violations of due process and constitutional rights that allow false claims to perpetuate and negatively impact John and persons like him.

93.     The MDA and UTHealth systems continued to impose negative ramifications on John, while at the same time continued to reward Cai despite the fact that she made false accusations of sex-based misconduct that Defendants' own EO investigations found to be unsubstantiated.   MDA and UTHealth along with the other Defendants perpetuated the discriminatory treatment and the use of policies, procedures and governmental resources that, without a doubt, incorporate gender-biases that result in the wholesale failure to afford persons like John even basic due process and constitutional rights.

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 55

94.    As a result of the wrongful actions by Defendants against John, John's medical studies and cancer research have been irreparably harmed and damaged.  John was not allowed to return to work at MDA's DePinho Lab.  John's research in the DePinho Lab was jeopardized, sabotaged and ultimately wholly destroyed.   John's relationships and reputations with Dr. DePinho, other professors, assistant professors, MDA administration personnel, UTHealth deans and administrative personnel, fellow students, and co-workers have been seriously damaged, if not entirely ruined.  John suffered, and in all likelihood will continue to suffer, from the delays in readmittance to his GSBS and MMS studies, losing/delaying semesters of his medical studies, and creating an inexplicable void that will, in all reasonable likelihood, have substantial negative repercussions to John in terms of occupational opportunities as well as the timing of those opportunities.  John has been negatively impacted in his medical studies, PhD studies, cancer research, and has sustained damage to his reputations (both personally and professionally) and his standing in the medical and cancer research communities.

95.    The criminal charges filed and pursued against John were without probable cause, baseless, and without merit.  John was required to hire defense counsel to address those criminal charges.  John was faced with the risk of loss of liberty and freedom, and suffered the stigma associated with such criminal charges being initiated and pursued, irrespective of the baseless and meritless nature of the charges and allegations.  While the criminal charges were dismissed on or about April 17, 2019, certain of the Defendants continue the legal fight in an effort to avoid John being wholly vindicated (along with the ramifications that will necessarily result when that vindication occurs).  Campus police along with the help of others at MDA and UTHealth continue

to promote the false ideology that John is dangerous and a risk to others, despite John being vindicated at pretty much every level of the investigative processes over the past 2+ years.

96.     In addition to financial and personal resources being used in the criminal proceedings, Defendants' wrongful and illegal actions required John to incur medical and legal costs and expenses to address the investigative and administrative matters with MDA and with UTHealth; to address the fallout from the manner in which the accusations were investigated and handled; and to defend his good name, standing and reputation.  Despite the investigative findings concluding that the allegations and accusations made against John were unsubstantiated, MDA initially put limitations and conditions on John that were mandatory upon his return to work at MDA.  The limitations and conditions of employment were disparate and discriminatory, and done without affording John even minimal (much less the full measure) of the constitutional and due process rights to which he was absolutely entitled.   When John attempted to assert his constitutional, due process, and institutional policy rights, MDA later appeared to not allow John to return to MDA at all, with MDA presumably content to simply cease further interactions with John and allow him to "rot on the vine" through stonewalling and the failure to timely correct the improprieties that Defendants effected through their failures as set forth in more detail below.

**Violations Committed by Defendants**

97.     Based on the factual events set forth above, Defendants violated their own policies in furtherance of their gender-biased systems of investigations and disciplinary actions. Defendants further violated the Clery Act and its implementational regulations (i.e., 34 CFR Part 668), with which they are required to comply as participants of federal financial aid programs.

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 57

Defendants also violated due process and other constitutional protections to which John (and other similarly situated persons) was entitled.   As of 2018 and during pertinent portions of the investigations and administrative processes to which John was subjected, policies adopted by the institutions (ADM0285 & ATT1962 for MDA; HOOP 59 for UTH) were not compliant with Clery Act requirements.   Notwithstanding Defendants' failure to adopt, implement, and apply Clery-compliant policies, they were still required to comply with Clery Act requirements for VAWA crimes, including stalking, which had been alleged by Cai.  Because the Defendants were not compliant with the Clery Act, both MDA and UTH had to revise their policies in October 2019 to include the Clery language and to implement the requirements set forth in the Clery Act. For example, the current version of HOOP Policy #59 provides for the following due process:

   a.   Written notice of the formal complaint, including notice of the grievance process, a notice of the allegations that potentially constitute prohibited conduct under Hoop #59, ***including sufficient details about the alleged conduct***, including the identity of the parties, if known, and the ***date(s), time(s), and location(s) of the alleged conduct*** known by the university at the time of the Formal Complaint,

   b.   a statement of the potential policy violations being investigated,

   c.   a statement that the respondent is presumed not responsible for the alleged conduct and that the determination regarding responsibility will be made at the conclusion of the grievance process,

   d.   a statement that both parties may have an advisor of their choice, who may be, but is not required to be, an attorney, and may inspect and review all evidence,

   e.   ***a statement that the parties may review evidence gathered as part of any investigation***,

   f.   a statement of the provision of this policy that knowingly making false statements or knowingly submitting false information during the Grievance process is prohibited and subject to disciplinary action, and

   g.   any other relevant information.

*HOOP #59 III.D.4.* (emphasis added).

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 58

98.     Contrary to the requirements of the Clery Act, John was given, at best, a vague, verbal notice of the allegations of sexual harassment and stalking, but none of the notices and information as required under the Clery Act.  Although the Clery Act itself does not provide a private cause of action, its language and definitions set the standard for what is the acceptable bare minimum due process required for any case involving VAWA crimes, which include stalking. The manner in which UTHealth and MDA carried out their investigations resulted in John suffering many process deprivations, including those referenced above.  John was denied due process when Obeng and Reed failed to provide fair and reasonable notice of the charges against him, and when they failed to sufficient details of the alleged conduct complained about, including the dates, times and locations of the alleged conduct at issue.  No written notice of the charges and no summary of the allegations were provided to John timely, as required by institutional policy and federal statute. MDA/UTHealth were required to provide John with notice of the complaint and all other information set forth in the Clery Act.  This was not done.  John was not provided with written notice of the procedures or rules applicable to the allegations against him on November 15, 2018. John was not advised verbally or in writing that he could provide questions to ask the accuser or witnesses at the November 15, 2018 meeting.  John was not advised at that meeting that he had the right to have an advisor present, or that he was not obligated to answer questions or answer questions in the presence of UTHealth's Title IX investigator.

99.     John was not provided with a description of the nature of the specific misconduct on which the complaint relied.  It was not until more than two weeks later that (December 7, 2018) after he had already been questioned by investigators and after he had been suspended from his

work and school that MDA's Wakefield gave John "excerpts" of the allegations against him, still failing to provide him a summary of the allegations sufficient to assist John in defending against the fabricated allegations.

100.   Defendants violated MDA's Admin. Sexual Harassment/Sexual Misconduct Complaint Resolution Procedures in multiple respects.  See MDA Admin.  Policy ATT#1962. This policy provides for a host of protections, including appeal rights.   In particular, the determination of a violation or disciplinary action imposed or that results may be appealed.  John was not afforded hearing and appeal rights to which he was entitled under the policy.

101.   Each individual policy right that was violated contributes to further manifestations of additional improprieties that become exponentially difficult to overcome.  Each step of the process to which John was subjected was filled with utter contempt, direct and indirect hostility, threats of retaliation, further charges for John asserting his policy and due process rights, and a host of other ramifications that demonstrate the MDA and UTHealth systems are fundamentally unfair; inherently and systemically gender-biased and discriminatory; and result in the abolition of basic due process and constitutional rights, all of which John was subjected to and damaged by.

102.   The Title IX investigative results that were largely or wholly favorable to John created the "catch 22" dilemma that made defending against the Cai complaints in secondary venues problematic or entirely impossible.  The UTH investigative findings resulted in no allegation of a policy violation by John.  Accordingly, in any of the secondary proceedings (including the SEPC proceeding), it was wholly impossible for John to defend against any "substantiated allegations" that the UTH Title IX investigation found did not to exist.  With respect

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 60

to the MDA Title IX investigation, the "Standards of Conduct #9" is simply too broad, vague and ambiguous on its face.  MDA's Standard of Conduct #9 does not provide any definition or standard of conduct that indicates what actions would violate this standard or what actions would not violate this standard.  It is simply a "catch-all" for any action Defendants wish to punish.  It does not provide any measurement bar of what is acceptable conduct, and what is not acceptable conduct.  Simply put, it has no means capable of measuring and providing notice to any person about what conduct amounts to a violation, and what conduct does not.  It is impossible for John (or any covered employee) to defend against a contention that an action violates this "Standard of Conduct #9" when there is no documentation, notation or explanation of what it does and does not encompass.

103.    Defendants also never notified John about this purported "Standard of Conduct #9 policy" being considered as something Cai claimed John violated.  John was never notified of any consideration by Defendant MDA and the MDA-employed individual Defendants about this contention as required by MDA policy; therefore, John was unable to address this "Standard of Conduct" in any response because it was an unknown, undocumented, and unlisted complaint item.  Because this issue was never timely or properly presented to John during the investigative process, punitive action being taken against John on this basis amounts to yet another due process violation committed by Defendants as indicated below.

## IV.    INCORPORATION OF ALLEGATIONS

104.    All of the allegations in each of the foregoing paragraphs are incorporated by reference into each of the following claims for relief as if fully set forth in each such claim.

Plaintiff also incorporates the statements and assertions made by or on behalf of John Doe in the administrative proceedings, including the EEOC charge, as set forth in the exhibits filed herewith. Further, Plaintiff asserts that in relation to each claim, none of the Defendants are entitled to immunity because the acts alleged were not taken while performing a discretionary act, the Defendants were not acting in good faith, and/or were not acting within the scope of their authority, and such actions were malicious, arbitrary and capricious.

## V.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

105.    Plaintiff pursued and complied with all administrative appeals policies and processes. Plaintiff timely and fully pursued all administrative, internal processes available and/or required of Plaintiff to pursue the claims asserted herein. Plaintiff timely filed a charge of discrimination against Defendant MDA with the Equal Employment Opportunity Commission ("EEOC").[34] Plaintiff filed the original petition within 90 days after receiving a notice of the right to sue from the EEOC.[35] All conditions precedent concerning exhaustion of administrative remedies applicable to the claims asserted by John herein have been performed or have occurred.

## VI.  CAUSES OF ACTION

**A.  VIOLATION OF TITLE 42 U.S.C. § 2000e AND TEXAS LABOR CODE 21.001 FOR DISCRIMINATORY TERMS AND CONDITIONS OF EMPLOYMENT AND NEGATIVE EMPLOYMENT ACTION AND/OR WRONGFUL TERMINATION BASED ON SEX, NATIONAL ORIGIN, RETALIATION AND DISABILITY**

---

[34] See Exhibit 18a.
[35] See Exhibit 18b.

106.    Plaintiff incorporates all previous paragraphs as if fully set forth herein, including those set forth in paragraphs 20 – 103 above.

107.    Plaintiff brings claims against Defendant, The University of Texas MD Anderson Cancer Center, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e *et seq.* and Texas Labor Code section 21.000 *et seq.,* and all subsequent amendments and supplemental provisions, and asserts that Defendant MDA, a covered employer, engaged on a continuing basis in a continuing pattern and practice of discriminatory terms and conditions of employment and constructive wrongful termination against Plaintiff based on sex (male), national origin (USA of Asian/Taiwanese descent), retaliation for reporting and/or seeking protection from violations of employment rights, and disability (perceived as mentally impaired and/or mentally disabled), all in violation of the Texas Labor Code and Title VII.[36]

108.    Defendant MDA, with the assistance of one or more of the other Defendants, implemented continuing actions consisting of discriminatory terms and conditions of employment including but not limited to subjecting him to immediate suspension without reasonable grounds to believe he posed a threat to Cai or any other person, denial of proper notice or a meaningful opportunity to respond to said accusations prior to suspension, and constructive wrongful discharge of John involving the severest application of investigation and punitive treatment and techniques compared to similarly-situated female, non-Asian (based on the applicable national

---

[36] See Exhibit 18a; Plaintiff incorporates the statements in his EEOC charge as if fully set forth herein.

origin category), non-retaliatory, and non-disabled and/or perceived as non-disabled MDA employees.

109.    At most, John engaged in sarcastic electronic mail banter with a co-worker on personal, non-work-related matters, and challenged the false publications by a co-worker in a way that was wholly nonviolent, nonthreatening and not harassing. John worked in a research laboratory and had no access to the public or to patients; therefore, MDA had no grounds to believe that John represented a danger to any member of the public, a patient, or a fellow co-worker.

110.    John establishes a prima facie case of discrimination showing that John is a member of a protected group of males (gender), USA/Taiwanese (national origin), and perceived as disabled research employees (disability), by: i) immediately suspending John from his employment without timely and proper notice and a meaningful opportunity to respond, and ii) constructively discharging and requiring John's psychological and psychiatric assessment before he could return to employment. John was qualified for his position as a researcher medical student employed as a researcher in the MDA DePinho laboratory, and he was immediately suspended and constructively discharged and thus suffered adverse employment actions, and was treated less favorably than other similarly situated employees outside the protected groups like Li Cai, and perhaps others. Moreover, Plaintiff establishes a prima facie case of retaliation, in that he engaged in activity protected by Title VII by objecting to discriminatory and retaliatory actions taken against him such as immediate suspension without proper and timely notice and a meaningful opportunity to respond to the allegations before suspension and constructive discharge.  Further, a causal connection exists between the protected activity of objecting to discriminatory and

retaliatory treatment, and the negative employment actions that include his immediate suspension, constructive discharge, delay in reinstatement and his return to employment under unfavorable, disparate, discriminatory conditions.

111.   In support of the aforementioned, MDA engaged in the following intentional discriminatory and retaliatory acts on a continuing basis to which similarly-situated persons like Li Cai, a female co-worker, non-Taiwanese (based on the applicable national origin category), non-disabled person (not perceived as mentally disabled or a threat to another or others) were not subjected, and MDA further engaged in retaliatory acts against John, but not against similarly investigated, disciplined, and/or sanctioned MDA persons in the following respects[37]:

   a.   denial of proper and timely notice of the accusations against him and a meaningful opportunity to respond relating to what would eventually become an accusation of a violation of HOOP Policy #59 alleging sexual misconduct, including no timely notice of when, where or how such misconduct occurred (*Exhibits 1a, 3a-3b, 4 and Exhibit 9, EEOC charge, as if fully set forth herein*),
   b.   denial of proper and timely notice of the accusations against him and a meaningful opportunity to respond relating to what would eventually become an accusation of a violation of the MD Anderson Code of Conduct Principle 9 with no clarification of what part of that principle had been violated, and including refusal to clarify who was involved, where and when this alleged violation occurred, or provide any details on the nature of the actual Title 9 violation (*Exhibit 2g),*
   c.   denial of a due process hearing relating to his suspension and constructive discharge from his employment (*Exhibits UTH policies 1d, Hoop Policy #186, pg. 149-1510* providing for a due process hearing),
   d.   denial of a MDA due process hearing relating to his suspension and constructive discharge from employment, and suspension and constructive dismissal from his MMS medical studies, and suspension and constructive dismissal from his GSBS studies, including denial of meaningful notice and timely notice of the charges, notice of

---

[37] It is Plaintiff's contention that there are other MDA employees who are female, non-Taiwanese, and/or non-disabled persons and/or were persons who had engaged in retaliatory acts but without similar investigation or disciplinary actions than those taken against John, who enjoyed preferential treatment in the workplace compared to John.

witnesses or evidence that might be presented, the ability to hear and respond to witnesses' testimony at the time any proceedings were conducted, the ability to hear and respond to evidence given at the time of the proceedings, the right to cross-examine witnesses, the right to have an attorney or advisor present in the proceeding, and any (*Exhibits UTH policies 1d, Hoop Policy #186, pg. 149-1510* providing for a due process hearing,

e.  denial of a MDA due process hearing, including, but not limited to, denial of proper and timely notice, a meaningful opportunity to be heard, the ability to hear and respond to witnesses' testimony at the time any proceedings were conducted, the ability to hear and respond to evidence given at the time of the proceedings, the right to cross-examine witnesses, the right to have an attorney or advisor present in the proceeding, and any right of appeal,

f.  the failure and/or refusal to abide by MDA rules and regulations relating to similar accusations and disciplinary action of MDA employees,

g.  treating Doe in a discriminatory manner by treating him as if he had engaged in serious criminal acts rather than having engaged in benign, sarcastic electronic mail communications with a female associate while both were outside of work and relating to non-work-related conversation,

h.  Removing him from his place of work for nearly two years, and his continued removal from his laboratory even as of the date of this complaint,

i.  Removing him from work opportunities and benefits inherently available only on MDA premises and only without the restrictions placed on John,

j.  Removing him from his workplace for nearly two years without meaningful due process or opportunity to be heard,

k.  Requiring or promoting his removal from UT campus housing; performing a secret psychological risk assessment on him without the benefit of a fair, sufficient opportunity for Plaintiff's input and assessment by qualified personnel and denying him the opportunity to contest the assessment, thus treating him as if he were perceived as mentally disabled in some manner; communicating with campus police in conveying the female Chinese associate's false allegations of sex-related harassment and stalking, leading to Doe's false arrest,

l.  Requiring John Doe to subsequently undergo an unwarranted psychiatric assessment and testing at his own expense, thus treating him as if he were perceived as mentally disabled,[38]

m.  Requiring that John submit to a Management Plan even though there were no findings to warrant such conditions of employment and only a pretextual finding of MDA's Standards of Conduct #9 was ever made against him, which further implicates discriminatory treatment based on sex (male), national origin (USA of Asian/Taiwanese Descent), retaliation for objecting to the deprivation of his right to

---

[38] *Since this requirement* was implemented under the auspices of the GSBS program and that program is part of MDA, this requirement was mandated by Defendants MDA and UTH.

due process, equal protection, and discriminatory treatment, and disability (perceived as mentally disabled and a threat of some kind requiring "management" and oversight), to which other similarly situated persons are not subjected,

n.  Refused to investigate John's complaint of discriminatory treatment involving female gender bias involving the assumption (without evidence) that Cai's (female/Chinese/non-disabled/non-retaliatory) allegations were true and John's (male, USA of Asian/Taiwanese descent, retaliation, and perceived as disabled), denial was unworthy of credence despite the lack of any credible corroborating evidence,

o.  Refused to investigate John's complaint that Cai's allegations of sexual harassment and stalking were utterly false and fabricated,

p.  Refused to bring a complaint against Cai for misconduct involving the making of false allegations while John, an innocent person falsely accused, was subjected to a nearly two-year nightmare that continues to this day,

q.  Created a systemic wide approach to sexual harassment claims that embraced the allegations of female accusers as summarily true and to be believed while treating accused males as guilty until proven innocent[39],

r.  and all other unequal and discriminatory treatment as more fully set forth in previous and subsequent paragraphs.

Plaintiff requires discovery to more fully identify other MDA and UTHealth actors/employees and campus police actors/agents of MDA and UTHealth that may be involved and more fully explore the actions of the Defendant MDA.  The discriminatory actions set forth herein were taken against Plaintiff while the similarly-situated female, Li Cai, non-Taiwanese/American associate, and other similarly situated females, non-Asian, non-Taiwanese/American, non-disabled and/or perceived as disabled MDA employees, who engaged in similar benign, sarcastic electronic mail or verbal conversations, were never charged, investigated, removed from the workplace or UT housing, required to undergo psychiatric evaluation or testing for a non-existent disability, transferred to a

---

[39] *See Paragraphs 76-87, supra.*

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 67

different work place or subjected to similar harsh, punitive discriminatory acts as more fully described in the factual summary.

112.    The following persons from MDA, UTHealth and campus police implemented the discriminatory and retaliatory treatment based on Plaintiff's sex (male), national origin (USA of Asian/Taiwanese descent), and perceived as disabled (MDA required psychological testing and a management plan for John to resume work), and his reports of discriminatory and unfair treatment that resulted in retaliation against him:

**Sheri Wakefield, Individually and in her official capacity as Director, EEO & Title IX Coordinator, HR EEO at MDA:**

a.  Wakefield (female, non-Asian, non-Taiwanese/American, non-disabled) personally reported Cai's (female, Chinese Nationality, likely disabled but not perceived as such) false accusations against Plaintiff (male, Asian, Taiwanese/American, perceived as disabled)  to the UT Police Department prior to the initiation of any investigation of the accusations, and thus initiated and/or facilitated the initiation of wrongful criminal proceedings and the eventual false arrest of Plaintiff based on gender-biased assumptions in favor of believing female complainants and against believing an accused male,

b.  Wakefield knew or should have known that the allegations of sexual misconduct and stalking against Plaintiff were neither credible nor corroborated yet persisted in facilitating John's constructive discharge and continued to prevent John from resuming his employment even after the Title IX determination could find no substantiation and/or corroboration of Cai's sexual harassment and stalking claims,

c.  Wakefield knew or should have known that the allegations of sexual misconduct and stalking against Plaintiff were neither credible nor corroborated yet persisted in facilitating John's criminal prosecution and false arrest and/or failed to advise campus police that the allegations of sexual misconduct and stalking were neither credible nor substantiated and/or corroborated or that the risk assessment was unnecessary and unwarranted,

d.  Denied John procedural and substantive due process as more fully set forth in Section B, *supra*,

e.  Denied John his constitutional protection to be free from unwarranted and constitutionally infirm arrest and prosecution as more fully set forth in Section C, *supra*,

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 68

f.  Denied John equal protection as more fully set forth in Section D, *supra*,
g.  Violated Title IX in multiple respects as more fully set forth in Sections E and F, *supra*,
h.  See Exhibit 9, EEOC charge, incorporated herein as if fully set forth.

**Margaret McNeese, Individually and in her official capacity as UTH Vice Dean for Admissions and Student Affairs and UTH Title IX Coordinator; and Deana Moylan, Individually and as Title IX Coordinator and Associate Vice President of Diversity and Equal Opportunity at UTHealth:**

a.  McNeese and Moylan (females, non-Asian, non-Taiwanese/American, non-disabled) knew or should have known that the allegations of sexual misconduct and stalking against Plaintiff (male, Asian, Taiwanese/American, reports of discriminatory treatment, perceived as disabled) were neither credible nor corroborated yet persisted in facilitating John's immediate suspension, continuing suspension despite the dismissal of the charges, and constructive discharge and continued to prevent John from resuming his employment even after the Title IX determination could find no corroboration of Cai's sexual harassment and stalking claims,

b.  McNeese and Moylan (females, non-Asian, non-Taiwanese/American, non-disabled) knew or should have known that the allegations of sexual misconduct and stalking against Plaintiff (male, Asian, Taiwanese/American, reports of discriminatory treatment, and perceived as disabled) were neither credible nor corroborated yet persisted in facilitating John's criminal prosecution and false arrest and/or failed to advise campus police of their findings that the allegations of sexual misconduct and stalking were neither credible nor corroborated.

c.  Denied John procedural and substantive due process as more fully set forth in Section B, supra,

d.  Denied John his constitutional protection to be free from unwarranted and constitutionally infirm arrest and prosecution as more fully set forth in Section C, *supra*,

e.  Denied John equal protection as more fully set forth in Section D, *supra*,

f.  Violated Title IX in multiple respects as more fully set forth in Sections E and F, *supra*,

g.  See Exhibit 9, EEOC charge, incorporated herein as if fully set forth.

h.  In January 14, 2021, served as a panelist for a university-wide screening of the documentary ["Picture a Scientist"],[40] which portrays men in academic science as perpetrators of sexual discrimination and sexual harassment against women, blaming men as the direct cause for not enough women pursuing successful STEM careers. Along with other prominent UTHealth faculty, McNeese encouraged and promoted discourse and discussion among attendees that singled out men as perpetrators of sexual discrimination and sexual harassment in academia and advocated for harsher treatment

---

[40] See Exhibit 17.

of men that are accused, demonstrating the inherent biases and prejudices that created and/pr perpetuated the discriminatory treatment of John and the due process and other violations as alleged herein,

i. Interfered with John's contractual rights under the terms of his employment contract, as an MDA employee, and under the terms of the UTH and MDA student and employee policies.

**Vicki L. King, Individually and in her official capacity as Assistant Chief, University Police, Police Department-Special Ops, Converged Threat / Risk Protection & Investigations at UTPD; Kimberly D. Miller, Individually and as Detective in the Threat Management Investigations division with UTPD; and Patricia J. Williams, Individually and as Inspector in the Threat Management Unit, Special Operations Bureau with UTPD:**

a. King, Miller and/or Williams (females, non-Asians, non-Taiwanese/Americans) authored and/or participated in authoring the campus police Risk Assessment, a report gender-biased in favor of female complainants, and lacking in credible evidence to arrive at the flawed risk assessment, and given to MDA to facilitate discriminatory treatment of Plaintiff,

b. King provided testimony to the SEPC regarding campus police risk assessment of John and did so without Plaintiff's presence and ability to challenge the negative assessments made, and created the false impression that John was dangerous and/or mentally unstable,

c. King provided testimony to the SEPC regarding campus police risk assessment of John and did so without interviewing John so he could clarify his actions and place any comments he may have made in context,

d. Supervised and/or participated in supervising others in drafting a risk assessment of Plaintiff that was based on the allegations of a witness (Cai) whose allegations were found to be devoid of credible evidence, that resulted in Plaintiff's immediate removal from his employment, continued removal from employment and medical school studies, departure from UT Housing, and implementation of a SEPC employee management plan devoid of credible evidence supporting such a plan,

e. and other discriminatory acts as more fully set forth in the previous and subsequent paragraphs.

Plaintiff requires discovery to more fully identify other MDA, UTHealth and campus police actors

that may be involved and more fully explore the actions of the Defendants.

113.     As a result of Defendant's discriminatory practices, Plaintiff suffered damages,

including, but not limited to, loss of back pay and employment benefits, front pay, compensatory

damages including future pecuniary losses, past, present and future salary and benefits, emotional pain, suffering, inconvenience, mental anguish, damage to his reputation and future learning and professional opportunities, and other nonpecuniary losses, pre-judgment interest, post-judgment interest, attorneys' fees, expert witness fees, and costs. Accordingly, in addition to monetary damages for economic injuries, costs and other financial losses sought against the Defendants in their individual capacities, John seeks injunctive relief, including full reinstatement to all educational and work opportunities against Defendants in their official capacities.

114.   John also seeks prospective injunctive relief against the Defendants in their official capacities preventing any assessments, notations or publications concerning Plaintiff's educational and work records relating to any reference to the incidents and matters about which John now complains in this case.  To the extent any such assessments, notations or publications are reflected in any of Plaintiff's educational or work records, John further seeks injunctive relief requiring Defendants MDA and UTHealth, and the above identified individual Defendants in their official capacities,  to promptly correct his educational and work records, including but not limited to, Medical Student Performance Evaluation ("MSPE"), formerly known as the "Dean's Letter"; to correct any dissemination of such assessments, notations or other publications; and to promptly prepare, record, store and present such records without reference to any complaint, investigation, academic or disciplinary proceedings, findings and related comments, as if the wrongful events had not occurred; and to reinstate him to the positions he had or should have had but for Defendants' wrongful actions.  Because the Defendants referenced in this section engaged in discriminatory and retaliatory practices with malice or with reckless indifference to the state and

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 71

federally protected rights afforded workers, Plaintiff seeks all damages, including punitive or exemplary or enhanced damages, to which Plaintiff may be entitled under the law.[41]

**B. VIOLATION OF JOHN'S CONSTITUTIONAL RIGHTS UNDER ARTICLE I, SECTION 19 OF THE TEXAS CONSTITUTION AND FOURTH, FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION 42 U.S.C. §1983-DUE PROCESS VIOLATIONS**

115.     Based upon and incorporating the facts pled above, including those set forth in paragraphs 20 – 103 above, Plaintiff John asserts claims for violations of his procedural and substantive constitutional rights protected by Article I, Section 19 of the Texas Constitution, as well as his constitutional rights protected by the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States, including but not limited to, his property and liberty interest in his continued employment and education. The actions of Defendants (as more fully set forth above) reflect the wholesale disregard for John's constitutional procedural and substantive rights to due process of law under Article I, Section 19 of the Texas Constitution, John's Fourth Amendment and Fourteenth Amendment constitutional procedural and substantive rights were violated by and through the actions of Defendants and their agents and representatives as set forth above, including their actions to initiate and accomplish the administrative proceedings were wholly inadequate to protect John's due process rights as a student and as an employee, and were without regard for his

---

[41] All references to requests for punitive/enhanced/exemplary damages are intended to be pled against only those Defendants and for only those causes of action that allow for such damages.   To the extent punitive/enhanced/exemplary damages are not statutorily or legally available against any Defendant (such as governmental entities), Plaintiff is not seeking such damages.

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 72

substantive due process rights and termination of those rights in an arbitrary and capricious manner, all without regard to the applicable institutional policies.

116.     With respect to the due process violations, the Due Process Clause of the Texas Constitution and the United States Constitution is implicated by state and federal higher education and employment disciplinary decisions, procedures by persons acting under color of law, and inherently discriminatory and gender-biased systems that fail to provide for due process rights, and that are implemented without regard to established policies and procedures that should be fairly, evenly and equitably applied to all persons.   The conduct complained of as more fully asserted herein was committed by person acting under color of state law, and the conduct deprived John of rights, privileges, and/or immunities secured by the Constitution or laws of the United States.   conduct complained of was committed by a person acting under color of state law.

117.     As MDA and UTHealth promised and assured to all students and employees (including John), and as guaranteed by the State and Federal Constitutions, John was entitled to i) proper and timely notice and a meaningful opportunity to be heard; ii) the right to fair, even and non-discriminatory application (including all appeal rights) commensurate with the seriousness of the allegations and the potential discipline, sanctions and repercussions he faced.   Before enrolling at UTHealth and continuing his promises—as public educational entities and/or affiliated with and part of the State of Texas—to honor John's due process rights under the constitution of the State of Texas as well as the United States Constitution.

118.     The Fourteenth Amendment provides that no person shall be deprived "of life, liberty, or property, without due process of law."   U.S. Const. Amend. XIV, §1.   Article I, section

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 73

19 of the Texas Constitution provides: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land". The Fourteenth Amendment, like Article I, Section 19, protects both procedural and substantive due process.  Procedural due process ensures that state actors utilize the required and fair proceedings before they can deprive someone of a life, liberty, or property interest. Defendants' actions deprived John of liberties and property interests (including his interests in pursuing medical studies as well as his interests in the cancer research he was conducting as well as the grant applications on which he was working at the time the false allegations were made), in violation of his due process rights.[42]

119.    John had a constitutionally-protected liberty interest under the Texas and Federal Constitutions in pursuing a higher public medical education and continuing his employment. John had/has reputational interests that were damaged by Defendants' actions.  Defendants' actions impeded John's career goals and his reputation, and did so without affording John minimal due process protections as related to his status as a medical student and an MDA research employee. Moreover, given John's accomplishments to date and his standing in his career field, his good name, reputation, honor and integrity were irreparably harmed and damaged by Defendants' failures to provide minimal due process.

---

[42] See *Goss v. Lopez*, 419 U.S. 565, 581, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) ("the student [must] be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story."); see *Board of Curators, Univ. of Missouri v. Horowitz*, 435 U.S. 78, 86 (1978) (quoting *Goss*, 419 U.S. at 584).

120.     John possesses an interest protected by the due process clause of the fourteenth amendment and/or Article I, Section 19 of the Texas Constitution. When as here, a student is removed from a state institution long enough for the removal to be classified as an expulsion, the actions are subject to due process review. The student is entitled to meaningful notice and hearing, including notice of the charges, notice of the evidence to be used against the student, and a hearing are required.  Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner.

121.     Further, notice and hearing should precede removal of the student from school except in those cases where a student's presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process, in which case immediate removal is permissible but notice and hearing should follow as soon as practicable and be conducted by "an impartial tribunal, "[43] and it must be conducted in a "meaningful manner." None of those processes and protections were implemented in a proper manner in John's case.

122.     John's employment as a researcher at MDA, a federally funded employer, is a property interest protected by the Due Process Clause of the Fourteenth Amendment. A property interest in employment can be created by ordinance or by an implied contract. In this instance, John was under a written employment contract with MDA, representing an understanding between John and MDA that secured certain benefits and that support his claims for entitlement to those benefits.

---

[43] *Dirt, Inc. v. Mobile County Comm'n,* 739 F.2d 1562, 1566 (11th Cir.1984).

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 75

123. John was subjected to immediate suspension without proper and timely notice and a meaningful opportunity to be heard prior to his suspension and/or continuing suspension and constructive discharge, and he was defamed in connection with his suspension, continuing suspension and constructive discharge. Further, the charges, which consisted of assertions of wrongdoing on John's part, were false, and were made without conducting a meaningful hearing prior to his suspension, continuing suspension despite dismissal of the charges against him, and constructive discharge. Similarly, the charges were made public, and despite requesting a hearing and opportunity to contest his immediate suspension, continuing suspension, and constructive discharge, those requests were denied. Furthermore, John possessed a liberty interest that implicates a liberty interest subject to due process protections, including his continued employment, that was suspended and constructively terminated in a manner that denied John the opportunity to clear his name and in a manner that creates a false and defamatory impression about him and thus stigmatized him and forecloses and/or impedes him from other employment opportunities.

124. The following Defendants, acting under color of state and federal law, violated Plaintiff's procedural and substantive due process rights in John's protected property interest in his continued employment (MDA) and medical school education (UTMS) and his liberty interests in protecting his good name and reputation, as exemplified by the following actions:

**Margaret McNeese, Individually and/or in her official capacity as UTH Vice Dean for Admissions and Student Affairs and UTH Title IX Coordinator, Deana Moylan, Individually and as Title IX Coordinator and Associate Vice President of Diversity and Equal Opportunity at UTHealth:**

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 76

a. McNeese is believed to be the highest ranking official of UTH and The University of Texas Medical School ("UTMS") student affairs and oversaw the UTH Title IX investigation of Plaintiff,

b. Moylan served as McNeese's deputy coordinator and/or assisted McNeese during the Title IX investigation and findings against Plaintiff, and initiated and/or facilitated the initiation of the due process violations against Plaintiff,

c. They usurped the due process protections available to an employee accused of misconduct and instead implemented procedures that assured Plaintiff would have the least amount of due process protections available,

d. They failed to follow UTH, MDA and UTMS investigation policies and procedures in numerous respects, including the manner of notice provided and the provision of access for Plaintiff to an advisor during the proceedings, and failed to provide a meaningful opportunity to respond, all in violation of HOOP Policy #59[44],

e. They failed to provide notice of a summary of the accusations of sexual harassment to Plaintiff until after he had already been interviewed,

f. They denied Plaintiff the opportunity to have an advisor present during the interview regarding the allegations,

g. They denied Plaintiff the opportunity to decline the interview as provided under the policy,

h. They denied Plaintiff notice of a summary of the allegations in a timely fashion,

i. They pursued a sexual harassment and stalking complaint against Plaintiff despite the lack of objective evidence that the complaints were sex-based, and despite the lack of any corroboration,

j. They denied Plaintiff the opportunity to have 7 days to respond in writing to the notice of complaint, instead forcing him into an interview a day before notice was even given,

k. They imposed discriminatory and punitive interim sanctions against Plaintiff before the investigation concluded, including but not limited to, removal from MDA employment at the DePinho laboratory, refusal to allow Plaintiff to return to his employment once the allegations were dismissed, refusal to allow Plaintiff to continue his medical school

---

[44] On or about November 15, 2018, John was informed by Wakefield (MDA's Title IX Director) that a fellow worker and student (Cai) had made a complaint of sexual harassment against John. John was not provided a copy of the complaint, nor was he provided specifics about the allegations Cai made against John. Instead, with no advance notice, John was interrogated by Defendant Reed (MDA Actor) and by Defendant Obeng (UTH Actor) over events that occurred and words that had been allegedly made up to one year previously. Exhibit 3a reflects the written notice provided to John placing him on administrative leave without the benefit of Defendant even investigating the allegations and providing no written notice of the nature of the allegations other than the statement" [r]ecently, allegations of sexual harassment/sexual misconduct have been brought to the attention of EEO & HR Regulations." *Exhibit 3a.* The next day, Margaret McNeese, M.D. (UTH's Title IX Coordinator) issued a memo to John again advising him in similarly vague fashion that "the Title IX coordinator has received a complaint that names you as the Respondent under HOOP Policy #59 Sexual Misconduct." John did not receive notice of the actual allegations until December 7, 2018, after he had already been confronted and interviewed without the benefit of an advisor as provided by the rules, placed on administrative leave, and subjected to interim measures. *See, Exhibit 3a-3b, 4.*

training, and subjection to further unwarranted and discriminatory review proceedings (SEPC),

l. They ordered and/or facilitated the order that Plaintiff be subjected to a risk assessment by unqualified personnel without notice of the procedure, the findings and an opportunity to contest the assessment at the time they were made and at the time they were presented as evidence against John,

m. They denied Plaintiff due process by denying him the right to hear and respond to all evidence discovered during the Title IX investigation,

n. They failed to consider Plaintiff's response to the preliminary report despite the mandate that such response be considered,

o. The Title IX report failed to identify the alleged policy violation, including any discussion of Principle 9, the fail to describe in what manner a particular allegation was substantiated to the extent that such acts represented an alleged violation of any policy,

p. They referred and/or facilitated the referral of Plaintiff to the University of Texas Medical School ('UTMS") for further punitive proceedings despite the evidence clearly establishing that none of Cai's complaints of sex harassment or stalking were corroborated, and the electronic communications were nothing more than sarcastic banter regarding non-work-related matters,

q. The vague notice John received about an unknown violation of Principle 9 failed to provide reasonable notice of the nature of the alleged violation that had occurred, who was involved in the alleged violation, and when or where such violation occurred rendering it impossible for John to meaningfully defend himself against the false charges[45],

r. They referred and/or facilitated the referral of Plaintiff to UTMS for further investigation even though Plaintiff was on leave of absence from the medical school at the time of the incidents in question, the alleged incidents did not occur on UTMS school grounds, and the alleged incidents did not involve a fellow medical student,

s. The notice Plaintiff did receive regarding referral to UTMS and eventually to UTMS's SEPC meeting, involved a committee that dealt with academic rather than disciplinary matters, it failed to provide proper notice of the charge and a meaningful opportunity to respond by denying John the ability to be present during the testimony of witnesses testifying against him, denied him the opportunity to challenge testimonial and documentary evidence submitted against him while he was present, and despite arriving at the conclusion that they could not make a decision regarding the charge, they

---

[45] It was not until months later, on February 7, 2019, that John first learned he was also under investigation for a violation of the MDA Code of Conduct Principle 9, which provides: "[w]e affirm the need to demonstrate mutual respect and to acknowledge interdependence as co-workers responsible for the welfare of patients." *Exhibit 2g, MD Anderson Code of Conduct, Principle 9.* John was never interviewed regarding this new charge, and in in any event, he was never advised what the exact nature of the alleged Principle 9 violation was that he had allegedly violated, who was involved, and when and where the alleged violation had occurred.

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 78

persisted in requiring psychiatric testing and psychological evaluation of John perceiving him to be mentally impaired in some way,

t.  They continued to impose interim punitive measures against Plaintiff barring him from returning to UTMS to continue his medical training even after the investigation found no policy violation,

u.  They delayed the UTMS proceedings thus further damaging Plaintiff's career, and preventing him from returning to his employment or the medical school,

v.  and other discriminatory acts as more fully set forth in the previous paragraphs.

**Tiffany Dillard Obeng, Individually and/or in her official capacity as EEO Advisor in the Diversity & Equal Opportunity Department at UTHealth:**

a.  Failed to follow UTH, MDA and UTMS investigation policies and procedures in numerous respects, including the manner of notice provided and the provision of access for Plaintiff to an advisor during the proceedings, all in violation of HOOP Policy #59,

b.  Failure to provide reasonable notice of the accusations of sexual harassment and stalking to Plaintiff until after he had already been interviewed by Obeng,

c.  Denied Plaintiff the opportunity to have an advisor present during the interview with Obeng regarding the allegations,

d.  Denied Plaintiff the opportunity to decline the interview with Obeng,

e.  Denied Plaintiff notice of a reasonable summary of the allegations before or during her interview,

f.  Pursued a sexual harassment complaint against Plaintiff despite the lack of objective evidence that the complaints were sex-based, and despite the lack of any corroboration,

g.  Denied Plaintiff the opportunity to have 7 days to respond in writing to the notice of complaint, instead forcing him into an interview with her one day before notice was even given,

h.  Acting in concert with Margaret McNeese, Deana Moylan, Sheri Wakefield, Kimberly Reed, and Yolan Campbell, and together facilitating the imposition of discriminatory and punitive interim sanctions against Plaintiff before the investigation concluded and the complaints of sexual harassment and stalking were dismissed against Plaintiff, including but not limited to, removal from MDA employment at the DePinho laboratory, refusal to allow Plaintiff to return to his employment once the allegations were dismissed, refusal to allow Plaintiff to continue his medical school training, and subjection to further review proceedings,

i.  Facilitated the order subjecting Plaintiff to a risk assessment by unqualified personnel without notice of the procedure, the findings and an opportunity to contest the assessments,

j.  Denied Plaintiff due process by denying him the right to hear and respond to all evidence discovered during the Title IX investigation,

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 79

    k.  Facilitated the imposition of interim punitive measures against Plaintiff barring him from returning to UTMS to continue his medical training even after the investigation found no policy violation,

    l.  and other discriminatory acts as more fully set forth in the previous paragraphs.

**Sheri Wakefield, Director, Individually and/or in her official capacity as EEO & Title IX Coordinator, HR EEO at MDA; Yolan A. Campbell, Individually and/or in her official capacity as Associate Vice President, HR Operations, HR Administration at MDA:**

    a.  Wakefield is the highest ranking EEO office and Title IX coordinator at MDA where Plaintiff was employed and assisted in overseeing the UTH and MDA Title IX investigation of Plaintiff,

    b.  Campbell is the vice president of HR operations at MDA and together with Wakefield, assisted in overseeing the UTH Title IX investigation of Plaintiff,

    c.  They failed to follow UTH, MDA and UTMS investigation policies and procedures in numerous respects, including the manner of notice provided and the provision of access for Plaintiff to an advisor during the proceedings, all in violation of HOOP Policy #59,

    d.  They failed to implement any of the MDA due process protections available to employees accused of misconduct,

    e.  They failed to provide reasonable and timely notice of the accusations of sexual harassment and stalking to Plaintiff until after he had already been interviewed, in violation of MDA policy and procedures,

    f.  Wakefield reported Cai's false accusations against Plaintiff to the UT Police Department, and thus initiated and/or facilitated the initiation of criminal proceedings against Plaintiff,

    g.  They denied Plaintiff the opportunity to have an advisor present during the interview regarding the allegations, in violation of MDA policy and procedures,

    h.  They denied Plaintiff the opportunity to decline the interview,

    i.  They denied Plaintiff reasonable notice of a summary of the allegations,

    j.  They pursued and/or facilitated the pursuit of a sexual harassment and stalking complaints against Plaintiff despite the lack of objective evidence that the complaints were sex-based, and despite the lack of any corroboration,

    k.  They denied Plaintiff the opportunity to have 7 days to respond in writing to the notice of complaint, instead forcing him into an interview a day before notice was even given,

    l.  They imposed and/or facilitated the imposition of discriminatory and punitive interim sanctions against Plaintiff before the investigation concluded and before Cai's complaints of sexual harassment and stalking against Plaintiff were dismissed, including but not limited to, removal from MDA employment at the DePinho laboratory, refusal to allow Plaintiff to return to his employment once the allegations were dismissed, refusal to allow Plaintiff to continue his medical school training, subjection to further review proceedings,

m. They ordered and/or facilitated ordering that Plaintiff be subjected to a risk assessment by unqualified personnel without notice of the procedure, the findings and an opportunity to contest the assessments,

n. They denied Plaintiff due process by denying him the right to hear and respond to all evidence discovered during the Title IX investigation,

o. They failed to consider Plaintiff's response to the preliminary report despite the mandate that such response be considered,

p. They referred, facilitated in the referral, and/or acquiesced in the referral of Plaintiff to the University of Texas Medical School ('UTMS") for further punitive proceedings despite the evidence clearly establishing that none of Cai's complaints of sex harassment and stalking were corroborated,

q. They referred, facilitated in the referral, and/or acquiesced in the referral of Plaintiff to UTMS for further investigation even though Plaintiff was on leave of absence from the medical school at the time of the incidents in question, the incidents did not occur on UTMS school grounds, and the incidents did not involve a fellow medical student,

r. They referred, facilitated in the referral, and/or acquiesced in the referral to continue the interim punitive measures against Plaintiff barring him from returning to MDA to continue his employment even after the investigation found no policy violation,

s. They decided, facilitated in the decision, and/or acquiesced in the decision not to provide Plaintiff with a due process hearing, including denial of reasonable and timely notice of allegations, denial of notice of witnesses, denial of notice of evidence, denial of a hearing, denial of an appeal, all further damaging Plaintiff's career, and preventing him from returning to his employment or the medical school,

t. and other discriminatory acts as more fully set forth in the previous paragraphs.

**Karen D. Reed (Harvey)**, **Individually and/or in her official capacity as Human Resources Specialist, HR at MDA:**

a. Failed to follow UTH, MDA and UTMS investigation policies and procedures in numerous respects, including the manner of notice provided and the provision of access for Plaintiff to an advisor during the proceedings, all in violation of HOOP Policy #59,

b. Failed to provide notice of the accusations of sexual harassment and stalking to Plaintiff until after he had already been interviewed by Reed,

c. Denied Plaintiff the opportunity to have an advisor present during the interview with Reed regarding the allegations,

d. Denied Plaintiff the opportunity to decline the interview with Reed,

e. Denied Plaintiff reasonable and timely notice of a summary of the allegations before or during Reed's interview with Plaintiff,

f. Pursued and/or facilitated the pursuit of a sexual harassment and stalking complaint against Plaintiff despite the lack of objective evidence that the complaints were sex-based, and despite the lack of any corroboration,

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 81

g. Denied Plaintiff the opportunity to have 7 days to respond in writing to the notice of complaint, instead forcing him into an interview with her one day before notice was even given,

h. Acting in concert with Margaret McNeese, Deana Moylan, Sheri Wakefield, and Yolan Campbell, together they facilitated the imposition of discriminatory and punitive interim sanctions against Plaintiff before the investigation concluded and the complaints of sexual harassment and stalking were dismissed against Plaintiff, including but not limited to, removal from MDA employment at the DePinho laboratory, refusal to allow Plaintiff to return to his employment once the allegations were dismissed, refusal to allow Plaintiff to continue his medical school training, subjection to further review proceedings,

i. Facilitated the order subjecting Plaintiff to a risk assessment by unqualified personnel without notice of the procedure, the findings and an opportunity to contest the assessments,

j. Denied Plaintiff due process by denying him the right to hear and respond to all evidence discovered during the Title IX investigation,

k. Facilitated the continued imposition of interim punitive measures against Plaintiff barring him from returning to UTMS to return to MDA even after the investigation found no policy violation,

l. and other discriminatory acts as more fully set forth in the previous paragraphs.

**Michael Redwine, Individually and/or in his official capacity as UTMS, Chair of the SEPC:**

a. Implemented an SEPC review of Plaintiff which normally reviews academic deficiencies and then pursued an investigation of allegations of Plaintiff's alleged misconduct that had already been dismissed and had occurred outside of UTMS educational activities,

b. Falsely represented the nature of the SEPC review of Plaintiff to Chief Compliance Officer William LeMaistre to make it appear as if the SEPC was reviewing Plaintiff for academic deficiencies rather than alleged misconduct,

c. Denied Plaintiff access to a hearing under HOOP Policy186 or other appropriate due process hearing to consider the allegations of misconduct, including but not limited to, denial of meaningful notice and an opportunity to be heard, notice of all allegations being reviewed, notice of witnesses, notice of exhibits, notice of the evidence to be used, denial of the ability to be present while testimony and evidence was being presented, and denial of the ability to have counsel present while testimony and evidence was being presented,

d. Denied Plaintiff access to educational resources even though this is required under the UTMS rules,

e. Failed to make any accommodation to allow Plaintiff to continue his medical training while the proceedings were delayed,

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 82

    f.   Required Plaintiff to take the USMLE Step 1 exam even though no other student had to take such an examination if he/she were not entering clinical rotations, and then refused to allow him to take the examination when Plaintiff agreed to do so,

    g.   Required Plaintiff to submit to a psychiatric exam and undergo one year of mandatory mental health therapy,

    h.   and other discriminatory acts as more fully set forth in the previous paragraphs.

Plaintiff asserts that he requires discovery to more fully identify other MDA, UTHealth and campus police actors/agents that may be involved in the actions, inactions and violations as set forth and pled herein.  Such discovery will also allow for Plaintiff to more fully explore the actions of the Defendants and those actions committed in conspiracy with others to accomplish the violations against Plaintiff as alleged and pled.

       125.    The individual MDA Actors, UTHealth Actors, and campus police Actors were all acting or purporting to act under color of law and were acting at all times in their individual and/or official capacities. The individual Defendants committed violations of John's rights secured by the Texas and United States Constitutions, with such deprivations resulting from the actions of all the individual Defendants (in combination with other Jake and Jane Does, or with their help).  The following actions by Defendants were not taken while performing a discretionary act, the Defendants were not acting in good faith, and/or were not acting within the scope of their authority. Defendants' violations of John's due process rights include the failure of both substantive and procedural basis.  Furthermore, the individual MDA, UTH and campus police actors violated John's fourth and fourteenth Amendment rights as more fully discussed above, and their actions were objectively unreasonable in light of clearly established law.

126.    Given the disciplinary sanctions at issue that were concurrently initiated and pursued even before the investigation had begun, Defendants should have employed more formalized and stringent processes to ensure John's procedural due process and liberty interests were fully protected. Instead, Defendants did just the opposite, failing and refusing to provide even minimal, less stringent opportunities for John: i) to be heard, ii) to present witnesses and evidence, iii) to be provided sufficient information of the allegations made, iv) to confront or cross examine witnesses, v) to be provided the evidence claimed in support of the allegations, vi) to be provided the evidence to support the investigative findings, vii) to appeal the findings, amongst other things.[46]

127.    John was entitled to, and he did in fact attempt to defend his constitutionally protected liberty interest which was implicated because he was discharged in a manner that created a false and defamatory impression about him as being a dangerous person, a sexual harasser, and a stalker, and thus stigmatizes him and forecloses him from other employment opportunities.  In this instance, the following acts by MDA and its' agents establish the violation of John's constitutionally protected liberty interest:

    a.   John Doe was suspended, discharged and/or constructively discharged when he was removed from his employment position even before the investigation concluded, continued to bar him from his school and employment for nearly two years, and he was only allowed to return under specified management conditions nearly two years later;

    b.   That the allegations of sexual harassment and stalking are stigmatizing charges that were made against him in connection with his discharge/removal from his employment;

---

[46] A government official is not entitled to qualified immunity where "a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 84

c. That the charges were false;
d. That he was not provided meaningful notice of the allegations against him prior to his suspension and discharge/constructive discharge from his MDA employment,
e. That the charges were made public;
f. That John repeatedly requested a reasonable opportunity to clear his name, including meaningful notice, an opportunity to question witnesses, an opportunity to have counsel present with him, the opportunity to be present when witnesses or testimony was presented against him, and other appropriate and meaningful opportunities for a full and fair investigation and hearing of the facts.

Plaintiff asserts that he requires discovery to more fully identify other MDA, UTHealth and campus police actors that may be involved in the actions, inactions and violations as set forth and pled above.  Such discovery will also allow for Plaintiff to more fully explore the actions of the Defendants and those actions committed in conspiracy with others to accomplish the violations against Plaintiff as alleged and pled.

128.     Moreover, the systemically gender-biased systems at MDA and UTHealth encouraged and fostered an environment that promoted preconceived notions and beliefs favoring and giving presumptive credence to female complainants, as opposed to following the evidence and arriving at a fair, logical, common-sense and accurate conclusion based on the credible evidence presented in relation to accused males. The notions of equity, fairness, and clarity are "thrown out the window" when it comes to how Defendants implemented the investigative processes of their respective disciplinary systems.

129.     Defendants violated John's procedural due process rights in multiple respects, including: i) Defendants' failure to provide John with  information of the allegations sufficient to allow him to respond and present a full defense; ii) Defendants' failure to provide John the evidence to support the incriminating decisions and actions taken against John; iii) Defendants'

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 85

failure and refusal to provide John the information, documents, and evidence on which they rely in support of their findings and any decisions on actions then taken against John; and iv) Defendants' failure and refusal to follow institutional policies and to allow John to be represented or have representative advisors present, to allow John to present witnesses, to allow John to examine and cross examine witnesses, and to allow John the ability to even be present during the proceedings, and to clear his name, particularly given the seriousness of the allegations of misconduct against him.

130.    The initial administrative leave and the harsh restrictions, directives, and other negative ramifications that followed and that were imposed on John were, in and of themselves, harmful, harsh deprivations of John's liberties and property rights.  The manner in which the two governmental units (MDA and UTHealth) "ping ponged" John between different administrative requirements and proceedings prolonged the negative ramifications to John from Defendants' illegal and unconstitutional actions.  Given the severity of the allegations and the resulting disciplinary ramifications as well as loss of liberties, freedoms and property rights, John should have been afforded some of the most formal, stringent procedural due processes available, as he had requested.

131.    Each individual act committed by Defendants in furtherance of their illegal scheme was in itself a violation of 42 USC §1983, and a violation of a myriad of John's State and Federal constitutional rights.  The totality of the actions by Defendants also exemplified and demonstrated the disparate, ad hoc, discriminatory and gender-biased systems in play. These disciplinary/investigative systems were and remain replete with systemic gender-based biases that

promote the continuation of wholesale deprivations of substantive and procedural due process, and as such injunctive relief is necessary to take corrective action against Defendants in their official capacities to: i) enjoin MDA and UTHealth, as well as any and all of the other individual Defendants, from continuing to utilize such illegal and unconstitutional disciplinary and investigative systems and processes; and ii) correct John's academic record and standing, as well as provide to John the full benefits of work opportunities to which he was entitled had the illegalities stemming from the false accusations not occurred. Simply put, corrective action through injunctive relief is necessary to stop Defendants' arrogant refusal to follow the law and to stop the continuation of due process and constitutional violations inherent in such systems.

132.    Defendants violated the Texas Constitution as well as the U.S. Constitution when John was deprived of requisite due process and equal protection to reach a preordained result. Those deprivations continued despite findings largely favorable to John, indicating the loss of liberties and property rights resulting from inherently biased and discriminatory systems that fail to provide sufficient substantive and procedure due process, and that fail to follow well-established legal authorities applicable to MDA and UTHealth. John was deprived sufficient notice of the allegations, and deprived a fair opportunity to review and examine the information Defendants claimed, gathered, or had in support of the allegations and findings. A thorough inspection and examination was needed for John to defend himself fully and fairly against the false accusations.

133.    Defendants presumed John's guilt and failed to examine critically the discrepancies in Cai's testimony and assertions. Defendants failed to give equal or fair consideration to John's testimony and evidence due to the gender-based biases at play. Defendants failed to fairly evaluate

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 87

the testimony and evidence of neutral witnesses (co-workers and co-students), instead opting to perpetuate the lie that every accusation of sex-based misconduct must be given a higher magnitude of credence irrespective of the contradictions surrounding such accusations.  Defendants employed gender-biased stereotypes to credit Cai's allegations over John's evidence and testimony (and that of all other witnesses), reaching an erroneous conclusion that was contrary to the credible evidence, and denying John the right to a process (including a fair hearing or appeal) free of bias.  Certain of the Defendants (MDA Actors, UTHealth Actors and campus police Actors) accepted and promoted Cai's allegations as credible and truthful despite inconsistencies and neutral witness testimony to the contrary, and despite Cai's own mental health conditions that causally relate to her perceptions and the state of reality that existed at the time.  John had no opportunity to question or cross-examine Cai for bias or motive, and to fully present his position on this vital fact.  It is hardly reasonable for Defendants to take the position that John failed to present evidence of his position when he was denied every opportunity to do so and ordered to have no interaction with his accuser; ordered to refrain from accessing MDA and UTHealth facilities; and prevented from seeing the accusations or the evidence he was to refute.

134.    As a direct and proximate result of the above conduct, John sustained significant damages and injuries, including, without limitation: i) reputational damage accompanied by an alteration in legal status that deprived him of a right he previously held; ii) economic injuries and financial costs/losses, both past and future; iii) mental anguish; iv) loss of property rights, as well as loss of occupational and educational opportunities; v) and the continued deprivation of work-

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 88

related opportunities to which he should be allowed and would have obtained but for Defendants' wrongful actions as set forth herein.

135.    Accordingly, in addition to monetary damages for economic injuries, costs and other financial losses, John seeks injunctive relief, including full reinstatement to all educational and work opportunities against Defendants in their official capacities.  John also seeks prospective injunctive relief against Defendants in their official capacities preventing any assessments, notations or publications concerning Plaintiff's educational and work records relating to any reference to the incidents and matters about which John now complains in this case.  To the extent any such assessments, notations or publications are reflected in any of Plaintiff's educational or work records, whether negative or merely "neutral", John further seeks injunctive relief requiring Defendants MDA and UTHealth, and including UTMS, and the above identified individual Defendants in their official capacities, to promptly correct his educational and work records, including but not limited to, removal of any references in the context of the Hoop #59 and SEPC investigations and decisions, the Medical Student Performance Evaluation ("MSPE"), formerly known as the "Dean's Letter"; to correct any dissemination of such assessments, notations or other publications; and to promptly prepare, record, store and present such records without reference to any complaint, investigation, academic or disciplinary proceedings, findings and related comments, as if the wrongful events had not occurred; and to reinstate him to the positions he had or should have had but for Defendants' wrongful actions.

136.    Based on the allegations set forth herein, John is also entitled to declaratory relief under the Declaratory Judgment Act, Texas Civil Practice & Remedies Code §37.001 et seq. that

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 89

Defendant MDA's and UTHealth's policies and implementation of those policies, as applied to John and others similarly situated, violate due process rights afforded to John and others pursuant to the Texas and US Constitutions. Such declaratory judgment relief includes, but is not limited to:  i) a declaration that MDA and UTHealth's policies and procedures, as they were applied to and implemented against John, were and continue to be unconstitutional and a violation of due process rights, including implementation of Hoop #59 and the SEPC procedures; and ii) a declaration that MDA and UTHealth's policies and procedures, as they were applied to and implemented against John, violate the Due Process Clause of the United States Constitution such that a) John is fully reinstated to the full measure of all benefits of educational and work opportunities at UTHealth and MDA that would and should be available to him but for Defendants' wrongful conduct; b) John's academic and work records are expunged of any and all references to the false allegations as well as any negative ramifications of same; c) Defendants are prohibited and enjoined from disclosing the false allegations and the results of any disciplinary actions (temporary or otherwise) concerning John; and d) John is provided all remedial actions to put John at the same level of accomplishments (both educationally and occupationally) had Defendants not committed the wrongful acts as alleged herein.

### C. VIOLATION OF JOHN'S CONSTITUTIONAL RIGHTS UNDER ARTICLE I, SECTION 19 OF THE TEXAS CONSTITUTION AND FOURTH, FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION 42 U.S.C. §1983-ACTS OF MALICIOUS PROSECUTION AND FALSE ARREST

137.    Plaintiff incorporates the facts pled above, including those set forth in paragraphs 20 – 103 above.  All elements for bringing a cause of action for violations of Article I, Section 19

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 90

of the Texas Constitution and 42 U.S.C. §1983 of the Fourth, Fifth and Fourteenth Amendments of the United States Constitutions, based on actions consistent with or reminiscent of a claim for malicious prosecution [47] of criminal proceedings, false arrest, and/or for malicious criminal prosecution through the filing and prosecution of false charges for harassing communications, exist.   Criminal prosecution was commenced against John that were initiated or procured by persons associated with Defendants' UTHealth and MDA, and who were acting with campus police on behalf of UTHealth and MDA. Those Defendants engaging in actions that resulted in John's false arrest without probable cause and criminal prosecution without credible evidence and probable cause based on false accusations, and include but are not limited to:

**Vicki L. King**, **Individually and/or in her official capacity as Assistant Chief, University Police, Police Department-Special Ops, Converged Threat / Risk Protection & Investigations at UTPD; Kimberly D. Miller, Individually and/or in her official capacity as Detective in the Threat Management Investigations division with UTPD; and Patricia J. Williams**, **Individually and/or in her official capacity as Inspector in the Threat Management Unit, Special Operations Bureau with UTPD:**

a. King, Miller and Williams knew or should have known that the allegations of sexual misconduct and stalking against Plaintiff were neither credible nor corroborated yet persisted in seeking John's criminal prosecution and false arrest,

b. King, Miller and Williams participated in and/or supervised the criminal investigation of Plaintiff that revealed the lack of credible evidence substantiating Cai's allegations yet took no action to halt the criminal investigation, and instead ignored the lack of evidence and corroboration and facilitated the criminal prosecution and false arrest of Plaintiff based on a lack of probable cause to believe John had engaged in electronic communication harassment,

---

[47] Plaintiff acknowledges that the federal courts do not recognize a federal claim of malicious prosecution and Plaintiff does not assert such a federal malicious prosecution claim in this case but rather asserts that certain acts consistent with or reminiscent of malicious prosecution represent actions that amount in this instance to violations of the Texas and Federal Constitutions as alleged.

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 91

c. King, Miller and Williams knew or should have known that the allegations against Plaintiff of electronic communication harassment were devoid of probable cause on their face and fell far short of the standard for the filing of criminal charges,

d. King, Miller and Williams participated in the preparation and issuance of and/or supervision of preparation and issuance of an arrest warrant against Plaintiff based on the allegations of a witness (Cai) whose allegations were found to be devoid of probable cause and credible evidence,

e. They participated in the arrest and/or supervision of the arrest of Plaintiff based on allegations of a witness (Cai) whose allegations were found to be devoid of probable cause and credible evidence,

f. They participated in the preparation and issuance and/or supervision of preparation and issuance of charges of electronic communication harassment that were lacking in legal or factual basis to characterize such acts as meeting the threshold for criminal conduct,

g. King, Miller and/or Williams (females, non-Asians, non-Taiwanese/Americans, non-disabled) authored and/or participated in authoring the campus police Risk Assessment, a report gender-biased in favor of female complainants, and lacking in credible evidence to arrive at the flawed risk assessment, and given to MDA and UTH to facilitate discriminatory treatment of Plaintiff,

h. King provided testimony to the SEPC regarding campus police risk assessment and did so without Plaintiff's presence and ability to challenge the negative assessments made,

i. Supervised and/or participated in supervising others in drafting a risk assessment of Plaintiff that was based on the allegations of a witness (Cai) whose allegations were found to be devoid of credible evidence, that resulted in Plaintiff's immediate removal from his employment, continued removal from employment and medical school studies, departure from UT Housing, and implementation of a SEPC management plan devoid of credible evidence supporting such a plan,

j. and other discriminatory acts as more fully set forth in the previous paragraphs.

**Sheri Wakefield, Individually and/or in her official capacity as Director, EEO & Title IX Coordinator, HR EEO at MDA:**

a. Wakefield (female, non-Asian, non-Taiwanese/American) personally reported Cai's (female, Asian) false accusations against Plaintiff (male, Asian, Taiwanese/American) to the UT Police Department prior to the initiation of any investigation of the accusations, and thus initiated and/or facilitated the initiation of wrongful criminal proceedings and the eventual false arrest against Plaintiff based on gender-biased assumptions in favor of believing female complainants and against an accused male,

b. Wakefield knew or should have known that the allegations of sexual misconduct and stalking against Plaintiff were neither credible nor corroborated yet persisted in

facilitating John's criminal prosecution and false arrest and/or failed to advise campus police that the allegations of sexual misconduct and stalking were neither credible nor corroborated or that the risk assessment was unnecessary and unwarranted.

**Margaret McNeese, Individually and/or in her official capacity as UTH Vice Dean for Admissions and Student Affairs and UTH Title IX Coordinator; and Deana Moylan, Individually and/or in her official capacity as Title IX Coordinator and Associate Vice President of Diversity and Equal Opportunity at UTHealth:**

a. McNeese and Moylan (females, non-Asian, non-Taiwanese/American) knew or should have known that the allegations of sexual misconduct and stalking against Plaintiff (male, Asian, Taiwanese/American) were neither credible nor corroborated yet persisted in facilitating John's criminal prosecution and false arrest and/or failed to advise campus police of their findings that the allegations of sexual misconduct and stalking were neither credible nor corroborated, or that the risk assessment was unnecessary and unwarranted.

Plaintiff requires discovery to more fully identify other MDA, UTHealth and campus police actors that may be involved and more fully explore the actions of the Defendants.

138.    Such false arrest and criminal prosecutions at issue and as set forth in this pleading were terminated in John's favor, and he was innocent of all such charges.  Defendants did not have probable cause to initiate or procure such prosecutions.  The prosecutions were initiated and procured with malice, absent good faith, causing further and additional violations of John's rights by and through the malicious criminal prosecution of John as well as his false arrest and the resulting actions taken as part of the criminal proceedings.  Defendants, without probable cause or other basis, sought, initiated, filed, pursued and prosecuted false criminal charges against John, and did so maliciously and without good faith.  The actions by the individual Defendants were not taken while performing a discretionary act, the Defendants were not acting in good faith, and/or were not acting within the scope of their authority. Furthermore, the individual MDA, UTH and campus police actors violated John's fourth and fourteenth Amendment rights as more fully

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 93

discussed above, and their actions were objectively unreasonable in light of clearly established law.

139.     Accordingly, in addition to monetary damages for economic injuries, costs and other financial losses against the Defendants in their individual capacities, John seeks injunctive relief, including full reinstatement to all educational and work opportunities against Defendants in their official capacities. John also seeks prospective injunctive relief against Defendants in their official capacities preventing any assessments, notations or publications concerning Plaintiff's educational and work records relating to any reference to the incidents and matters about which John now complains in this case.

140.     To the extent any such assessments, notations or publications are reflected in any of Plaintiff's educational or work records, John further seeks injunctive relief requiring Defendants MDA and UTHealth, and the above identified individual Defendants in their official capacities, to promptly correct his educational and work records, including but not limited to, Medical Student Performance Evaluation ("MSPE"), formerly known as the "Dean's Letter"; to correct any dissemination of such assessments, notations or other publications; and to promptly prepare, record, store and present such records without reference to any complaint, investigation, academic or disciplinary proceedings, findings and related comments, as if the wrongful events had not occurred; and to reinstate him to the positions he had or should have had but for Defendants' wrongful actions.

### D.  VIOLATION OF JOHN'S CONSTITUTIONAL RIGHTS UNDER ARTICLE I, SECTIONS 3 AND 3A OF THE TEXAS CONSTITUTION AND FOURTEENTH

## AMENDMENT OF THE UNITED STATES CONSTITUTION 42 U.S.C. §1983 – EQUAL PROTECTION CLAUSE VIOLATIONS

141.   Based upon and incorporating the facts pled above, including those set forth in paragraphs 20 – 103 above, Plaintiff John asserts claims for violations of his constitutional rights protected by Sections 3 and 3a of Article I of the Texas Constitution, and as protected by the Fourteenth Amendment of the Constitution of the United States.  The actions of Defendants (as set forth in the allegations above) reflect unconstitutional gender bias and sex discrimination supporting John's claims that MDA and UTHealth violated John's equal protection rights as guaranteed by Article I, Sections 3 and 3a of the Texas Constitution, and as guaranteed by the Fourteenth Amendment of the U.S. Constitution, and therefore are violations of 42 U.S.C. §1983.

142.   Plaintiff asserts that the following identified Defendants, acting in their individual and/or official capacities, and while not performing a discretionary act, not acting in good faith, and/or not acting within the scope of their authority, denied John equal protection based on his gender (male):

**Margaret McNeese, Individually and/or in her official capacity as UTH Vice Dean for Admissions and Student Affairs and UTH Title IX Coordinator;**

**Deana Moylan, Individually and/or in her official capacity as Title IX Coordinator and Associate Vice President of Diversity and Equal Opportunity at UTHealth;**

**Tiffany Dillard Obeng, Individually and/or in her official capacity as EEO Advisor in the Diversity & Equal Opportunity Department at UTHealth;**

**Sheri Wakefield, Director, Individually and/or in her official capacity as EEO & Title IX Coordinator, HR EEO at MDA;**

**Yolan A. Campbell, Individually and/or in her official capacity as Associate Vice President, HR Operations, HR Administration at MDA;**

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 95

**Karen D. Reed, Individually and/or in her official capacity as Human Rights Specialist, HR at MDA;**

**Michael Redwine, Individually and/or in his official capacity as UTMS, Chair of the SEPC.**

Furthermore, the individual MDA, UTH and campus police actors violated John's equal protection rights as more fully discussed above, and their actions were objectively unreasonable in light of clearly established law. The individually identified Defendants listed above denied Plaintiff equal protection in the following respects based on his sex (male) compared to similarly situated female co-workers and students, such as Li Cai (female), and other similarly situated female employees and students:

a. denial of proper and timely notice of the accusations and a meaningful opportunity to be heard,

b. denial of a due process hearing relating to his suspension and constructive discharge from his employment and medical school studies,

c. denial of a UT/MDA due process hearing relating to his suspension and constructive discharge from employment, and suspension and constructive dismissal from his UTMS medical studies, and suspension and constructive dismissal from his GSBS studies, including denial of notice and timely notice of the charges, notice of witnesses or evidence that might be presented, the ability to hear and respond to witnesses' testimony at the time any proceedings were conducted, the ability to hear and respond to evidence given at the time of the proceedings, the right to cross-examine witnesses, the right to have an attorney or advisor present in the proceeding, and any right of appeal,

d. the failure and/or refusal to abide by UT/MDA rules and regulations relating to similar accusations and disciplinary action of MDA employees,

e. treating Doe in a discriminatory manner by treating him as if he had engaged in serious criminal acts rather than having engaged in benign, sarcastic electronic mail communications with a female associate while both were outside of work and relating to non-work-related conversation,

f. Removing him from his work place for nearly two years, and his continued removal from his laboratory even as of the date of this complaint,

g. Removing him from his work place for nearly two years without meaningful due process or opportunity to be heard,

---

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 96

    h.  Requiring his removal from UT campus housing,

    i.  Performing a secret psychological risk assessment on him without the benefit of Plaintiff's input and assessment by qualified personnel and denying him the opportunity to contest the assessment,

    j.  Communicating with campus police in conveying the female associate's false allegations of sex-related harassment, leading to Doe's false arrest,

    k.  Requiring John to subsequently undergo a psychiatric assessment and testing at his own expense,

    l.  Requiring that John submit to a Management Plan even though no finding was ever made against him to warrant such actions,

    m.  The refusal to institute an investigation and/or legitimate and meaningful investigation of John's complaint against Cai for bringing false allegations,

    n.  The refusal to restore John to the DePinho lab but permitting the female MDA employee to continue in the DePinho lab despite her false allegations, and the finding that such allegations were not corroborated,

    o.  and all other unequal and discriminatory treatment as more fully set forth in the Sections A through C, and Sections D through I.

143.    Accordingly, in addition to monetary damages for economic injuries, costs and other financial losses against the Defendants in their individual capacities, John seeks injunctive relief, including full reinstatement to all educational and work opportunities against the Defendants in their official capacities. John also seeks prospective injunctive relief against Defendants in their official capacities preventing any assessments, notations or publications concerning Plaintiff's educational and work records relating to any reference to the incidents and matters about which John now complains in this case.  To the extent any such assessments, notations or publications are reflected in any of Plaintiff's educational or work records, John further seeks injunctive relief requiring Defendants MDA and UTHealth, and the above identified individual Defendants in their official capacities,  to promptly correct his educational and work records, including but not limited to, the Medical Student Performance Evaluation ("MSPE"), formerly known as the "Dean's Letter"; to correct any dissemination of such assessments, notations or other publications; and to

promptly prepare, record, store and present such records without reference to any complaint, investigation, academic or disciplinary proceedings, findings and related comments, as if the wrongful events had not occurred; and to reinstate him to the positions he had or should have had but for Defendants' wrongful actions.

144.    John is further entitled to a declaration that MDA's and UTHealth's policies as applied to John violated his equal protection rights such that a) John is fully reinstated to the full measure of all benefits of educational and work opportunities at UTHealth and MDA that would and should be available to him but for Defendants' wrongful conduct; b) John's academic and work records are expunged of any and all references to the false allegations as well as any negative ramifications of same; c) Defendants are prohibited and enjoined from disclosing the false allegations and the results of any disciplinary actions (temporary or otherwise) accomplishments (both educationally and occupationally) had Defendants not committed the wrongful acts as alleged herein.  Additionally, John seeks and is entitled to monetary damages for economic losses and other financial ramifications from Defendants' wrongful actions and conduct as alleged herein.

### E.  VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972

145.    Based upon and incorporating the facts pled above, including those set forth in paragraphs 20 – 103 above, Plaintiff John asserts claims for violations of Title IX of the Education Amendments of 1972 (referred to herein as "Title IX").  Title IX provides, in relevant part, that: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  Title IX applies to an entire school or institution if any

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 98

part of that school receives federal funds.  Defendants MDA and UTHealth receive federal funding, and as such are required to abide fully by the Title IX requirements. Title IX violations may occur by an institution's imposition of institutional discipline where gender is a motivating factor in the decisions that result in negative action like the actions and decisions to which John was subjected by Defendants.  John, who possesses a tangible legal interest in requiring MDA and UTH to administer their respective policies, procedures and regulations as promulgated in a manner that does not discriminate based on gender, alleges and asserts facts, with supporting evidence, showing that Defendants discriminated against John on the basis of his gender/sex (male):

a.  John Doe was suspended, discharged and/or constructively discharged when he was removed from his employment position even before the investigation concluded, continued to bar him from his school and employment despite dismissal of the sexual harassment charges for nearly two years, and he was only allowed to return under specified management conditions impugning his mental health nearly two years later;

b.  That the allegations of sexual harassment and stalking are stigmatizing charges that were made against him in connection with his discharge/removal from his employment;

c.  That the charges were false;

d.  That he was not provided meaningful notice of the allegations against him prior to his suspension and discharge/constructive discharge from his MDA employment,

e.  That the charges were made public;

f.  That John repeatedly requested a reasonable opportunity to clear his name, including meaningful notice, an opportunity to question witnesses, an opportunity to have counsel present with him, the opportunity to be present when witnesses or testimony was presented against him, and other appropriate and meaningful opportunities for a full and fair investigation and hearing of the facts;

g.  That his allegations against Li Cai were not investigated with the same degree of objective, fair-minded attention, and instead were pursued in the context of intensely hostile procedures involving threats of further actions against Plaintiff if he did not withdraw his complaints.

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 99

*See also*, Sections A through D, and F through I, setting forth individual acts of discrimination based on sex, undertaken by the entities, and persons acting on behalf of those entities, in violation of Title IX, and incorporating those identified discriminatory acts as if fully set forth herein.

142.    John is entitled to injunctive and declaratory relief that MDA's and UTHealth's policies as applied to John violated Title IX such that a) John is fully reinstated to the full measure of all benefits of educational and work opportunities at UTHealth and MDA that would and should be available to him but for Defendants' wrongful conduct; b) John's academic and work records are expunged of any and all references to the false allegations as well as any negative ramifications of same, including any issuance of the Medical Student Performance Evaluation ("MSPE"), formerly known as the "Dean's Letter", without reference to any complaint, investigation, academic or disciplinary proceedings, findings and related comments, as if the wrongful events had not occurred, and to reinstate him to the positions he had or should have had but for Defendants' wrongful actions; c) Defendants are prohibited and enjoined from disclosing the false allegations and the results of any disciplinary actions (temporary or otherwise) concerning John; and d) John is provided all remedial actions to put John at the same level of accomplishments (both educationally and occupationally) had Defendants not committed the wrongful acts as alleged herein.  Additionally, John seeks and is entitled to monetary damages for economic losses and other financial ramifications from Defendants' wrongful actions and conduct as alleged herein.

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 100

**F. TEXAS DECLARATORY JUDGMENTS ACT SEEKING DECLARATIONS THAT MDA AND UTH VIOLATED TITLE IX OF THE EDUCATION AMENDMENTS OF 1972, THE DUE PROCESS AND EQUAL PROTECTION CLAUSES OF ARTICLE I, §§ 3, 3a, 19 AND THE FOURTH, FIFTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION**

143. Based upon and incorporating the facts pled above, including those set forth in paragraphs 20 – 103 above, Plaintiff John asserts his claim for declaratory relief against Defendants MDA and UTHealth under Title IX of the Education Amendments of 1972, 42 U.S.C. §1983 and the due process and equal protection clauses of Article I, §§ 3, 3a and 19 of the Texas Constitution and the Fourth, Fifth and Fourteenth Amendments of the United States Constitutions. John has a tangible property and liberty interest in requiring MDA and UTHealth to administer their respective policies, procedures and Title IX regulations and guidelines in a lawful manner. This includes ensuring the policies, procedures and regulations (as promulgated by each respective institution or governmental unit) do not discriminate based on gender; are void of gender biases; and are applied, equally, fairly and equitably without regard to gender/sex or any other prohibited factor. MDA and UTHealth have violated John's rights under State and Federal law, including the constitutional provisions cited to above.

144. John's education and future employment and career opportunities have been severely damaged. Without appropriate redress, including declaratory and injunctive relief as more fully described in the immediately preceding section, the unfair and erroneous outcomes of the EO Investigations in light of the due process and other constitutional and statutory violations, and the outcomes of John's complaints will continue to cause John irreparable harm. Accordingly, there exists a justiciable controversy concerning John and his educational and occupational rights,

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 101

liberties, opportunities, and benefits.   Judicial intervention is not premature because unless Defendants' actions are enjoined and unless other injunctive relief is granted, MDA will continue to obstruct John's occupational opportunities (compared to what John had before the wrongful actions took place and, further, UTHealth's indicated position of further negative actions contemplated against John as a result of the recent findings made by Campbell will continue.[48]

145.    Although Plaintiff was allowed to return to school after he was suspended for two years under the guise of "interim measures" and other disparate requirements, he was still subject to "erroneous outcome" violations because of MDA's pretextual finding of a Standards of Conduct #9 violation, a negative Risk Assessment by campus police, and a referral to the SEPC that resulted in mandatory mental health assessments and therapy as a condition for return to school and as a condition to remain in school. *See*, *Sections A through E, and G through I*, setting forth individual acts of discrimination based on sex, undertaken by the entities, and persons acting on behalf of those entities, and incorporating those identified discriminatory and retaliatory acts as if fully set forth herein.

146.    Cai's allegations, on their face, did not meet the institutional policy definitions (or a commonsense interpretation) for sexual harassment and stalking, yet Defendants initiated and

---

[48] Plaintiff alleges he was subject to "erroneous outcome" and "selective enforcement" discrimination, as set forth in and prohibited by *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994).  Under the "erroneous outcome" theory of liability, the claim is that the charged student (John) was innocent and wrongly found to have committed an offense."  See Plummer v. Univ. of Houston, 860 F.3d 767, 777 (5th Cir. 2017) (citing *Yusuf*, 35 F.3d at 715).  Under the "selective enforcement" contention, the claim is that, regardless of the student's (John's) culpability, the severity of the penalty and/or the institution's decision to initiate proceedings was affected by the charged student's protected category (e.g., gender, etc.).  *Id.*

pursued investigations under Title IX due to "selective enforcement" and in a manner that was wholly inconsistent with the validity of the complaint.  By contrast, and as an exemplar of "selective enforcement," John's complaint against Cai was treated with "selective non-enforcement" and was not investigated and/or not accorded proper treatment. Defendants' investigations and treatment of the complaints were accorded different enforcement and investigations based on discriminatory factors, including factors of John being male, and Cai being female.

147.    These Defendants failed to properly implement policies and procedures that are free of unconstitutional gender-based biases and other discriminatory factors, including but not limited to, use and application of the HOOP #59 procedures, the UTMS SEPC procedures, and with respect to Defendants' failure to investigate and evaluate evidence concerning the underlying allegations in a way that was legal and that fully complies with applicable State and Federal laws as alleged and pled herein. *See Sections A-F, H and I,* incorporated herein, setting forth individually identified acts of gender-biased policies and procedures implemented in a manner that violated both State and Federal Constitutional protections under Article I, Section 19 of the Texas Constitution, and the Fourth, Fifth and Fourteenth Amendments of the U.S. Constitution.

148.    Defendants implemented and put in place discriminatory policies, or alternatively applied such policies in illegal and constitutionally infirm ways, such as Hoop #59 and the SEPC procedures, instead of ensuring that adequate and much needed policies, procedures, protocols and guidelines were implemented, followed and comported with State and Federal due process, equal protection and Title IX protections. Defendants failed to properly monitor and supervise personnel

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 103

engaged in carrying out the actions in furtherance of such illegal and infirm policies, procedures, protocols and guidelines as alleged herein.  Defendants failed to provide training and controls over the ability of its personnel to deal with and address false statements and to prevent any personnel (including campus police Actors) from providing false information in order to effectuate the violations against John as set forth above.

149.    For example, Defendants used attorney Darren Gibson and the firm of Littler Mendelson to investigate certain of the complaints John had filed.  Gibson had a long history of perpetuating the gender-biases at institutions like MDA and UTHealth, consistently and systematically "rubber stamping" the institution's conduct and ensuring that investigative findings were favorable to the institution paying him and his firm. Gibson had a history of lectures and presentations that made clear his biased positions on factual scenarios similar to what occurred to John and thus creating a systemic problem because his presentations and training emphasized gender-biased approaches that embraced without question female complainants and their allegations while treating accused males as guilty until proven innocent. Instead of conducting a fair, full, and reasonably complete investigation, Gibson refused to consider the other side, and limited his investigations to what he wanted presented to substantiate his presumptive findings made in advance of the investigation.  *See also, Paragraphs 76-87, supra.*

150.    Either Defendants' actual maliciousness, or alternatively Defendants' indifference concerning the actions of their duly charged agents and representatives, resulted in the improper initiation and procurement of the disciplinary processes and the criminal charges against John. Such policy failures now and in the future resulted, and will continue to result, in the continuing

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 104

violations of the constitution rights of citizens and residents of Texas and the United States. *See,*
*Sections A through F, and H through I*, setting forth individual acts of discrimination based on sex,
undertaken by the entities, and persons acting on behalf of those entities, in violation of 42 U.S.C.
section 1983, Title VII, and Title IX, and incorporating those identified discriminatory acts as if
fully set forth herein.

151.    Proper remedial measures, including but not limited to injunctive and declaratory
relief, and the implementation of adequate policies, procedures, guidelines and protocols, in
combination with proper oversight, monitoring, supervision and training of personnel carrying out
the actions, would prevent situations to occur that allow for and effectuate the violations of
constitutional rights similar to those violations that John was caused to suffer. Defendants UTH
and MDA violated John's constitutional and civil rights in the following respects:

    a.    Failing to implement written policies, procedures, protocols and guidelines for its investigating and supervisory personnel in the context of the proceedings John was forced to defend;

    b.    Failing to implement written policies, procedures, protocols and guidelines for its investigating and supervisory personnel ensuring that probable cause exists based on truthful information and statements to initiate and/or pursue or participate in pursuing criminal charges and proceedings;

    c.    Failing to implement written policies, procedures, protocols and guidelines for its investigating and supervisory personnel preventing the implementation and use of processes that are illegal and that violate due process and other constitutional rights and/or that violate the protections afforded to John under Title IX, including the full measure of all substantive and procedural due process protections as alleged;

    d.    Failing to implement written policies, procedures, protocols and guidelines for its investigating and supervisory personnel, along with training and proper secondary oversight, to prevent the illegal investigatory processes as well as the ramifications to persons falsely accused like John was in this case; and

e.    Failing to supervise and train its investigating personnel to ensure that all processes and actions are free of gender biases, and to ensure that all actions by Defendants and their personnel comply with applicable State and Federal law, thereby ensuring that all constitutionally protected rights are not infringed or obliterated, as was the case in Defendants' wrongful actions to John in this case.

152.    John is entitled to injunctive and declaratory relief that MDA's and UTHealth's policies as applied to John violated Title IX such that a) John is fully reinstated to the full measure of all benefits of educational and work opportunities. All elements for bringing a cause of action for declaratory relief exists. Disciplinary proceedings as well as criminal prosecutions were commenced against John that were initiated or procured by or through Defendants and their representatives and accomplished through the failures to have in place the policies, procedures, protocols and guidelines set forth above.

153.    With respect to the criminal prosecution at issue as set forth in this pleading, such criminal proceedings were terminated in John's favor through the Court of Appeals level, as he was innocent of all such charges. The disciplinary proceedings and criminal prosecutions, and all resulting impacts and negative repercussions to John, would have been wholly avoided if the policies, procedures, protocols and guidelines had been properly utilized. These failures resulted in John suffering substantial damages and injuries. Accordingly, John seeks declaratory relief, including but not limited to, a declaration:

a.    That UTH and MDA's Hoop #59 policies and procedures are inadequate to protect the rights of accused employees and students subject to them and are therefore unconstitutional,

b.    That UTH and MDA should implement hearing procedures shortly thereafter any suspension of an employee or student for the purpose of ensuring that immediate suspension is warranted with such procedures comporting with proper notice, an

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 106

opportunity to be meaningfully heard, notice of the testimonial and documentary evidence that may be presented at any hearing, notice of the specific allegations, appointment of an unbiased hearing officer or panel, the right to be present for all hearing procedures, including testimonial and documentary presentations, providing the accused with all bases for such suspension, the right to the presence of counsel, and other protections as more fully discussed herein,

c.   That UTH and MDA should implement hearing procedures within a reasonably prompt period of time following allegations of sexual misconduct, providing notice of the specific allegations, the testimonial and documentary evidence that may be presented at any hearing, appointment of an unbiased hearing officer or panel, the right to be present for all hearing procedures, including the presentation of any testimonial or documentary evidence, providing the accused with all bases for such accusations, the right to presence of counsel, and other protections as more fully discussed herein,

d.   That UTMS's SEPC policies and procedures are inadequate to protect the rights of students accused of misconduct and are therefore unconstitutional as to John and similarly situated accused,

e.   *See*, *Sections A through F, and H through I,* setting forth individual acts of discrimination based on sex, undertaken by the entities, and persons acting on behalf of those entities, in violation of 42 U.S.C. section 1983, Title VII, and Title IX, and incorporating those identified discriminatory acts as if fully set forth herein.

Plaintiff seeks full reinstatement to all educational and work opportunities, and prospective declaratory and injunctive relief preventing any assessments, notations or publications concerning Plaintiff's educational and work records relating to any reference to the incidents and matters about which John now complains in this case.   Additionally or in the alternative, Plaintiff seeks reimbursement for costs, expenses and/or losses to the extent available under the law.

154.   To the extent any such assessments, notations or publications are reflected in any of Plaintiff's educational or work records, John further seeks injunctive relief requiring Defendants MDA and UTHealth, and the above identified individual Defendants in their official capacities, to promptly correct his educational and work records, including but not limited to, Medical Student Performance Evaluation ("MSPE"), formerly known as the "Dean's Letter"; to correct any

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 107

dissemination of such assessments, notations or other publications; and to promptly prepare, record, store and present such records without reference to any complaint, investigation, academic or disciplinary proceedings, findings and related comments, as if the wrongful events had not occurred; and to reinstate him to the positions he had or should have had but for Defendants' wrongful actions.

### H. VIOLATION OF JOHN'S CONSTITUTIONAL RIGHTS UNDER TEXAS CONSTITUTION ARTICLE I, §17

155.     John is entitled to injunctive and declaratory relief that MDA's and UTHealth's policies as applied to John violated Title IX such that a) John is fully reinstated to the full measure of all benefits of educational and work Under the "Takings Clause" of Article I, §17 of the Texas Constitution, citizens are protected from the property being taken, damaged or destroyed for or applied to public use without adequate compensation or consent.  Based upon and incorporating the facts pled above, including those set forth in paragraphs 20 – 103 above, Plaintiff John asserts claims for violations of the Takings Clause (under the Texas Constitution) committed by Defendants, UTHealth and MDA.  More specifically, through the illegal actions, schemes and conspiracies set forth above, Defendants UTHealth and MDA violated the Takings Clause by improperly and illegally taking (or by permissibly taking utilizing illegal methods and means) John's rights in and to the Howard Hughes Medical Institute research grants which were awarded to him, and by improperly and illegally taking (or by permissibly taking utilizing illegal methods and means) John's rights in and to the property items damaged and destroyed by and through the implementation of unconstitutional processes as referenced above. This includes the taking or

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 108

destruction of John's research ongoing at the time that the false allegations were made, along with Defendants' implementation of the wrongful actions against John as alleged above. *See*, *Sections A through G, and I,* setting forth individual acts of discrimination and retaliation, undertaken by the entities, and persons acting on behalf of those entities, in violation of Article I, Section 17, and incorporating those identified discriminatory and retaliatory acts as if fully set forth herein.

156.    Such actions intentionally performed and taken by Defendants were accomplished through the wrongful actions committed by Defendants and their agents and representatives; were without justification, privilege or excuse; resulted in the taking of John's property and property rights; and were either wholly or partially for public use. None of the Defendants are entitled to immunity because the acts alleged were not taken while performing a discretionary act, the Defendants were not acting in good faith, and/or were not acting within the scope of their authority, and such actions were malicious, arbitrary and capricious. Furthermore, the individual MDA, UTH and campus police actors violated John's Fourth and Fourteenth Amendment rights as more fully discussed above, and their actions were objectively unreasonable in light of clearly established law. The taking of John's property and property rights resulted in substantial damages and injuries to John.

## I.    VIOLATION OF JOHN'S CONSTITUTIONAL RIGHTS PURSUANT TO THE FOURTH, FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION- 42 US.C. §1983-CONSPIRACY CLAIMS

157.    Based upon and incorporating the facts pled herein, including those set forth in paragraphs 20 – 103 above, all named Defendants, individually and/or in their official capacities, jointly conspired with each other, with their agents and representatives, and with other third parties

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 109

to violate John's constitutional rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution in multiple respects as set forth above, all of which constitutional violations are incorporated herein by reference. *See*, *Sections A through H*, setting forth individual acts of conspiracy, undertaken by the named persons, acting together in violation of Section 1983, and hereby incorporating those identified discriminatory and retaliatory acts of conspiracy which violated the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, as if fully set forth herein.

158.    None of the Defendants are entitled to immunity because the acts alleged were not taken while performing a discretionary act, the Defendants were not acting in good faith, and/or were not acting within the scope of their authority, and such actions were malicious, arbitrary and capricious. Furthermore, the individual MDA, UTH and campus police actors violated John's Fourth and Fourteenth Amendment rights as more fully discussed above, and their actions were objectively unreasonable in light of clearly established law. These claims include the involvement and participation of other Jake and Jane Does against whom John's claims are now being brought.

159.    Each named Defendant was a member of a combination of two or more persons, whose object was to accomplish an unlawful purpose, or a lawful purpose by unlawful means, the Defendants had a meeting of the minds on the object or course of action, at least one of the Defendants committed an unlawful, overt act to further the object or course of action, and Plaintiff suffered injury as a proximate result of Defendants' wrongful acts, with said wrongful acts more fully discussed and incorporated herein as if fully set forth.

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 110

160.     Specifically, each named Defendant conspired together and among themselves to accomplish the unlawful purpose of violating John's Fourth and Fourteenth Amendment rights, and/or  a lawful purpose of investigating accusations of sexual harassment but by unlawful means of violating said Fourth and Fourteenth Amendments, and having had a meeting of the minds on the object or course of action to deny John his right to due process, equal protection, and other protected constitutional rights as more fully set forth above, Defendants acted to exclude John from his employment, fellowship and medical studies, defame and damage his personal and professional reputation and damage his future career prospects, all including, but not limited to, in the following manner:

a.   denial of proper and timely notice of the accusations against him and a meaningful opportunity to respond relating to what would eventually become an accusation of a violation of HOOP Policy #59 alleging sexual misconduct, including no timely notice of when, where or how such misconduct occurred (*Exhibits 1a, 3a-3b, 4 and Exhibit 9, EEOC charge, as if fully set forth herein),*

b.   denial of proper and timely notice of the accusations against him and a meaningful opportunity to respond relating to what would eventually become an accusation of a violation of the MD Anderson Code of Conduct Principle 9 with no clarification of what part of that principle had been violated, and including refusal to clarify who was involved, where and when this alleged violation occurred, or provide any details on the nature of the actual Title 9 violation (*Exhibit 2g),*

c.   denial of a due process hearing relating to his suspension and constructive discharge from his employment (*Exhibits UTH policies 1d, Hoop Policy #186, pg. 149-1510* providing for a due process hearing),

d.   denial of a due process hearing relating to his suspension and constructive discharge from employment, and suspension and constructive dismissal from his MMS medical studies, and suspension and constructive dismissal from his GSBS studies, including denial of meaningful notice and timely notice of the charges, notice of witnesses or evidence that might be presented, the ability to hear and respond to witnesses' testimony at the time any proceedings were conducted, the ability to hear and respond to evidence given at the time of the proceedings, the right to cross-examine witnesses, the right to have an attorney or advisor present in the proceeding, and any (*Exhibits UTH policies 1d, Hoop Policy #186, pg. 149-1510* providing for a due process hearing,

e. denial of a MDA due process hearing, including, but not limited to, denial of proper and timely notice, a meaningful opportunity to be heard, the ability to hear and respond to witnesses' testimony at the time any proceedings were conducted, the ability to hear and respond to evidence given at the time of the proceedings, the right to cross-examine witnesses, the right to have an attorney or advisor present in the proceeding, and any right of appeal,

f. the failure and/or refusal to abide by MDA rules and regulations relating to similar accusations and disciplinary action of MDA employees,

g. treating Doe in a discriminatory manner by treating him as if he had engaged in serious criminal acts rather than having engaged in benign, sarcastic electronic mail communications with a female associate while both were outside of work and relating to non-work-related conversation,

h. Removing him from his work place for nearly two years, and his continued removal from his laboratory even as of the date of this complaint,

i. Removing him from his work place for nearly two years without meaningful due process or opportunity to be heard,

j. Requiring or promoting his removal from UT campus housing,

k. Performing a secret psychological risk assessment on him without the benefit of a fair, sufficient opportunity for Plaintiff's input and assessment by qualified personnel and denying him the opportunity to contest the assessment, thus treating him as if he were perceived as mentally disabled in some manner,

l. Communicating with campus police in conveying the female Chinese associate's false allegations of sex-related harassment and stalking, leading to Doe's false arrest,

m. Requiring John Doe to subsequently undergo an unwarranted psychiatric assessment and testing at his own expense, thus treating him as if he were perceived as mentally disabled,[49]

n. Requiring that John submit to a Management Plan even though there were no findings to warrant such conditions of employment and only a pretextual finding of MDA's Standards of Conduct #9 was ever made against him, which further implicates discriminatory treatment based on sex (male), national origin (USA of Asian/Taiwanese Descent), retaliation for objecting to the deprivation of his right to due process, equal protection, and discriminatory treatment, and disability (perceived as mentally disabled and a threat of some kind requiring "management" and oversight), to which other similarly situated persons are not subjected,

o. Refused to investigate John's complaint of discriminatory treatment involving female gender bias involving the assumption (without evidence) that Cai's (female/Chinese/non-disabled/non-retaliatory) allegations were true and John's (male, USA of Asian/Taiwanese descent, retaliation, and perceived as disabled), denial was unworthy of credence despite the lack of any credible corroborating evidence,

---

[49] Since this requirement was implemented under the auspices of the GSBS program and that program is part of MDA, this requirement was mandated by Defendants MDA and UTH.

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 112

p. Refused to investigate John's complaint that Cai's allegations of sexual harassment and stalking were utterly false and fabricated,

q. Refused to bring a complaint against Cai for misconduct involving the making of false allegations while John, an innocent person falsely accused, was subjected to a nearly two-year nightmare that continues to this day,

r. Created a systemically-wide approach to sexual harassment claims that embraced the allegations of female accusers as summarily true and to be believed while treating accused males as guilty until proven innocent[50], thereby bypassing the due process protections afforded under the law;

s. and all other unequal, discriminatory and retaliatory actions as more fully set forth in previous paragraphs. (*See also, Sections A-I, supra*).

161. John is entitled to injunctive and declaratory relief that MDA's and UTHealth's policies as applied to John violated Title IX such that a) John is fully reinstated to the full measure of all benefits of educational and work Specifically, all Defendants, individually and/or in their official capacities, jointly conspired to procure and effectuate the violations of the Texas Constitution as well as the violations of the US Constitution and 42 U.S.C. §1983 as more fully discussed in previous sections A through H; to initiate and procure the malicious criminal prosecution of John; to accomplish the constitutional violations of John's Fourth, Fifth and Fourteenth Amendments rights; to accomplish the due process and equal protection violations as alleged herein; to violate Title IX of the Education Act, and to inflict the damages and injuries to John as set forth herein.

162. Accordingly, in addition to monetary damages for economic injuries, costs and other financial losses against Defendants in their individual capacities, John seeks injunctive relief, including full reinstatement to all educational and work opportunities against Defendants in their

---

[50] *See Paragraphs 76-87, supra.*

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 113

official capacities. John also seeks prospective injunctive relief against Defendants in their official capacities preventing any assessments, notations or publications concerning Plaintiff's educational and work records relating to any reference to the incidents and matters about which John now complains in this case.

163.    To the extent any such assessments, notations or publications are reflected in any of Plaintiff's educational or work records, John further seeks injunctive relief requiring Defendants MDA and UTHealth, and the above identified individual Defendants in their official capacities, to promptly correct his educational and work records, including but not limited to, Medical Student Performance Evaluation ("MSPE"), formerly known as the "Dean's Letter"; to correct any dissemination of such assessments, notations or other publications; and to promptly prepare, record, store and present such records without reference to any complaint, investigation, academic or disciplinary proceedings, findings and related comments, as if the wrongful events had not occurred; and to reinstate him to the positions he had or should have had but for Defendants' wrongful actions.

## VII.  CAUSATION AND JOINT LIABILITY

164.    Each and all of the above were the proximate or producing causes of damages and injuries to John who was innocent of any fault contributing to or causing these damages and injuries.  All conditions precedent to John's recovery of damages have been met or have occurred. John alleges and asserts, as appropriate, the doctrines of agency, respondent superior and vicarious liability.   Defendants MDA and UTHealth are believed to be, at all material times, the principals

for whom the MDA Actors, UTHealth Actors, and campus police Actors took actions that caused or participated in causing injuries and damages to John. Likewise, UTPD and the campus police Actors were the agents of MDA and UTHealth, acting for or on behalf of MDA and UTHealth at all material times. Personnel with UTPD were acting on behalf of, and as the agents of, MDA and UTHealth.

165.    Accordingly, John asserts and pleads that Defendants are and should be found jointly and severally liable for John's damages and injuries resulting from each claim or cause of action to which each Defendant may be liable under applicable law, including those caused by others involved in the conspiracies to accomplish their illegal schemes, artifices and enterprises, and including those caused by others employed by Defendants, those acting as agents of Defendants, or those working with Defendants to cause the damages and injuries as set forth and alleged herein.

## VIII.  DAMAGES AND RELIEF SOUGHT

166.    As a direct and proximate result of Defendants' conduct and actions, John has suffered damages and injuries, which are continuing in nature, in addition to the injuries and damages pled above, which are incorporated herein by reference. John seeks monetary amounts to reimburse him for costs and expenses incurred to defend against and rectify the illegalities and improprieties as alleged herein, as well as for losses incurred.

167.    John suffered, suffers and will continue to suffer economic losses; loss of funds, monies, assets, property and property interests; loss of income/revenues and business/professional opportunities; loss of education opportunities; loss of earnings/profits; mental anguish and

emotional upheaval; diminishment in and loss of earnings opportunities and earning capacities, both past and future; damage to John's personal and professional reputations; and other damages as will be proven at trial. John seeks all compensatory and pecuniary damages, in the past and the future, to which he may be entitled. John also seeks compensatory and consequential damages proximately flowing from the wrongful conduct and actions of Defendants.

168.    John has also incurred damages and injuries in the form of out-of-pocket costs and expenses to correct Defendants' unlawful and wrongful acts as asserted herein above including, but not limited to, attorney's fees for such legal services in connection with preparation, trial, appeal and collection as may become necessary, along with all fees, costs and expenses incurred to defend against the criminal charges as well as the administrative proceedings and related activities (including those that were part of the Title IX investigations as well as all administrative proceedings that were related to or resulted from the false allegations and wrongful actions of Defendants) and this legal proceeding. John seeks all other incidental and consequential damages as are supported by the facts underlying John's claims in this litigation and to which John may be entitled under the claims as alleged and pled herein, as well as for violations of 42 U.S.C. §1983 and for violations of his constitutional rights.

169.    John also seeks damages and compensation for the severe and substantial mental anguish, physical ramifications from the wrongful conduct set forth herein, emotional distress and compensatory damages, along with damage to his professional and personal reputations that resulted from the wrongful actions of Defendants. John seeks damage and compensation for losses to business relationships with other persons and companies; loss of business opportunities; and

loss of professional and cancer research opportunities.  Accordingly, John seeks all reasonable general, special, incidental and consequential damages as are available, whether at law or in equity, and as shall be proven at trial.

170.    Because Defendants' conduct was intentional, fraudulent, deceptive, willful and malicious, or alternatively was reckless and grossly negligent, John further seeks exemplary or enhanced damages to the extent permitted by law.  If and to the extent such exemplary or enhanced damages are permitted, John seeks such damages in amounts to be determined by the jury but no less than are appropriate, necessary and proper to punish Defendants for their criminal, unlawful, fraudulent, deceptive and malicious conduct (or their grossly negligent and reckless conduct and actions) in furtherance of their violations of 42 U.S.C. §1983 and violations of John's constitutional rights; to deter Defendants from committing such unlawful, fraudulent, deceptive and malicious conduct (or alternatively grossly negligent conduct) in the future; and to serve as an example to others.

171.    John seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and also to avoid unjust enrichment to the Defendants.  John also seeks post judgment interest at the maximum rate allowed by law.

172.    John also seeks injunctive relief as sought above, including permanent injunctive relief against Defendants in their official capacities to the extent necessary to ensure Defendants do not initiate or take further actions that would negatively impact John in his profession, career, work, studies, and standing.

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 117

## IX.  JURY DEMAND

173.    John asserts his right to a jury trial.

## X.    ADDENDUM OF EXHIBITS

John Doe files herewith an Addendum that contains exhibits incorporated herein and referenced in this pleading.

WHEREFORE, premises considered, **JOHN DOE** respectfully requests that Defendants be cited to appear and answer this Complaint and that he be granted temporary and/or permanent injunctive relief, declaratory judgment relief, and all other injunctive or equitable relief against Defendants as pled and requested herein.

Additionally, on final hearing, **JOHN DOE** further requests that he have and recover judgment against Defendants, jointly and severally, as follows:

a.    For all general, special, incidental and consequential damages to which Plaintiff may be entitled pursuant to this Petition or any amendment(s) thereto, including but not limited to all those damages set forth and pled herein;

b.    Compensatory, pecuniary and consequential damages, attorneys' fees and litigation costs, and out of pocket expenses, including compensation for mental anguish, emotional upheaval, and damage to personal and professional reputations, relationships, contractual rights, and business/professional opportunities;

c.    Enhanced, statutory and/or exemplary/punitive damages, to the extent permitted by law;

d.    Prejudgment interest at the highest rate permitted by law;

e.    Post judgment interest at the highest rate permitted by law from the date of judgment until paid;

John Doe vs. MDA / UTHEALTH et al
Plaintiff's Second Amended Complaint

Page 118

      f.      Injunctive and/or declaratory relief;

      g.      Costs of Court;

and all such other and further relief, at law or in equity, to which Plaintiff **JOHN DOE** may be justly

entitled whether by this Complaint or by any amendment hereto and which this Court deems

proper.

        Respectfully submitted,

        KRENEK LAW OFFICES, PLLC

        */s/ Eddie M. Krenek*
        Eddie M. Krenek
        Texas Bar No. 11724980
        Federal Bar No. 10887
        edkrenek@kreneklaw.com
        *Lead Attorney-In-Charge*

        Tricia K. Thompson
        Texas Bar No. 24031324
        Federal Bar No. 841498
        tkthompson@kreneklaw.com
        Joyce A. Keating
        Texas Bar No. 11144010
        Federal Bar No. 14159
        joyce@joycekeatinglaw.com
        21555 Provincial Blvd.
        Katy, Texas 77450
        Telephone: (281) 578-7711
        Fax: (281) 578-8988

        ***ATTORNEYS FOR PLAINTIFF***
        ***JOHN DOE***

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 12th day of November, 2021, this pleading was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel for Defendants:

Jeffrey E. Farrell
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
jeffrey.farrell@oag.texas.gov

*/s/ Eddie M. Krenek*
Eddie M. Krenek